# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK KELLY, United States Senator
representing the State of Arizona,
120 Constitution Ave NE, Suite 516
Washington, D.C. 20002

*Plaintiff*,

v.

PETE HEGSETH, in his official capacity as
Secretary of Defense,
1600 Defense Pentagon
Washington, D.C. 20301

U.S. DEPARTMENT OF DEFENSE,
1600 Defense Pentagon
Washington, D.C. 20301

JOHN PHELAN, in his official capacity as
Secretary of the Navy,
1000 Navy Pentagon
Washington, D.C. 20350

U.S. DEPARTMENT OF THE NAVY,
1000 Navy Pentagon
Washington, D.C. 20350

*Defendants*.

Case No._____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Senator Mark Kelly is a retired Navy Captain, a sitting United States Senator, and a member of the Senate's Armed Services Committee and Select Committee on Intelligence. Since his election to represent Arizona in 2020, Senator Kelly's experience and expertise have made him a prominent and highly respected leader on issues related to national security, the military, and veterans affairs. Consistent with that role, he has made numerous public statements and taken other legislative action to address the appropriateness of the Trump Administration's deployment of troops and the National Guard; military strikes; the conduct of senior defense officials; and the legal obligations of servicemembers—all of which are significant matters of public concern squarely within the First Amendment's protections and the Senator's responsibilities under Article I of the Constitution to oversee the armed forces and intelligence community.

2.      Executive Branch leaders swiftly responded to these statements with extreme rhetoric and punitive retribution. In November 2025, when Senator Kelly and five other Members of Congress released a video reiterating servicemembers' longstanding and widely accepted legal obligation to disregard unlawful orders, President Trump and Secretary Hegseth publicly branded his statements as "sedition" and "treason," and warned that there would be consequences.

3.      The Department of Defense then followed with formal punishment. On January 5, Secretary Hegseth issued a "Secretarial Letter of Censure" declaring that Senator Kelly's public statements since June have "undermined the chain of command," "counseled disobedience," and constitute "conduct unbecoming an officer." At Secretary Hegseth's direction, and relying expressly and exclusively on that determination, the Department of the Navy then initiated proceedings to "reconsider"—that is, to reduce—the rank (or "grade") and pay at which Senator

Kelly retired nearly fifteen years ago. Secretary Hegseth's letter also threatened "criminal prosecution or further administrative action" if Senator Kelly continues to make similar statements.

4.      Defendants' actions violate numerous constitutional guarantees and have no basis in statute. They should proceed no further.

5.      The First Amendment forbids the government and its officials from punishing disfavored expression or retaliating against protected speech. That prohibition applies with particular force to legislators speaking on matters of public policy. As the Supreme Court held 60 years ago, the Constitution "requires that legislators be given the widest latitude to express their views on issues of policy," and the government may not recharacterize protected speech as supposed incitement in order to punish it. *Bond v. Floyd*, 385 U.S. 116, 135-36 (1966). The Secretary's letter makes clear on its face that he is disciplining Senator Kelly solely for the content and viewpoint of his political speech.

6.      The Executive's actions also trample on protections the Constitution singles out as essential to legislative independence. It appears that never in our nation's history has the Executive Branch imposed military sanctions on a Member of Congress for engaging in disfavored political speech. Allowing that unprecedented step here would invert the constitutional structure by subordinating the Legislative Branch to executive discipline and chilling congressional oversight of the armed forces. Indeed, the topics described in Secretary Hegseth's letter involved quintessential legislative and oversight activity. The letter cites statements about foundational principles of military law and concerns about potential commission of war crimes—areas squarely within the legislative and oversight jurisdiction of the committees on which Senator Kelly serves. And the letter highlights Senator Kelly's criticism of the "firing of admirals and generals"— personnel decisions by Secretary Hegseth and other senior defense officials over whom those same

committees exercise oversight and whose appointments are subject to the Senate's advice and consent. All of those topics, and Senator Kelly's statements about them, lie at the core of the Speech or Debate Clause and the long-recognized immunity for legislative acts.

7.    The process that the Secretary of Defense has directed for reconsidering Senator Kelly's retirement grade also violates due process. Before that proceeding even began, the President publicly accused Senator Kelly of sedition and treason and demanded punishment. The Secretary himself has echoed those accusations, announced an investigation, and then issued a Letter of Censure that—not tentatively, but conclusively—determined that Senator Kelly's speech met the very criteria that the Department must consider when reducing retirement grade. The outcome of any subsequent "review" of Senator Kelly's grade—even assuming it could lawfully proceed—is foreordained. The Constitution does not permit the government to announce the verdict in advance and then subject Senator Kelly or anyone else to a nominal process designed only to fulfill it.

8.    Nor does the statute cited by Secretary Hegseth provide any basis to conduct such a proceeding. Defendants invoke 10 U.S.C. § 1370, which governs the grade at which an officer is retired based on whether the officer "served on active duty satisfactorily." 10 U.S.C. § 1370(a)(1). Senator Kelly's "active duty" is over; he retired honorably as a Captain with a remarkable record of awards and commendations, and his retirement grade (and the pension to which he is therefore entitled) became final by operation of law at the time of his retirement more than fourteen years ago. Nothing in the statute authorizes the Department of Defense to reopen that determination based on post-retirement political speech—and if it did, it would raise serious constitutional concerns and subject all of the nation's retired veterans to an ever-present threat against their retirement.

9.      If permitted to stand, the Secretary's censure and the grade-determination proceedings that he has directed will inflict immediate and irreparable harm. The censure, the grade-reduction process, and its inevitable outcome impose official punishment for protected speech, chill legislative oversight, and threaten reductions in rank and pay. Each of these actions also signals to retired service members and Members of Congress that criticism of the Executive's use of the armed forces may be met with retaliation through military channels. The Constitution does not leave such injuries to be remedied after the fact. Speech or Debate, First Amendment, separation-of-powers, and due-process protections must be vindicated at the outset, before the Senator is forced to submit to an unconstitutional and legally baseless proceeding.

10.     Senator Kelly therefore brings this complaint for declaratory and injunctive relief. Defendants' actions violate the First Amendment, the Speech or Debate Clause, the separation of powers, due process, 10 U.S.C. § 1370, and the Administrative Procedure Act.

11.     In particular, Senator Kelly respectfully asks this Court to declare the censure letter, reopening determination, retirement grade determination proceedings, and related actions unlawful and unconstitutional; to vacate those actions; to enjoin their enforcement; and to preserve the status of a coequal Congress and an apolitical military.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, including the U.S. Constitution and the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq*.; 28 U.S.C. § 1651 (All Writs Act). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). The United States has waived its sovereign immunity. *See* 5 U.S.C. §§ 702, 704.

13.     This Court has authority to grant the requested relief, including pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 704-06; the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; Fed. R. Civ. P. 65; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers. *See, e.g.*, *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 195-96 (2023).

14.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because this action seeks relief against federal agencies and officials acting in their official capacities; a substantial part of the events or omissions giving rise to the claim occurred in this district; and at least one defendant resides or "conducts his official duties" in this district. *Chin Young v. Esper*, 2019 WL 4247260, at *5 (D.D.C. Sept. 6, 2019) (quoting *Webster v. Mattis*, 279 F. Supp. 3d 14, 19 (D.D.C. 2017)).

## PARTIES

15.     **Plaintiff Mark Kelly** is a United States Senator representing the State of Arizona. Senator Kelly retired from the U.S. Navy in 2011 as an O-6, Captain. He is a member of the United States Senate Committee on Armed Services and the Senate Select Committee on Intelligence, among other committees.

16.     **Defendant Pete Hegseth** is the Secretary of Defense and is sued in his official capacity.

17.     **Defendant the Department of Defense** is a Department of the Executive Branch of the U.S. Government and is an agency within the meaning of 5 U.S.C. § 551(1).

18.     **Defendant John Phelan** is the Secretary of the Navy and is sued in his official capacity.

19.     **Defendant the Department of the Navy** is a branch of the Armed Services, a Department of the Executive Branch of the U.S. Government, and is an agency within the meaning of 5 U.S.C. § 551(1).

## FACTUAL ALLEGATIONS

### A.     Senator Kelly's Military and Congressional Service

20.     Senator Kelly is a highly decorated veteran who served in the United States Navy as an officer and naval aviator, and as an astronaut for the National Aeronautics and Space Administration (NASA).

21.     In his 25 years of military service, Senator Kelly served in multiple deployments on the USS Midway, 39 combat missions during the First Gulf War as a naval aviator, and four space shuttle flights at NASA, including commanding the final flight of Endeavour.

22.     Senator Kelly's awards and decorations reflect exceptionally distinguished service and valor. For example, for his service, Senator Kelly received the Defense Superior Service Medal (with one oak leaf cluster); the Legion of Merit; the Distinguished Flying Cross (with one gold star in lieu of a second award); the Air Medal (with Combat "V" and three bronze service stars); the Navy Commendation Medal (with Combat "V" and one gold star); the Navy Achievement Medal; the NASA Exceptional Service Medal; and the NASA Space Flight Medal (with three bronze service stars). *See, e.g.*, Compilation of Select Military Awards (attached as Ex. A).[1]

23.     Senator Kelly's military honors speak for themselves, describing Senator Kelly's "heroic" and "meritorious achievement[s]," Ex. A at 1, 12-19; "perseverance in the face of tremendous personal danger," Ex. A at 12; and "devotion to duty" even "in the face of enemy fire," Ex. A at 15.

---

[1] *See also* NASA, *Biographical Data, Mark E. Kelly (Captain, USN)* (July 2011), nasa.gov/wp-content/uploads/2019/04/kelly_mark.pdf.

24.     Senator Kelly retired from the U.S. Navy in 2011 as an O-6, Captain. His retirement grade is also an O-6, Captain, which was—and remains—the highest grade in which he honorably and satisfactorily served while on active duty.

25.     Since his election to the Senate in 2020, Senator Kelly's congressional work has consisted of significant engagement on military and national security issues, through both his committee service and related legislative efforts, across presidential administrations.[2]

26.     Those legislative efforts have included introducing the Brandon Act to expand access to confidential mental healthcare for servicemembers;[3] cosponsoring the Afghanistan War Commission Act of 2021;[4] and championing the CHIPS and Science Act of 2022 to secure the military supply chain for semiconductors and reduce reliance on foreign manufacturers.[5]

27.     Among his other committee assignments in the Senate, Senator Kelly serves as a member of both the Committee on Armed Services and the Select Committee on Intelligence.

28.     The Armed Services Committee has legislative and oversight jurisdiction over all matters pertaining to "[a]eronautical . . . activities peculiar to or primarily associated with . . . military operations," the "Common defense," and the "Department of Defense, the Department of the Army, the Department of the Navy, and the Department of the Air Force, generally."[6] The committee is therefore tasked with obligations such as ensuring implementation of and amending the Uniform Code of Military Justice ("UCMJ"). The committee also has

---

[2] *See*, *e.g.*, Press Release, Sen. Mark Kelly Statement on Afghanistan, kelly.senate.gov (Aug. 21, 2021), perma.cc/3AZ8-NUMQ (attributing the "rapidly deteriorating situation in Afghanistan" to the Biden Administration's "failure to prepare for a scenario where the Afghan government and military would refuse to fight the Taliban's advances").

[3] Brandon Act, S. 2088, 117th Cong. (2021).

[4] Afghanistan War Commission Act of 2021, S. 2922, 117th Cong. (2021).

[5] CHIPS and Science Act of 2022, Pub. L. No. 117-167, 136 Stat. 1366 (2022).

[6] Standing Rules of the Senate, S. Doc. No. 113-18, at 20, 113th Cong. (1st Sess. 2013) (Rule XXV, 1(c)(1).

jurisdiction over all appointments to posts in the armed forces and Department of Defense that require Senate confirmation.[7]

29.    The Select Committee on Intelligence oversees "the intelligence activities and programs of the United States government . . . to assure that such activities are in conformity with the Constitution and laws of the United States."[8] It exerts legislative and oversight authority over "proposed legislation, messages, petitions, memorials, and other matters relating to . . . [i]ntelligence activities of . . . the Department of Defense," among other agencies.[9]

30.    Senator Kelly continues to be a prominent voice in the ongoing national debate and congressional oversight regarding the Administration's military actions.

### B.    The Trump Administration's Military Actions and Congressional Responses

31.    Over the last six months, the Administration has taken a series of military actions that have been the subject of intense public debate, as well as ongoing congressional oversight within the jurisdiction of the Senate and House Armed Services Committees and Select Committees on Intelligence, including congressional inquiries and investigations,[10] briefings,[11] hearings,[12] proposed legislation,[13] new restrictions on Department of Defense funding.[14] Senator Kelly, particularly as a member of those committees, has played an active role in those legislative activities.

---

[7] *See id.* at 43-44 (Rule XXXI, 1) (nominations by the President "shall . . . be referred to appropriate committees"); *id.* at 20 Rule XXV, 1(c)(1)(conferring jurisdiction over "all proposed legislation, messages, petitions, memorials, *and other matters* relating to . . . Department of Defense, the Department of the Army, the Department of the Navy, and the Department of the Air Force, generally." (emphasis added)).

[8] S. Res. 400, 94th Cong., 2d Sess. pmbl. (1976).

[9] S. Res. 400, 94th Cong., 2d Sess. § 3(a)(3) (1976).

[10] *See infra* ¶¶ 45, 48.

[11] *See infra* ¶ 44.

[12] *See infra* ¶ 37.

[13] *See infra* ¶¶ 35, 36, 38.

[14] *See infra* ¶ 47.

### (i)    National Guard Deployments

32.    Beginning in June 2025, President Trump began deploying National Guard troops to cities across the country, including Washington, D.C.; Los Angeles, California; Portland, Oregon; and Chicago, Illinois.

33.    These deployments sparked litigation by states and local government across the country,[15] and federal courts in Tennessee, Oregon, Illinois, California, and the District of Columbia have issued emergency orders blocking the deployments.[16] The Supreme Court declined a stay application of the ruling that bars the Trump Administration from deploying National Guard troops in Illinois.[17]

34.    On June 14, 2025, Senator Kelly along with the entire Senate Democratic caucus sent a letter urging President Trump "to immediately withdraw all military personnel that have been deployed to Los Angeles unless their presence is explicitly requested by the Governor and local leaders."[18]

35.    Senator Kelly was one of 24 Senators who cosponsored the "Insurrection Act of 2025," which would restrict the President's authority to deploy national guard troops.[19]

---

[15] *E.g.*, *Illinois v. Trump*, 155 F.4th 929 (7th Cir. 2025); *Oregon v. Trump*, No. 25-6268 (9th Cir. 2025); *District of Columbia v. Trump*, No. 25-5418 (D.C. Cir. 2025); *Newsom v. Trump*, No. 25-3727 (9th Cir. 2025).

[16] *Illinois v. Trump*, 155 F.4th 929, 933 (7th Cir. 2025); *Oregon v. Trump*, 3:25-cv-01756 (D. Or. Oct. 4, 2025) (Dkt. 56); *District of Columbia v. Trump*, 1:25-cv-03005-JMC (D.D.C. Nov. 20, 2025) (Dkt. 89); *Newsom v. Trump*, 3:25-cv-04870 (N.D. Cal. June 12, 2025) (Dkt. 64); *Harris v. Lee*, No. 25-1461-I (Tenn. 12th Dist. Ch. Ct. Nov. 17, 2025), perma.cc/28J4-TSHT.

[17] *Trump v. Illinois*, 2025 WL 3715211 (U.S. Dec. 23, 2025).

[18] Letter from Sen. Alex Padilla to President Donald Trump (June 14, 2025), perma.cc/85Q5-LZ9N.

[19] Insurrection Act of 2025, S. 2070, 119th Cong. (2025).

36.     On November 7, 2025, Senator Kelly co-sponsored and introduced proposed legislation, the No Troops in Our Streets Act of 2025, which would enhance congressional authority to terminate National Guard deployments.[20]

37.     On December 11, 2025, Senator Kelly participated in a Senate Armed Services Committee hearing on the Administration's deployment of National Guard troops to U.S. cities.[21]

38.     That same day, Senator Kelly co-sponsored and introduced legislation—the Notification of Troop Involvement and Congressional Engagement (NOTICE) Act—that would require the President to notify Congress and provide a clear justification before deploying the National Guard for law enforcement purposes.[22]

### (ii)    Boat Strikes in the Caribbean Sea and Pacific Ocean

39.     The Administration also initiated a campaign of lethal strikes against boats that were allegedly being used to smuggle drugs. Between September 2, 2025, and November 15, 2025, the United States military engaged in 21 strikes on boats in the Caribbean Sea and Pacific Ocean, sinking 22 boats and claiming 83 casualties.[23]

40.     One strike in particular has been the subject of extensive public discussion, including among members of Congress.

41.     Specifically, on September 2, two survivors of a targeted civilian boat suspected of transporting drugs were reportedly observed via surveillance video clinging to the ship's wreckage, whereupon the commander directing the operation ordered a second strike, killing both

---

[20] No Troops in Our Streets Act of 2025, S. 3167, 119th Cong. (2025).
[21] David Klepper et al., *Senators Clash Over National Guard Deployments as Military Leaders Face Questions*, NBC Wash. (Dec. 11, 2025), perma.cc/D7A9-XBYZ?type=image.
[22] NOTICE Act, S. 3449, 119th Cong. (2025).
[23] Michael Rios et al., *A Timeline of US Strikes on Boats that have Killed 87*, CNN (Dec. 5, 2025), perma.cc/W697-JBFU.

survivors.[24] That reporting prompted robust discussion and debate about a possible violation of the laws of war.[25]

42.     Members of Congress from across the political spectrum, including Senator Kelly, have voiced grave concerns about the legality of the strikes on boats allegedly transporting narcotics, and about the September 2 incident in particular. For example, Democratic Senator Tim Kaine of Virginia maintained that, if the event occurred as reported, the double-tap strike "rises to the level of a war crime."[26] Republican Representative Mike Turner of Ohio, a member of the House Armed Service Committee, stated that it would be "an illegal act" that is "completely outside of anything that has been discussed with Congress."[27] And Republican Senator Rand Paul of Kentucky underscored that "there's a broad consensus that it's illegal to kill people who are clinging to wreckage."[28]

43.     Senator Kelly, as a member of the Senate Armed Services Committee, demanded an investigation into the strikes and made statements about them following the Washington Post's reporting.[29]

---

[24] Former JAGs Working Group, Statement of the "Former JAGs Working Group" on Media Reports of Pentagon "No Quarter" Orders in Caribbean Boat Strikes (Nov. 29, 2025), perma.cc/VW2N-AJYY.

[25] *See infra* n.**Error! Bookmark not defined.**.

[26] Kaia Hubbard, *Sen. Tim Kaine Says Reported Second Strike on Alleged Drug Boat "Rises to the Level of a War Crime if It's True"*, CBS News (Nov. 30, 2025), perma.cc/5S6J-V8LZ.

[27] *Transcript: Rep. Mike Turner on "Face the Nation with Margaret Brennan"*, CBS News (Nov. 30, 2025), perma.cc/YH4P-9E87.

[28] Caitlin Yilek, *Trump's Venezuela Boat Strikes Fuel War Crimes Allegations. Are They Legal?*, CBS News (Dec. 4, 2025), perma.cc/AY4N-HMA9.

[29] *Sen. Kelly on Venezuelan Boat Strikes Report*, CNN (Nov. 30, 2025), cnn.com/2025/11/30/politics/video/mark-kelly-venezuela-boat-strikes-vrtc; Press Release, Kelly: "I've been through a lot worse in service to my country. The president and Pete Hegseth aren't going to silence me," kelly.senate.gov (Dec. 1, 2025), perma.cc/28C6-YNZR.

44.     On October 1, 2025, the Senate Committee on the Armed Services received briefing on the three September strikes.[30] Several Members said they were "disturbed" by what they saw in a briefing.[31] Separately, in a related briefing, "lawmakers from both sides of the aisle . . . condemned the decision and called for a bipartisan investigation of the early September strikes."[32]

45.     On October 6, the Committee requested that Secretary Hegseth provide them with "additional information" on the "legal and policy" justifications for the strikes, including "[a]ny written opinion issued by the Department of Justice's Office of Legal Counsel opining on the domestic or international legal basis for these operations and strikes."[33]

46.     On October 8, two Senators attempted to discharge a resolution to limit the Trump Administration's strikes.[34]

47.     The National Defense Authorization Act for Fiscal Year 2026 required that the Department of Defense "provide[] to the Committees on Armed Services of the House of Representatives and the Senate unedited video of strikes conducted against designated terrorist organizations in the area of responsibility of the United States Southern Command," or else lose one quarter of funds available for "operation and maintenance, defense-wide, and available for the Office of the Secretary of Defense for travel expenses."[35]

---

[30] Letter from Sen. Jack Reed, Ranking Member, Sen. Armed Services Comm., & Sen. Roger Wicker, Chairman, Sen. Armed Services Comm., to Pete Hegseth, Secr'y of Defense (Oct. 6, 2025), perma.cc/W799-GBSE.

[31] Solcyré Burga, *Democrats 'Deeply Disturbed' by Briefing on Caribbean Strike as Republicans Defend It*, Time (Dec. 4, 2025), perma.cc/L8J3-M8EU.

[32] *Id.*

[33] Letter from Sen. Jack Reed, Ranking Member, Sen. Armed Services Comm., & Sen. Roger Wicker, Chairman, Sen. Armed Services Comm., to Pete Hegseth, Secretary of Defense (Oct. 6, 2025), available at www.armed-services.senate.gov/imo/media/doc/wicker_reed_joint_letter_southcom_operations.pdf.

[34] S. J. Res. 83, 119th Cong. (2025-2026).

[35] National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, § 1052(5) (Dec. 18, 2025).

48.     The Admiral in command of the September 2 operation—who authorized the second strike—and the Chairman of the Joint Chiefs were called to deliver briefings to various House and Senate Committees as part of ongoing oversight.[36]

49.     On November 30, Senator Kelly was interviewed on CNN about the September 2 strike. Senator Kelly was asked if he agreed that "if there was a second strike to eliminate any survivors, that that constitutes a war crime?"[37] Senator Kelly responded "it seems to." He was then asked "if you received that order, would you have carried it out?" Senator Kelly replied: "No."[38]

50.     On December 1, 2025, Senator Kelly made his views clear: "if there is anyone who needs to answer questions in public and under oath, it is Pete Hegseth."[39]

## C.     The Video From Members of Congress Regarding the Obligation to Disregard Unlawful Orders

51.     On November 18, Senator Kelly and five other members of Congress—Senator Elissa Slotkin and Representatives Jason Crow, Christopher Deluzio, Maggie Goodlander, and Chrissy Houlahan—posted a video titled "Don't Give Up The Ship."[40]

52.     Like Senator Kelly, the other five Members had distinguished careers in either the armed forces or the intelligence community, and each serves on either the House or Senate Armed Services Committee.

---

[36] NBC News, *Admiral Who Ordered Alleged Drug Boat Strike Briefs Lawmakers*, YouTube, (Dec. 2, 2023), www.youtube.com/watch?v=qez38yk3jJA.
[37] CNN, *Sen. Kelly on Venezuelan Boat Strikes Report*, YouTube (Nov. 30, 2025), https://www.youtube.com/shorts/llUIbNQWKjM.
[38] *Id.*
[39] Press Release, Kelly: "I've been through a lot worse in service to my country. The president and Pete Hegseth aren't going to silence me," kelly.senate.gov (Dec. 1, 2025), perma.cc/28C6-YNZR.
[40] Sen. Elissa Slotkin (@SenatorSlotkin), X (Nov. 18, 2025, at 08:30 ET), x.com/SenatorSlotkin/status/1990774492356902948, perma.cc/8C37-HJLL.

53.    In that video, the Members stated:

SEN. SLOTKIN: I'm Senator Elissa Slotkin.
SEN. KELLY: I'm Senator Mark Kelly.
REP. DELUZIO: Representative Chris Deluzio.
REP. GOODLANDER: Congresswoman Maggie Goodlander.
REP. HOULAHAN: Representative Chrissy Houlahan.
REP. CROW: Congressman Jason Crow.
SEN. KELLY: I was a captain in the United States Navy.
SEN. SLOTKIN: Former CIA officer.
REP. DELUZIO: Former Navy.
REP. CROW: Former paratrooper and Army Ranger.
REP. GOODLANDER: Former intelligence officer.
REP. HOULAHAN: Former Air Force.
SEN. KELLY: We want to speak directly to members of the military,
SEN. SLOTKIN: And the intelligence community,
REP. CROW: Who take risks each day,
REP. DELUZIO: To keep Americans safe.
SEN. SLOTKIN: We know you are under enormous stress and pressure right now.
REP. HOULAHAN: Americans trust their military.
REP. DELUZIO: But that trust is at risk.
SEN. KELLY: This Administration is pitting our uniformed military,
SEN. SLOTKIN: And intelligence community professionals,
REP. CROW: Against American citizens.
SEN. KELLY: Like us, you all swore an oath,
REP. GOODLANDER: To protect and defend this Constitution.
REP. DELUZIO: Right now, the threats to our Constitution aren't just coming from abroad,
REP. CROW: But from right here at home.
SEN. KELLY: Our laws are clear. You can refuse illegal orders.
SEN. SLOTKIN: You can refuse illegal orders.
REP. DELUZIO: You must refuse illegal orders.
SEN. SLOTKIN: No one has to carry out orders that violate the law,
REP. HOULAHAN: or our Constitution.
REP. CROW: We know this is hard,
SEN. KELLY: and that it's a difficult time to be a public servant.
SEN. SLOTKIN: But whether you're serving in the CIA,
REP. CROW: The Army,
REP. DELUZIO: Our Navy,
REP. HOULAHAN: The Air Force,
SEN. KELLY: Your vigilance is critical.
SEN. SLOTKIN: And know that we have your back.
REP. CROW: Because now, more than ever,
REP. HOULAHAN: The American people need you.
SEN. SLOTKIN: We need you to stand up for our laws,
REP. DELUZIO: Our Constitution,
SEN. KELLY: And who we are as Americans. Don't give up,

REP. DELUZIO: Don't give up,
REP. CROW: Don't give up,
SEN. SLOTKIN: Don't give up the ship.[41]



54.     The video's message—that service members "can refuse illegal orders"—is a plain statement of blackletter law.

55.     The UCMJ subjects service members to courts-martial if they "violate[] or fail[] to obey any *lawful* general order or regulation."[42] The Rules for Courts-Martial therefore provide: "It is a defense to any offense that the accused was acting pursuant to orders unless the accused knew the orders to be unlawful or a person of ordinary sense and understanding would have known the orders to be unlawful."[43] The UCMJ underscores that, although orders from superior officers are

---

[41] *Id.*
[42] 10 U.S.C. § 892 (UCMJ Art. 92) (emphasis added).
[43] *Manual for Courts-Martial*, United States, Rules for Courts-Martial 916(d) (2024) (emphasis added).

presumed lawful, "[t]his inference does not apply to a patently illegal order, such as one that directs the commission of a crime."[44]

56.    The U.S. Court of Appeals for the Armed Forces has reiterated that service members can be held accountable for following orders that they "knew . . . to be unlawful" or that "a person of ordinary sense and understanding would have known" were unlawful.[45] The prosecution "bears the burden of proving beyond a reasonable doubt that the defense does not exist."[46]

57.    Secretary Hegseth himself has previously embraced this core principle. In a 2016 speech, Hegseth made clear that, "[i]f you're doing something that is just completely unlawful and ruthless, then there is a consequence for that. That's why the military said it won't follow unlawful orders from their commander-in-chief . . . . There's a belief that we are above what so many things that our enemies or others would do."[47]

58.    Before her appointment to Attorney General, Pamela Bondi also endorsed this principle. In March 2024, she wrote a section in a court filing titled "Military Officers Are Required Not to Carry Out Unlawful Orders."[48]

59.    Secretary Hegseth's and Attorney General Bondi's statements of military law were correct. This bedrock tenet of military law—that service members are required not to follow illegal orders—is also among the first things taught to every service member at the inception of their service.

---

[44] *Id.* at pt. IV, ¶ 16(c)(2)(a)(i).

[45] *United States v. Smith*, 68 M.J. 316, 319 (C.A.A.F. 2010).

[46] *Id.*

[47] Andrew Kaczynski, *In 2016 Video, Hegseth Says US Troops 'Won't Follow Unlawful Orders' From The President*, CNN (Dec. 2, 2025), www.cnn.com/2025/12/02/politics/video/pete-hegseth-video-illegal-commands-kfile-vrtc.

[48] *See* Brief for Three Former Senior Military Officers and Executive Branch Officials as Amici Curiae Supporting Petitioner at 9, 14, *Trump v. United States*, No. 23-939, 603 U.S. 593 (2024).

60.     The Department of Defense Law of War Manual provides that "[m]embers of the armed forces must refuse to comply with clearly illegal orders to commit law of war violations."[49]

61.     An August 6, 2020, memorandum by the then-General Counsel of the Department of Defense confirms that "[a]ll servicemembers must: . . . refuse to comply with clearly illegal orders to commit violations of the law of war."[50]

**D.     The Administration's Responses to the Video**

62.     Despite the accuracy of the video and the statements of its participants, and the Members' right to make those statements, the Administration immediately responded with threats of death, prosecution, imprisonment, and violence.

63.     On November 19, 2025, the "Official White House Rapid Response account" reposted an interview of Stephen Miller, who labeled the statements an "insurrection" and a "general call for rebellion."[51]

64.     On November 20, 2025, President Trump posted: "It's called SEDITIOUS BEHAVIOR AT THE HIGHEST LEVEL. Each one of these traitors to our Country should be ARRESTED AND PUT ON TRIAL. Their words cannot be allowed to stand - We won't have a Country anymore!!! An example MUST BE SET."[52]

---

[49] Dep't of Defense, *Department of Defense Law of War Manual* § 18.3.2 (June 2015, updated July 31, 2023), perma.cc/324P-AZ6T.
[50] Paul C. Ney, Jr., *Memorandum for the Heads of the DoD Components* § 1.4 (Aug. 6, 2020), perma.cc/7Z27-7MUV.
[51] Rapid Response 47 (@RapidResponse47), X (Nov. 19, 2025, at 16:19 ET), x.com/RapidResponse47/status/1991255078485835960?s=20 [perma.cc/UVN7-EUQ3].
[52] Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:08 ET), perma.cc/M6N2-U6GJ?type=image.



65.    Nine minutes later, President Trump reposted a news article about the video and added: "This is really bad, and Dangerous to our Country. Their words cannot be allowed to stand. SEDITIOUS BEHAVIOR FROM TRAITORS!!! LOCK THEM UP???"[53]



---

[53]    Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:17 ET), perma.cc/RZ8F-B76X?type=image.

66.    Approximately an hour later, President Trump wrote: "SEDITIOUS BEHAVIOR, punishable by DEATH!"[54]



67.    President Trump reposted a post calling for the hanging of the six congressmembers.[55]



68.    In response to the President's threats, Senator Kelly and his five colleagues quickly issued a joint statement:

> We are veterans and national security professionals who love this country and swore an oath to protect and defend the Constitution of the United States. That oath lasts a lifetime, and we intend to keep it . . . . What's most telling is that the President considers it punishable by death for us to restate the law. Our servicemembers should know that we have their backs as they fulfill their oath to

---

[54]    Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 10:21 ET), https://web.archive.org/web/20251214203221/https://truthsocial.com/@realDonaldTrump/posts/115582703277798715.

[55]    Donald    Trump    (@realDonaldTrump),    Truth    Social, https://web.archive.org/web/20251121091506/https://truthsocial.com/@realDonaldTrump    (see twentieth post); *see also* Jennifer Bendery, *'HANG THEM': Trump Boosts Message Calling For Executing Democrats in Congress*, MSN (Nov. 20, 2025), https://perma.cc/RCT2-Z2LR.

the Constitution and obligation to follow only lawful orders. It is not only the right thing to do, but also our duty."[56]

69.    In addition, Senator Kelly posted his own response on *X*:

My wife @GabbyGiffords nearly lost her life in an act of political violence. Words have consequences, especially when they come from the President of the United States.

What Trump said this morning — that my colleagues and I should be put to death — is dangerous. We can disagree fiercely and say what we think without resorting to stoking violence.[57]

70.    Undaunted, a White House social media page posted a statement by President Trump two days later in which he reiterated his view that the six congressmembers are "TRAITORS" and accused them of "SEDITION AT THE HIGHEST LEVEL."[58]



---

[56] Press Release, Joint Statement from Kelly, Slotkin, Crow, Deluzio, Goodlander, Houlahan, kelly.senate.gov (Nov. 20, 2025), https://perma.cc/GA75-EMYQ.

[57] Senator Mark Kelly (@SenMarkKelly), X (Nov. 20, 2025, at 18:39 ET), https://perma.cc/V7GQ-HXSY.

[58] Rapid Response 47 (@RapidResponse47), X (Nov. 22, 2025, at 23:18 ET), https://perma.cc/9ULY-D35J.

71.     Nine minutes later, the President posted again and claimed that "MANY GREAT LEGAL SCHOLARS AGREE THAT THE DEMOCRAT TRAITORS THAT TOLD THE MILITARY TO DISOBEY MY ORDERS, AS PRESIDENT, HAVE COMMITTED A CRIME OF SERIOUS PROPORTION!"[59]



72.     The following day, President Trump reposted a flurry of messages and memes shared by other users on Truth Social—including several messages accusing the six members of sedition and treason.[60] Among the reposts were a post calling the six members "Domestic

---

[59]  Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 22, 2025, at 23:27 ET), perma.cc/V6XC-XKTZ?type=image.

[60]  Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:21 ET), https://web.archive.org/web/20251124031109/https://truthsocial.com/@realDonaldTrump/posts/115600870191145883; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:33 ET), https://web.archive.org/web/20251201110628/https://truthsocial.com/@realDonaldTrump/posts/115601861771424365; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:08 ET), https://web.archive.org/web/20260109171305/https://truthsocial.com/@realDonaldTrump/posts/115600819326972434; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 21:59 ET), https://web.archive.org/web/20251128054721/https://truthsocial.com/@realDonaldTrump/posts/115602435550231993; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:42 ET), https://web.archive.org/web/20251124232913/https://truthsocial.com/@realDonaldTrump/posts/115601898049338376; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:39 ET), https://web.archive.org/web/20251203043023/https://truthsocial.com/@realDonaldTrump/posts/115601883571083274; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:38 ET), https://web.archive.org/web/20251212051508/https://truthsocial.com/@realDonaldTrump/posts/115601881346143952; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:38 ET), https://web.archive.org/web/20251130015636/https://truthsocial.com/@realDonaldTrump/posts/115601880468945014; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:35 ET), https://web.archive.org/

Terrorists" [61] and other allegations that the six members were "traitorous sons of bitches" and "traitorous communists" who "should be impeached and prosecuted." [62]

73.     Shortly after the President's posts, Senator Kelly and other congressmembers received so many threatening messages that law enforcement agencies provided them, their families, and their staffs with special security. Senator Kelly received numerous death threats.

74.     Senator Kelly explained:

> What [the President] is doing is sending a very chilling message across our entire nation, not only in the military, but the civilian workforce. Who's going to speak up and say anything if they see something that's unlawful or see something—waste, fraud, and abuse? Why would anyone speak out if they can go and prosecute a U.S. senator? [63]

---

web/20251226002832/https://truthsocial.com/@realDonaldTrump/posts/115601867440120506; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:34 ET), https://web.archive.org/web/20251127142826/https://truthsocial.com/@realDonaldTrump/posts/ 115601863709910309; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:33 ET), https://web.archive.org/web/20251129080524/https://truthsocial.com/ @realDonaldTrump/posts/115601862810818001; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:21 ET), https://web.archive.org/web/20251126193125/ https://truthsocial.com/@realDonaldTrump/posts/115600871102876776; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:20 ET), https://web.archive.org/ web/20251124025946/https://truthsocial.com/@realDonaldTrump/posts/115600866711887448; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:16 ET), https://web.archive.org/web/20251127002758/https://truthsocial.com/@realDonaldTrump/posts/ 115600849874066478; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:16 ET), https://web.archive.org/web/20251124014433/https://truthsocial.com/ @realDonaldTrump/posts/115600848722682473; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:10 ET), https://web.archive.org/web/20251124025657/ https://truthsocial.com/@realDonaldTrump/posts/115600826280908004.

[61] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:16 ET), perma.cc/AAP2-YMJ5?type=image.

[62] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:21 ET), perma.cc/MC8W-2S2D?type=image.

[63] *ICYMI: On State of the Union and Meet the Press, Kelly Pushes Back Against Trump Administration Efforts to Silence Him* (Nov. 30, 2025), perma.cc/N46A-MAN2.

### E.    Defendants' Announcement of an Official Military Investigation

75.    On November 24, the official X page of the Department of Defense published a post announcing that it assumed responsibility for investigating and disciplining Senator Kelly for his statements:

> The Department of War has received serious allegations of misconduct against Captain Mark Kelly, USN (Ret.). In accordance with the Uniform Code of Military Justice, 10 U.S.C. § 688, and other applicable regulations, a thorough review of these allegations has been initiated to determine further actions, which may include recall to active duty for court-martial proceedings or administrative measures.[64]

76.    Secretary Hegseth reposted this statement on his *X* page, calling the congressmembers the "Seditious Six" and stating that "Mark Kelly (retired Navy Commander [sic]) is still subject to UCMJ . . . . [T]he Department is reviewing his statements and actions."[65]

77.    The following day, Secretary Hegseth posted that "'Captain' Kelly['s] . . . sedition video intentionally undercut good order & discipline" and referred to "When/if [Senator Kelly is] recalled to active duty."[66]

78.    The Department of Defense then posted a scan of a memorandum from Secretary Hegseth directed to the Secretary of the Navy, with the subject line "Potentially Unlawful Conduct by Captain Mark E. Kelly, U.S. Navy (Ret.)."[67] The memo stated in its entirety:

> The Department of War recently received information regarding potentially unlawful comments made by CAPT (Ret) Mark E. Kelly in a public video, on or about November 18, 2025. I am referring this, and any other related matters, for your review, consideration, and disposition as you deem appropriate. Please provide me a brief on the outcome of your review by no later than December 10, 2025.

---

[64] Dep't of War (@DeptofWar), X (Nov. 24, 2025, at 11:50 ET), perma.cc/Y98G-HA4C.
[65] Pete Hegseth (@PeteHegseth), X (Nov. 24, 2025, at 12:27 ET), perma.cc/CUU8-9DPK.
[66] Pete Hegseth (@PeteHegseth), X (Nov. 25, 2025, at 07:29 ET), perma.cc/QFP4-MKQW.
[67] Dep't of War (@DeptofWar), X (Nov. 25, 2025, at 16:46 ET), perma.cc/GKQ6-64YF.

79.    Despite the deadline, December 10 came and went, and Senator Kelly heard nothing.

80.    On December 11, there were news reports that the Secretary of the Navy had delivered his report regarding Senator Kelly to Secretary Hegseth.[68]

81.    On December 15, Senator Kelly's counsel sent by email a letter addressed to Secretary Phelan, *see* Letter from Paul J. Fishman to John Phelan, U.S. Sec'y of the Navy (Dec. 15, 2025) (attached as Ex. B), recounting "public reporting" that Secretary Phelan had submitted his brief to the Department of Defense's Office of General Counsel for "legal review and input." The letter then made clear that "there is no legitimate basis for any type of proceeding against Senator Kelly, and any such effort would be unconstitutional and an extraordinary abuse of power." *Id.* at 1. The letter warned that "[i]f the Executive Branch were to move forward in any forum," including a "disciplinary, or administrative" forum, counsel would "take all appropriate legal action on Senator Kelly's behalf to halt the Administration's unprecedented and dangerous overreach." *Id.* A Department of Defense official acknowledged receipt of that letter on December 15, *see* Email from Brent E. Troyan, Exec. Assistant and Special Couns., U.S. Dep't of Defense, to Paul J. Fishman (Dec. 15, 2025, at 16:26 ET) (attached as Ex. C).

82.    The next day, December 16, Secretary Hegseth shared on *X* a media report titled "Hegseth's office 'escalating' probe of Sen. Mark Kelly, Pentagon says." The Secretary's post confirmed the report was "accurate."[69]

83.    On December 18, Senator Kelly's counsel responded by emailing a letter to the General Counsel of the Department of Defense, *see* Letter from Paul J. Fishman to Pete Hegseth,

---

[68] *See, e.g.*, Zachary Cohen, *Navy Delivers Report to Hegseth on Potential of Punishment for Sen. Mark Kelly Over 'Illegal Orders' Video*, CNN (Dec. 11, 2025), edition.cnn.com/2025/12/11/politics/navy-report-kelly-illegal-orders-video.

[69] Pete Hegseth (@PeteHegseth), X (Dec 16, 2025, 2025, at 21:35 ET), perma.cc/PA4B-RXXG.

U.S. Sec'y of Defense (Dec. 18, 2025) (attached as Ex. D), regarding "press reports that [the Secretary's] office 'is escalating the preliminary review of Captain Mark Kelly, USN (Ret.), to an official Command Investigation.'" That letter explained that the "investigation appears to be premised entirely on accurate statements of law that the Senator made in his capacity as a member of the Senate Armed Services Committee," that "[t]he First Amendment plainly protects those statements," and that a "command investigation of a sitting Member of Congress who is not subject to military command authority would breach numerous constitutional and statutory safeguards."

84.     The letter then requested information from the General Counsel about the command investigation, asking:

(1) Has the Department in fact commenced a command investigation concerning Senator Kelly?

(2) If so, which official ordered the investigation and under what authority? Which command or office is conducting the investigation?

(3) What are the purported "serious allegations of misconduct" under investigation?

(4) On what basis does the Department claim to assert jurisdiction over Senator Kelly?

85.     Other than confirming receipt, Defendants have not responded to that letter. *See* Email from Earl G. Matthews, General Counsel, U.S. Dep't of Defense, to Paul J. Fishman (Dec. 19, 2025, at 08:13 ET) (attached as Ex. E),

## F.     Defendants' Punitive Actions Against Senator Kelly Based on Public Statements

### *(i)     Secretary Hegseth's Letter of Censure*

86.     On January 5, 2026, at 9:45 AM ET, Senator Kelly was notified by email that Secretary Hegseth had issued a Secretarial Letter of Censure against him. Letter from Pete Hegseth, U.S. Sec'y of Defense, to Mark Kelly, U.S. Senator (Jan. 5, 2026) ("Ltr.") (attached as Ex. F).

87.     While naval regulations authorize the Secretary of the *Navy* (and not the Secretary of Defense) to "censure members, including retirees," by "send[ing] communications to subordinate officers that may be in the nature of a reprimand," U.S. Dep't of the Navy, JAGINST 5800.7G CH-2, *Manual of the Judge Advocate General* § 0114A(a) (Dec. 1, 2023), secnav.navy.mil/doni/SECNAV%20Manuals1/5800.7G_CH-2.pdf, Secretary Hegseth did not identify the legal basis for his letter.

88.     Naval regulations provide that "[u]nless otherwise directed, a copy of [a censure] letter will be filed in the official record of the member censured." *Id*. Once in the file, "[t]he issuance of a Secretarial letter of censure and the underlying facts may be mentioned . . . and used to support . . . any . . . administrative action on the part of the service concerned." *Id.* at § 0114A (b).

89.     The censure letter identified three categories of statements on which the Senator's censure was based: (1) reminders to servicemembers of their duty to refuse unlawful orders; (2) criticism of military leadership for "firing admiral and generals" and surrounding themselves with "yes men"; and (3) concerns that certain military operations may be illegal.

90.     As to the first category, the censure letter stated that "[b]etween June 2025 and December 2025, [Senator Kelly] engaged in a sustained pattern of public statements that characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse orders related to those operations." Ltr. at 1. The letter relied specifically on the November 18 video:

> [O]n November 18, 2025, you participated in and distributed a video titled "Don't Give Up the Ship," in which you identified yourself as "a Captain in the United States Navy" and stated: "We want to speak directly to members of the military . . . This administration is pitting our uniformed military . . . against American citizens . . . You can refuse illegal orders. You must refuse illegal

orders . . . Know we have your back . . . Stand up for our laws, for our
Constitution."

Ltr. at 1.

91.     The censure letter concluded that the "joint statement" Senator Kelly and his
colleagues released on November 20, 2025 "reinforc[ed]" Senator Kelly's alleged "call for refusal
of what [he] characterized as 'unlawful orders.'" Ltr. at 1.

92.     Second, the censure letter faulted Senator Kelly for "criticiz[ing] military
leadership for 'firing admirals and generals' and surrounding themselves with 'yes men,'" as well
as his statement that Senator Kelly would "ALWAYS defend the Constitution." Ltr. at 1.

93.     Third, the censure letter alleged that Senator Kelly "continued to accuse [Secretary
Hegseth] and senior military officers of war crimes and to frame resistance to lawful orders as
protecting against overreach" throughout December 2025. Ltr. at 1.

94.     Based on these findings, the Secretary made five "determination[s]" regarding
Senator Kelly's statements:

1. **Undermines the Chain of Command:** By publicly accusing the Secretary of
War and senior military officers of war crimes and characterizing lawful operations
as illegal, you have directly attacked the legitimacy of military leadership and the
lawfulness of their orders.

2. **Counsels Disobedience:** By telling servicemembers they "can refuse illegal
orders" and "must refuse illegal orders" in the context of operations you have
specifically characterized as illegal, you have counseled members of the armed
forces to refuse lawful orders related to National Guard deployments and counter-
narcotics operations.

3. **Creates Confusion About Duty:** Your statements create confusion among
servicemembers about their duty to obey lawful orders. When a retired officer with
your credentials tells servicemembers that current operations constitute war crimes
and illegal orders, it directly prejudices good order and discipline by encouraging
servicemembers to second-guess lawful orders.

4. **Brings Discredit Upon the Armed Forces:** Your public accusations of war
crimes and illegal conduct by military leadership bring discredit upon the armed
forces by falsely portraying lawful military operations as criminal acts.

5. **Is Conduct Unbecoming an Officer:** By counseling servicemembers to refuse orders while simultaneously characterizing specific operations as illegal, you have engaged in conduct that seriously compromises your standing as an officer and brings dishonor to the officer corps.

Ltr. at 1-2.

95.     The censure letter continued: "For [these] reasons . . . I hereby formally CENSURE you for conduct prejudicial to good order and discipline in the armed forces and conduct unbecoming an officer." Ltr. at 2. The letter specified that Senator Kelly may submit a written rebuttal within thirty days of receipt. But the letter made clear that he "do[es] not have a right to appeal this administrative action." *Id.* at 3.

96.     Relying on the same determinations, Secretary Hegseth's letter announced his conclusion that "good cause exists to reopen the determination of your retired grade under the provisions of 10 U.S.C. § 1370. Accordingly, I will direct the Secretary of the Navy to recommend to me whether a reduction in grade is appropriate in your case." Ltr. at 3.

97.     Navy regulations provide "[e]xamples" of conduct that "should" result in a recommendation for "retirement in a lesser grade." U.S. Dep't of Navy, Sec'y of Navy Instr. 1920.6D, Enclosure 9, 2(a) (July 24, 2019), bit.ly/4a3oAuy. These include a finding that an officer committed an act that "abuse[s] . . . a special position of trust," "brings discredit upon the armed services," prejudices the "ability of the military unit or the organization to maintain discipline, good order, and morale." *Id.*

98.     The censure letter made several such accusations, framed as conclusive "determination[s]," including that Senator Kelly's conduct in a "current position of authority" "undermines the chain of command," "counsels disobedience," "creates confusion about duty,"

"brings discredit upon the Armed Forces," has "a detrimental impact on military discipline and good order," and is "unbecoming" of an officer. Ltr. at 3 (capitalization and emphasis modified).

99.    The letter ended with a stark warning: "as a retired Naval officer, you remain subject to the Uniform Code of Military Justice. If you continue to engage in conduct prejudicial to good order and discipline, *you may subject yourself to criminal prosecution or further administrative action*." Ltr. at 3 (emphasis added).

100.    On January 5, 2026, at 9:50 AM ET, Secretary Hegseth posted on *X*:

Six weeks ago, Senator Mark Kelly — and five other members of Congress — released a reckless and seditious video that was clearly intended to undermine good order and military discipline. . . .

[I]n response to Senator Mark Kelly's seditious statements — and his pattern of reckless misconduct — the Department of War is taking administrative action against Captain Mark E. Kelly, USN (Ret). The department has initiated retirement grade determination proceedings under 10 U.S.C. § 1370(f), with reduction in his retired grade resulting in a corresponding reduction in retired pay.

To ensure this action, the Secretary of War has also issued a formal Letter of Censure, which outlines the totality of Captain (for now) Kelly's reckless misconduct. . . .

. . . .

These [administrative] actions are based on Captain Kelly's public statements from June through December 2025 in which he characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse lawful orders. This conduct was seditious in nature and violated Articles 133 and 134 of the Uniform Code of Military Justice, to which Captain Kelly remains subject as a retired officer receiving pay.[70]

101.    At 12:12 PM ET, Senator Kelly's counsel received by email a letter from the Chief of Naval Personnel referring Senator Kelly to retirement grade determination proceedings ("grade-determination letter"). *See* Letter from J.J. Czerkewko, Chief of Naval Personnel, to Mark Kelly,

---

[70] Pete Hegseth (@PeteHegseth), X (Jan. 5, 2026, at 09:50 ET), perma.cc/679E-92JM.

U.S. Senator (Jan. 5, 2026) (attached as Ex. G). That letter confirmed that Senator Kelly's "retirement paygrade will be revisited." Ex. G at 1.

102.    According to the grade-determination letter, "[t]he factual basis supporting this action is [the] Secretary of War letter of censure." Ex. G at 1.

103.    The grade-determination letter cited 10 U.S.C. § 1370 as its authority to revisit Senator Kelly's grade determination.

104.    Under § 1370, officers are ordinarily retired at the highest grade at which they served while on active duty, if their service was satisfactory. 10 U.S.C. § 1370(a)(1), (3). In general, that determination of satisfactory service is "administratively final" and can only be "reopened," as relevant here, for "good cause." *Id.* § 1370(f)(1), (2)(D).

105.    A finding of "good cause" sufficient to reopen the initial determination must concern whether an officer "served *on active duty* satisfactorily." *See Spellissy v. United States*, 103 Fed. Cl. 274, 281-82 (2012) (emphasis added).

106.    The grade-determination letter specified that the "least favorable outcome" as a result of the proceedings would be "retire[ment] at an inferior pay grade." Ex. G at 1.

107.    The grade-determination letter instructed Senator Kelly to provide a response "within 10 working days of the date of this letter," and advised that the "[f]ailure to respond shall constitute a waiver of these rights." Ex. G at 1.

108.    Secretary Hegseth's determinations stated in his censure letter, as well as his other public statements, have inflicted reputational harm related to the Senator's service record, placed his grade and pay in jeopardy, and prejudged the outcome of the grade-determination proceeding. Any further attempts to exhaust remedies for correcting these determinations within the agency would be futile.

### G.    Ensuing Events

109.    In response to the censure letter and the grade-determination letter, Senator Kelly's counsel transmitted a letter to Defendants on January 7, 2026. *See* Letter from Paul J. Fishman to Pete Hegseth, U.S. Sec'y of Defense (Jan. 7, 2026) (attached as Ex. H). That letter explained that the censure and other Departmental actions it proposed (including grade-determination proceedings) "violate the Constitution in at least four ways, exceed [Secretary Hegseth's] and the Department's statutory authority, and defy the Administrative Procedure Act." Ex. H at 2. In particular, the letter explained that Defendants' actions were impermissible under the First Amendment, the Speech or Debate Clause, the constitutional separation of powers, and the Due Process Clause, and that it exceeded the Secretary's authority under § 1370. Ex. H at 2-3.

110.    That letter thus called on the Secretary to "halt immediately any further proceedings—and stay the effects of any further determinations, should [he] nevertheless proceed—pending judicial review." Ex. H at 2. It also specifically called for Secretary Hegseth to "immediately rescind the Letter; direct the Chief of Naval Personnel to withdraw the Notification; and vacate and halt any other adverse actions against Senator Kelly." That includes "reopen[ing] the grade at which Senator Kelly retired; or includ[ing] or plac[ing] the Letter in his military file." Ex. H at 1. And it demanded the "withdraw[al] of [the Secretary's] threat of criminal prosecution." Ex. H at 1. Counsel requested that the Department respond in writing by January 9 that it had taken these steps, and advised that the Senator would proceeding accordingly if he received no satisfactory response.

111.    The letter also asked the Department to "take[] necessary steps to preserve all documents, electronically stored information, and other tangible materials that are potentially relevant to this matter," given the "prospect of litigation or other disputes." Ex. H at 1.

112.    On January 8, 2026, the General Counsel of the Department of Defense acknowledged receipt of the letter and confirmed that "[w]e will preserve all relevant materials as required by law." *See* Email from Earl G. Matthews, General Counsel, U.S. Dep't of Defense, to Paul J. Fishman (Jan 8, 2026, at 08:21 ET) Ex. I. He did not, however, respond to the substance of the letter.

113.    Also on January 7, 2026, Secretary Hegseth reiterated in a media appearance that his conclusions are firm:

> We have evaluated those statements, not just that one video, which was incredibly reckless. He knew exactly what he was doing . . . And watching the, I don't know, hissy fit that he's been throwing ever since, shows us just how over the target we are. He knew exactly what he was saying . . . He understood the doubt and uncertainty he was putting into the process by vaguely alluding to illegal orders but . . . never pointing to what that would mean.[71]

114.    Secretary Hegseth continued that the Administration's "reaction underscores how serious this action is. Reducing a rank or pay is a serious administrative action that sends real signals that we take these things incredibly seriously. So he's got the time, by statute, or by directive, to reply, we'll review after that, but . . . I don't think anybody should . . . minimize how significant this is."[72]

115.    On January 5, Common Defense, a grassroots organization of veterans and military families, issued the following statement:

> This campaign against Senator Kelly is not about accountability, it is about silencing dissent against the Trump administration. It is designed to send a message to every retired service member and every veteran in public life that speaking honestly about unlawful orders and constitutional limits will put a target on their back.[73]

---

[71] DOW Rapid Response (@DOWResponse), X (Jan 7, 2026, at 14:40 ET), perma.cc/CSK4-RUEU.

[72] *Id.*

[73] Press Release, Common Defense, Common Defense Stands By Senator Kelly Amid Hegseth's Threats of Demotion and Censure (Jan. 5, 2026), perma.cc/458Z-EG6W.

116.    Despite the ongoing threats against him, Senator Kelly intends to continue to speak on matters of public concern, including military operations. He is also committed to fulfilling his duties as a member of the Senate Armed Services Committee and as a representative for the people of Arizona. He also recognizes the danger that the Defendants' actions pose to the rights of all retired veterans to speak out on matters of public concern.

117.    As Senator Kelly explained: Defendants "aren't going to silence me. They aren't going to keep me from speaking out. And they aren't going to stop me from doing my job. Enough of the bullying. Enough of the intimidation. Enough of the threats."[74]

118.    While Senator Kelly himself will not be silenced, Senators from across the aisle have acknowledged that the Secretary's censure letter has, in Senator Thom Tillis's words, "a chilling effect on speech."[75]

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE FIRST AMENDMENT

119.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

120.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The government cannot "punish or suppress disfavored expression," *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 188 (2024), or retaliate against such expression, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018).

121.    Defendants' actions punish Senator Kelly for his protected speech. Defendants' actions seek to discipline the Senator for three categories of public statements: (1) reminders to

---

[74] Press Release, Kelly: "I've been through a lot worse in service to my country. The president and Pete Hegseth aren't going to silence me" (Dec. 1, 2025), perma.cc/CB3X-NKBJ.
[75] Alexander Bolton, *2 GOP Senators Caution Hegseth on Punishing Kelly*, The Hill (Jan. 5, 2026), perma.cc/CZS6-UEEU.

servicemembers of their duty to refuse unlawful orders; (2) criticism of military leadership for "firing admirals and generals" and surrounding themselves with "yes men"; and (3) concerns that certain military operations might be illegal. All three categories are protected political speech. *See, e.g.*, *Bond v. Floyd*, 385 U.S. 116 (1966).

122.     Defendants' actions are subject to strict scrutiny because they seek to punish Senator Kelly based on the content and viewpoint of his speech. *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The censure letter states that Defendants' actions are predicated exclusively on Senator Kelly's public statements, and are punishing Senator Kelly based on both the content of his statements (*e.g.*, that they relate to the lawfulness of "military operations" and the "firing [of] admirals and generals") and their viewpoint (*e.g.*, "criticizing military leadership for 'firing admirals and generals'").

123.     Even assuming that the Secretary's inferences about Senator Kelly's statements are fair, the statements are entitled to First Amendment protection because they were neither "directed to inciting or producing imminent lawless action" nor "likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

124.     Furthermore, Defendants' actions amount to unconstitutional First Amendment retaliation. Senator Kelly's speech is protected by the First Amendment; Defendants took materially adverse action against the Senator that would deter a person of ordinary firmness in his position; and a causal link exists between the protected speech and the adverse action. *See, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019).

125.     Defendants' censure and reopening of his grade determination as a punishment for his protected speech would deter a person of ordinary firmness. *See, e.g.*, *Jenner & Block LLP v.*

*U.S. Dep't of Just.*, 784 F. Supp. 3d 76 & n.7, 95 (D.D.C. 2025); *Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994).

126.    The censure letter explicitly states that these adverse actions are taken in response to Senator Kelly's "public statements." Ltr. at 1.

127.    Defendants' actions must be enjoined and declared unlawful.

128.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

**COUNT II**
**VIOLATION OF THE SPEECH OR DEBATE CLAUSE**
**AND LEGISLATIVE IMMUNITY**

129.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

130.    The Speech or Debate Clause provides that "for any Speech or Debate in either House," Members of Congress "shall not be questioned in any other Place." U.S. Const. art. I, § 6.

131.    The "fundamental purpose" of this Clause is to free "the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *United States v. Helstoski*, 442 U.S. 477, 492 (1979) (quoting *Gravel v. United States*, 408 U.S. 606, 618 (1972)).

132.    The Clause covers all "legislative activity," not just "literal speech or debate." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501, 503-05 (1975).

133.    The Speech or Debate Clause provides "absolute" immunity from all manner of adversarial questioning in the form of any civil or criminal proceedings. *Eastland*, 421 U.S. at 502-03.

134.    Senator Kelly's statements were legislative acts protected by the Speech or Debate Clause for which he cannot be subject to any adversarial proceedings.

135.    All three categories of statements identified in Secretary Hegseth's letter fall within the legislative sphere.

136.    First, the letter references statements reminding servicemembers of their duty to refuse unlawful orders. Article I of the Constitution expressly places regulation of the armed forces within Congress's legislative powers. *See* U.S. Const. art. I, § 8, cl. 14. Congress has, since the founding, exercised those authorities to legislate a military justice system, *see, e.g.*, Act of Apr. 10, 1806, 2 Stat. 359, including through its enactment of the UCMJ, Act of May 5, 1950, Pub. L. No. 81-506, ch. 169, 64 Stat. 108 (1950).

137.    Second, the letter references statements criticizing military leadership for "firing admirals and generals" and surrounding themselves with "yes men." Such statements fall within the legislative sphere. Congress has authority over military and civilian defense appointments. *See, e.g.*, 10 U.S.C. § 1161 (articulating circumstances under which a "commissioned officer may be dismissed"). For example, the Senate Armed Services Committee, of which Senator Kelly is a member, exercises the Senate's constitutional advice-and-consent authority by reviewing presidential nominations for, and overseeing, senior appointments to the Department of Defense and military branches. *See* Standing Rules of the Senate, S. Doc. No. 113-18, at 43-44 113th Cong. (1st Sess. 2013) (Rule XXXI, 1) (nominations by the President "shall . . . be referred to appropriate committees"); *id.* at 20 (Rule XXV, 1(c)(1)) (conferring jurisdiction to the Armed Services Committee over all "matters relating to . . . Department of Defense, the Department of the Army, the Department of the Navy, and the Department of the Air Force, generally").

138.    Third, the letter ascribes to Senator Kelly statements expressing concern that certain military operations might constitute war crimes. Congress has long codified the international laws of war into the domestic legal architecture, including by criminalizing war crimes, *see, e.g.*, 18

U.S.C. § 2441, and by exercising the Senate's constitutional treaty-ratifying role, *see, e.g.*, Geneva Convention for the Amelioration of the Condition of Wounded, Sick and Shipwrecked Members of Armed Forces at Sea, Aug. 12, 1949, 6 U.S.T. 3217, 75 U.N.T.S. 85; Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287.

139.    These identified statements also came amid ongoing committee investigations and hearings about the military's actions and while Senator Kelly and others actively have been pursuing legislation related to these same issues.

140.    These statements also are protected by a presumptive immunity for official acts, which Defendants here cannot overcome. *See Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

141.    Defendants' actions must be enjoined and declared unlawful.

142.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT III
## VIOLATION OF THE SEPARATION OF POWERS

143.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

144.    The Constitution presumes coequal branches, and the "doctrine of separation of powers" lies "at the heart of our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 119 (1976).

145.    Separation-of-powers jurisprudence is animated by two primary concerns, "encroachment and aggrandizement." *Mistretta v. United States*, 488 U.S. 361, 382 (1989). Defendants' actions do both.

146.    Allowing Defendants to punish a Senator through military proceedings for his political speech erodes the separation of powers and gives the Executive a power over legislators that the Constitution does not contemplate.

147.    Defendants' actions impermissibly usurp Congress's authority to punish its own members and directly burden Congress's ability to investigate, oversee, and criticize the Executive's use of the armed forces, including by targeting a sitting Senator based on his political speech.

148.    Defendants' actions rest on the premise that Senator Kelly remains part of the military and subject to military discipline, even while serving as Senator. That premise is foreclosed by the Incompatibility Clause of the Constitution, which expressly forbids Members of Congress from simultaneously "holding any Office under the United States," including a military office, U.S. Cont. art. I, § 6. *See, e.g.*, *United States v. Lane*, 64 M.J. 1, 7 (C.A.A.F. 2006).

149.    To Plaintiff's knowledge, a sitting Member of Congress has never been subject to military punishment based solely on his speech. The novelty of Defendants' actions confirms their unconstitutionality. *See, e.g.*, *Seila Law LLC v. CFPB*, 591 U.S. 197, 204-05 (2020); *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014).

150.    Defendants' actions violate the separation of powers.

151.    Defendants' actions must be enjoined, vacated, and declared unlawful.

152.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT IV
## VIOLATION OF DUE PROCESS

153.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

154.    The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend V.

155.    The Due Process Clause requires government decisionmakers to keep an open mind before taking adverse action against an individual.

156.    Agency decisions violate due process when they have been "prejudged" by pertinent Executive Branch officials, because agencies must "exercise [discretionary] authority according to [their] own understanding and conscience." *Bufalino v. Kennedy*, 322 F.2d 1016, 1019 (D.C. Cir. 1963) (quoting *Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954)).

157.    Where a "disinterested observer may conclude that [an agency adjudicator] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it," the agency has "deni[ed] due process." *Cinderella Career & Finishing Schs., Inc. v. FTC*, 425 F.2d 583, 591 (D.C. Cir. 1970) (citation omitted).

158.    Secretary Hegseth is the relevant agency decisionmaker here, having issued the censure letter and made the relevant "determination[s]." Ltr. at 2. His letter states that the "Secretary of the Navy [will] *recommend* to me whether a reduction in grade is appropriate in your case," but ultimately, "*I* will determine if a reduction is warranted." *Id.* at 3 (emphasis added).

159.    Secretary Hegseth has already adjudged the decision to reduce Senator Kelly's grade. The censure letter declares without qualification that Senator Kelly's protected speech "undermines the chain of command," "counsels disobedience," "creates confusion about duty," "brings discredit upon the Armed Forces," and is "unbecoming" of an officer. Ltr. at 2 (capitalization omitted). These determinations parrot the standards that, under Naval regulations, justify a reduction in grade. And the grade-determination letter confirms that the sole "factual basis supporting this action" is Secretary Hegseth's letter of censure. Ex. G at 1.

160.    Secretary Hegseth's public statements further establish that the underlying decision to censure Senator Kelly is preordained. On the same day that the Department of Defense announced it was reviewing "serious allegations of misconduct against Captain Mark Kelly," Secretary Hegseth posted that the video Senator Kelly participated in was "Seditious." *See supra*

¶ 76. The next day, Secretary Hegseth posted again that "'Captain' Kelly['s] . . . sedition video intentionally undercut good order & discipline." *See supra* ¶ 77. And Secretary Hegseth questioned Senator Kelly's grade publicly. *See supra* ¶ 100.

161.    Defendants' actions must be enjoined and declared unlawful.

162.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT V
## VIOLATION OF 10 U.S.C. § 1370

163.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

164.    Under 10 U.S.C. § 1370, an officer's retirement grade must be determined *exclusively* by active-duty conduct: Officers "shall be retired in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily," unless "an officer committed misconduct in a lower grade than the retirement grade otherwise provided for the officer by this section." 10 U.S.C. § 1370(a)(1), (3).

165.    Under § 1370, the Secretary of the Navy—not the Secretary of Defense—"shall" make the "determination of satisfactory service" for officers "serving in a grade at or below the grade of major general or rear admiral." 10 U.S.C. § 1370(a)(2)(A).

166.    An O-6, Navy Captain is a grade "below the grade of major general or rear admiral."

167.    Absent limited exceptions not applicable here, an officer's retirement grade is "final on the day the officer is retired." 10 U.S.C. § 1370(f)(1).

168.    One such exception is that the Secretary of the Navy—but not the Secretary of Defense—may reopen an officer's retirement grade determination if he finds "good cause." 10

U.S.C. § 1370(f)(2)(D). He may do so only "pursuant to regulations prescribed by the Secretary of Defense." *Id.*

169.    Defendants' reopening of Senator Kelly's grade determination violates § 1370 for three independent reasons.

170.    First, Defendants' reopening is based impermissibly on post-retirement conduct in violation of these provisions and in excess of Defendant's authority.

171.    Defendants' forthcoming, and preordained, grade determination violates these provisions and exceeds Defendants' statutory authority because it is also based impermissibly on post-retirement conduct.

172.    Reading § 1370 to allow reopening and reducing the grade of a sitting Member of Congress based on post-military-retirement speech would raise serious constitutional concerns under the First Amendment, the Speech or Debate Clause, the separation of powers, and the "make Rules" Clause of Article I. Under the "constitutional-avoidance principle," the statute should therefore be construed to foreclose Defendants' action. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 775-76 (2025).

173.    Second, Defendants' actions violate these provisions and exceed their statutory authority because the Secretary of Defense, and not the Secretary of the Navy as is required by law, determined that there was good cause to reopen Senator Kelly's grade determination, attempted to reopen Senator Kelly's grade determination, and reserved for himself the final decision on whether to reduce Senator Kelly's retirement grade.

174.    Third, Defendants' actions violate these provisions and exceed their statutory authority because they attempt to reopen Senator Kelly's retirement grade determination for "good cause," but no such "good cause" exists.

175.    Defendants' actions must be enjoined and declared unlawful.

176.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT VI
## VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
## CONTRARY TO LAW

177.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

178.    Under the Administrative Procedure Act ("APA"), courts shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

179.    Defendants' actions are contrary to law under each of the constitutional and statutory provisions described in Counts I through V above.

180.    Defendants' actions are final because they "mark the consummation of the agency's decisionmaking process" and determine "rights or obligations . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up).

181.    Defendants' actions must be enjoined and declared unlawful, and vacated and set aside under 5 U.S.C. § 706(2).

182.    The Court should also "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

183.    If Defendants' actions are not enjoined and declared unlawful, and vacated and set aside, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT VII
## VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
## ARBITRARY AND CAPRICIOUS

184.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

185.    Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2).

186.    Defendants' actions are arbitrary and capricious because the agency failed to "examine the relevant [information] and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted). The agency has not offered any "rational connection" between Senator Kelly's statements and Defendants' actions. *Id.*

187.    The agency failed to consider less burdensome, alternative ways of achieving its objectives short of punishment and reopening the Senator's grade determination. *State Farm*, 463 U.S. at 48; *see also, e.g.*, *Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 746 n.36 (D.C. Cir 1986) ("The failure of an agency to consider obvious alternatives has led uniformly to reversal.").

188.    The agency also took into account impermissible factors in reaching its decision, including content and viewpoint-discriminatory purposes and protected legislative activity. *See State Farm*, 463 U.S. at 43.

189.    Defendants' actions are also pretextual, in that the stated reasons are not "genuine." *Dep't of Com. v. New York*, 588 U.S. 752, 780, 785 (2019). Agency action that "rest[s] on a pretextual basis" must be set aside. *Id.* at 780. In determining whether an agency's given explanation for its action is pretextual, courts are "not required to exhibit a naiveté from which

ordinary citizens are free." *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.). Here, the benign content of Senator Kelly's speech and the repeated attacks by Defendants against Senator Kelly surrounding the decisions confirm that a desire to silence his views, and not genuine concerns related to military discipline, drove the decisions.

190.    Defendants' actions are final because they "mark the consummation of the agency's decisionmaking process" and determine "rights or obligations . . . from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (citation omitted).

191.    Defendants' actions must be enjoined and declared unlawful, and vacated and set aside under 5 U.S.C. § 706(2).

192.    The Court should also "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

193.    If Defendants' actions are not enjoined and declared unlawful, and vacated and set aside, Plaintiff will suffer substantial injury, including irreparable injury.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests an order:

a)  declaring Defendants' actions unlawful;

b)  enjoining the enforcement of Defendants' actions;

c)  vacating and setting aside Defendants' actions under 5 U.S.C. § 706;

d)  staying the effective date of Defendants' actions under 5 U.S.C. § 705;

e)  preliminarily and permanently enjoining Defendants, their agents, employees, appointees, successors, and anyone acting in concert or participation with Defendants from

implementing, maintaining, or giving effect to Defendants' actions, including the Secretary of Defense's determinations and threats of further criminal or administrative action;

f) awarding Plaintiff reasonable costs and attorney's fees in accordance with law, including but not limited to 28 U.S.C. § 2412; and

g) issuing any and all other such relief as the Court deems just and proper.

Dated: January 12, 2026

Respectfully submitted,

By:   /s/ Paul J. Fishman
Paul J. Fishman (DC Bar No. 449014)
ARNOLD & PORTER KAYE SCHOLER LLP
One Gateway Center
Suite 1025
Newark, NJ 07102
(973) 776-1900
paul.fishman@arnoldporter.com

Benjamin C. Mizer (DC Bar No. 204906) (*pro hac vice* forthcoming)
Deborah A. Curtis (DC Bar No. 451716)
Jeffrey H. Smith (DC Bar No. 419-521)
Samuel F. Callahan (DC Bar No. 888314461)
Bonnie E. Devany (*pro hac vice* forthcoming)[*]
Aaron X. Sobel (DC Bar No. 90018659) (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
benjamin.mizer@arnoldporter.com
deborah.curtis@arnoldporter.com
jeffrey.smith@arnoldporter.com
sam.callahan@arnoldporter.com
bonnie.devany@arnoldporter.com
aaron.sobel@arnoldporter.com

---

[*] *Admitted only in Texas; practicing in D.C. pursuant to D.C. Ct. of Appeals R. 49(c)(8), under supervision of D.C. Bar Members.*