# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK KELLY, United States Senator
representing the State of Arizona,

*Plaintiff,*

v.

PETE HEGSETH, in his official capacity as
Secretary of Defense, *et al.*,

*Defendants.*

Case No.: 1:26-cv-00081-RJL

No Oral Argument Requested

**BRIEF OF *AMICI CURIAE* FORMER SERVICE SECRETARIES, RETIRED SENIOR
MILITARY OFFICERS, AND VET VOICE FOUNDATION IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND STAY
UNDER 5 U.S.C. § 705**

Kristy Parker
   *Counsel of Record*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite #163
Washington, D.C. 20006
Tel: (202) 579-4582
Fax: (202) 769-3176
kristy.parker@protectdemocracy.org

J. Andrew Boyle*
Maithreyi Ratakonda*
Christine P. Sun*
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320
Brooklyn, NY 11201
Tel: (202) 999-9305
andrew@statesunited.org
mai@statesunited.org
christine@statesunited.org

*Counsel for Amici Curiae*

Conor Gaffney*
PROTECT DEMOCRACY PROJECT
201 St. Charles Ave, Suite 114
New Orleans, LA 70170
Tel: (202) 579-4582
Fax: (202) 769-3176
conor.gaffney@protectdemocracy.org

Beau C. Tremitiere**
Lauren Groth*
PROTECT DEMOCRACY PROJECT
300 Center Ave, Suite G-251
Superior, CO 80027
Tel: (202) 579-4582
Fax: (202) 769-3176
beau.tremitiere@protectdemocracy.org
lauren.groth@protectdemocracy.org

*\*Pro Hac Vice forthcoming.*

*\*\*Application for admission to D.D.C.
accepted. Oath of admission forthcoming.*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................iii

IDENTITY AND INTEREST OF *AMICI* ................................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 3

ARGUMENT ............................................................................................................................. 5

    I.    Veteran Participation in Public Life is Essential to Democratic Self-Government............ 5

    II.   The Duty to Disobey Illegal Orders is a Critical Matter of Public Concern....................... 6

    III.  The Limited Restrictions on Speech Authorized by the UCMJ Are Irrelevant Here ........ 8

CONCLUSION........................................................................................................................ 10

CERTIFICATE OF SERVICE ................................................................................................ 12

APPENDIX: List of *Amici*.................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Garrison v. Louisiana*, 379 U.S. 64 (1964). ............................................................................. 5

*McCutcheon v. FEC*, 572 U.S. 185 (2014) ............................................................................. 6

*Parker v. Levy*, 417 U.S. 733 (1974) ................................................................................. 8, 9

*Trump v. United States*, 603 U.S. 593 (2024) ....................................................................... 8

*United States v. Calley,* 48 C.M.R. 19 (1973) ....................................................................... 7

*United States v. Hartwig*, 39 M.J. 125 (C.A.A.F. 1994) ........................................................ 9

*United States v. Huet-Vaughn*, 43 M.J. 105 (C.A.A.F. 1995) ................................................ 6

*United States v. Schultz*, 39 C.M.R. 133 (1969) .................................................................... 7

*United States v. Voorhees*, 79 M.J. 5 (C.A.A.F. 2019) ........................................................... 9

*United States v. Wilcox*, 66 M.J. 442 (C.A.A.F. 2008) ........................................................ 8, 9

**Statutes**

10 U.S.C. § 502 ................................................................................................................ 8

5 U.S.C. § 3331 ................................................................................................................ 8

**Other Authorities**

Anthony J. Ghiotto, *(Un)lawful Orders,* 27 N.Y.U. J. Leg. & Pub. Pol. 283 (2024) .................... 6

Charter of the International Military Tribunal ........................................................................... 7

*Department of Defense Law of War Manual* ......................................................................... 7

Manual for Courts-Martial .................................................................................................. 7

## IDENTITY AND INTEREST OF *AMICI*[1]

Individual *amici* are forty-one former secretaries of the Army and Navy and retired senior military officers. They have extensive experience in leadership roles in the U.S. Department of Defense and armed forces and demonstrated commitment to and expertise in promoting a disciplined and strong military as well as ensuring the security of the United States. Collectively, these individuals served under each president from Dwight D. Eisenhower to Donald J. Trump.

*Amici* Vet Voice Foundation ("VVF"), is a veteran-led, non-profit, non-partisan organization representing almost two million veterans, military family members, and their supporters. VVF represents veterans and military families across the political spectrum and across the country. It strives to support them and their interests, including by championing policies and actions that protect our country's freedoms and advance our national security.

*Amici* submit this brief to ensure that the perspective of former high-ranking civilian and military leaders—based on their knowledge of and service in the military and their strong interest in its integrity and reputation—is represented before this Court. Like Senator Kelly, nearly all *amici* are veterans who, according to Defendants, remain subject to the jurisdiction of the Uniform Code of Military Justice. Like Senator Kelly, *amici* believe it is their civic duty to speak—as they do here with submission of this brief—with care and candor on matters of public concern. They are deeply concerned by actions of the U.S. government that chill honest and thoughtful public participation of those who served their nation in uniform.

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than *amici* contributed money to fund this brief's preparation or submission. Pursuant to Rule Fed. R. App. P. 26.1, *amici curiae* Vet Voice Foundation is a nonprofit corporation. It has no parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

Individual *amici* are identified below. Abbreviated biographies are included in the
Appendix, providing a sense of the well-informed perspectives they bring to this case.

- Former Secretary of the Army Louis E. Caldera

- Former Secretary of the Navy Sean C. O'Keefe

- Admiral C. Steve Abbot, U.S. Navy (Ret.)

- Admiral Thad W. Allen, U.S. Coast Guard (Ret.)

- Admiral Dennis C. Blair, U.S. Navy (Ret.)

- General George W. Casey, Jr., U.S. Army (Ret.)

- General Michael V. Hayden, U.S. Air Force (Ret.)

- Admiral Gregory G. Johnson, U.S. Navy (Ret.)

- Admiral John. B. Nathman, U.S. Navy (Ret.)

- Admiral William A. Owens, U.S. Navy (Ret.)

- Vice Admiral Donald C. Arthur, U.S. Navy (Ret.)

- Vice Admiral Michael T. Franken, U.S. Navy (Ret.)

- Lieutenant General Walter E. Gaskin, U.S. Marine Corps (Ret.)

- Lieutenant General Claudia J. Kennedy, U.S. Army (Ret.)

- Lieutenant General Charles P. Otstott, U.S. Army (Ret.)

- Rear Admiral (Upper Half) William D. Baumgartner, U.S. Coast Guard (Ret.)

- Major General Richard T. Devereaux, U.S. Air Force (Ret.)

- Major General Paul D. Eaton, U.S. Army (Ret.)

- Rear Admiral (Upper Half) F. Stephen Glass, U.S. Navy (Ret.)

- Major General Jonathan S. Gration, U.S. Air Force (Ret.)

- Rear Admiral (Upper Half) Donald J. Guter, U.S Navy (Ret.)

2

- Major General Richard S. Haddad, U.S. Air Force (Ret.)

- Major General Irving L. Halter, Jr., U.S. Air Force (Ret.)

- Rear Admiral (Upper Half) Janice Hamby, U.S. Navy (Ret.)

- Major General Dennis Laich, U.S. Army (Ret.)

- Major General Steven J. Lepper, U.S. Air Force (Ret.)

- Major General Randy E. Manner, U.S. Army (Ret.)

- Major General Frederick H. Martin, U.S. Air Force (Ret.)

- Rear Admiral (Upper Half) David R. Oliver, Jr., U.S Navy (Ret.)

- Major General Antonio Taguba, U.S. Army (Ret.)

- Major General F. Andrew Turley, U.S. Air Force (Ret.)

- Brigadier General Clara Adams-Ender, U.S. Army (Ret.)

- Rear Admiral (Lower Half) James A. Barnett, Jr., U.S. Navy (Ret.)

- Brigadier General Bela J. Chain, Jr., U.S. Army (Ret.),

- Rear Admiral (Lower Half) Jay A. DeLoach, U.S. Navy (Ret.)

- Brigadier General John W. Douglass, U.S. Air Force (Ret.)

- Brigadier General Robert J. Felderman, U.S. Army (Ret.)

- Rear Admiral (Lower Half) Charles D. Harr, U.S. Navy (Ret.)

- Brigadier General David R. Irvine, U.S. Army (Ret.)

- Rear Admiral (Lower Half) Harold L. Robinson, U.S. Navy (Ret.)

- Brigadier General John M. Schuster, U.S. Army (Ret.)

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Defendants have taken the remarkable and unprecedented step of punishing a sitting U.S.

Senator and retired Navy Captain for accurate statements of military law and criticisms of the

Administration's military policy. No retired service member could be lawfully sanctioned for these statements, least of all one whose public office requires that he speak on these very issues.

*Amici* explain below why disciplining Senator Kelly for engaging in protected, political speech violates the First Amendment and, if permitted to stand, would chill public participation by veterans around the country. Diverse viewpoints are critical to a healthy and free marketplace of ideas, and silencing veteran voices would be especially harmful—depriving the public of experienced and informed views on critical matters of national security.

\* \* \*

In light of the gravity of the issues in this case and the potential implications for millions of active-duty and retired members of the armed forces, *amici* believe it is their duty to share their perspective with the Court—notwithstanding a clear recognition that the views expressed herein, and the mere fact of the submission of this brief, may be viewed with disfavor by the Secretary. This decision is not made lightly: the attempt to punish Senator Kelly suggests that public expressions of disagreement with the Secretary—even if made in good faith and supported factually—invite possible retaliation.

Indeed, *amici* are aware of many fellow veterans who would eagerly participate in public debate on important and contested issues, but are declining to do so today, fearing official reprisal. This chilling effect risks silencing public dissent from those who served in uniform—a critical ingredient in American self-governance dating back to those who fought for and won our independence.

## ARGUMENT

## I.    Veteran Participation in Public Life is Essential to Democratic Self-Government

The Constitution broadly protects the right to speak on issues of public concern because debate and deliberation are essential to decisionmaking in a democracy. In a system of government where the people govern themselves, there must be wide latitude for a variety of views on public controversies so issues can be robustly debated, deliberated, and therefore meaningfully decided. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).

This is no less true when the speaker is a retired member of the military. In fact, quite the opposite. By virtue of their service, retired members of our armed forces have a distinct perspective and specialized expertise that contributes uniquely to the public discourse. They also populate all walks of public life, including holding elected public office—like Senator Kelly— and other prominent civic roles. To chill the speech of retired military service members would not only infringe on their individual First Amendment rights, but also impoverish public debate on critical issues relating to our military and its role in domestic and foreign affairs.

Nearly one hundred members of the 119th Congress are veterans.[2] The Vice President is a veteran. One sitting member of the Supreme Court is a veteran. State and local governments, businesses, the press, and universities also all employ veterans in important, public-facing roles. Civic organizations led by veterans, from the American Legion and Veterans of Foreign Wars (VFW) to the Iraq and Afghanistan Veterans of America (IAVA), have long been pillars of civil society and leading voices on matters of public policy. Dating back to the 19th century, veterans

---

[2] Leo Shane III, *Breaking Down the Number of Veterans in the 119th Congress*, Military Times (Jan. 2, 2025), https://www.militarytimes.com/news/pentagon-congress/2025/01/02/breaking-down-the-number-of-veterans-in-the-119th-congress.

have routinely occupied prominent speaking roles during the national conventions of both political parties.

To restrict the ability of these individuals to speak candidly on issues of public importance through the threat of military discipline or loss of retirement benefits would chill public debate at all levels of government, across a broad swath of civil society, and in critical moments of the political process. And it would jeopardize the speech rights, and the corollary rights of the public to hear that speech, of members of both political parties. The Constitution provides strict protection for speech—especially political speech—because of the critical role it plays in a democracy. *McCutcheon v. FEC*, 572 U.S. 185, 228 (2014) (Thomas, J., concurring) ("Political speech is 'the primary object of First Amendment protection' and 'the lifeblood of a self-governing people.'"). This role is no less critical when the speaker is a retired member of the military.

## II.    The Duty to Disobey Illegal Orders is a Critical Matter of Public Concern

The speech principally at issue here—statements addressing how service members should respond to illegal orders—concerns a topic of great interest and relevance to the American people. Individuals who served in uniform, like Senator Kelly, are uniquely qualified to raise and explain this concept in the public discourse.

In truth, it is a settled principle of military administration and federal law that service members have a duty to obey all lawful orders and a corresponding duty to disobey orders when they know, or should know, that the ordered actions are unlawful.[3] The latter obligation derives

---

[3] *See, e.g.*, Anthony J. Ghiotto, *(Un)lawful Orders,* 27 N.Y.U. J. Leg. & Pub. Pol. 283, 288-89 (2024) ("[W]hile military members have a legal obligation to follow lawful orders, they have a similar obligation to disobey unlawful orders."); *United States v. Huet-Vaughn*, 43 M.J. 105, 114 (C.A.A.F. 1995).

from the recognition in the aftermath of World War II and the Nuremberg Trials that it is no defense to illegal conduct for a service member to claim he was acting pursuant to the illegal order of his government or his superiors.[4]

In *United States v. Calley*, the U.S. Court of Appeals for the Armed Forces affirmed this principle, holding that where the substance of an order is clearly illegal, such that "a man of ordinary sense and understanding" would know the order was illegal, the order is no defense to a crime committed under its instruction. 48 C.M.R. 19, 28 (1973) (citing *United States v. Schultz*, 39 C.M.R. 133 (1969)). The Department of Defense has also consistently upheld this standard, directing that "[m]embers of the armed forces are bound to obey only lawful orders. An order that violates the law of war is unlawful and must not be obeyed."[5] And the Manual for Courts-Martial (MCM) clearly explains that while a service member may assert as a defense to any offense that the member was acting pursuant to orders, this defense is not permitted where the service member knew, or a person of ordinary sense and understanding would have known, the orders to be unlawful. MCM, pt. IV, ¶¶ 16c(2)(a), 18c(1)(c). This ethic is likewise reflected in the oath undertaken by all members of the armed forces, which requires a commitment to "support and defend the Constitution of the United States," to "bear true faith and allegiance to

---

[4] *See* Charter of the International Military Tribunal, art. 8, annexed to Agreement by the Government of the United Kingdom of Great Britain and Northern Ireland, the Government of the United States of America, the Provisional Government of the French Republic and the Government of the Union of Soviet Socialist Republics for the Prosecution and Punishment of the Major War Criminals of the European Axis, Aug. 8, 1945, 82 UNTS 280, 288.

[5] *Dep't of Defense, Department of Defense Law of War Manual* § 18.6.1.1. (June 2015, updated July 31, 2023), available at https://media.defense.gov/2023/Jul/31/2003271432/-1/-1/0/DOD-LAW-OF-WAR-MANUAL-JUNE-2015-UPDATED-JULY%202023.PDF; *see also* Paul C. Ney, Jr., *Memorandum for the Heads of the DoD Components,* §1.4 (Aug. 6, 2020), available at: https://ogc.osd.mil/Portals/99/Law%20of%20War/Practice%20Documents/DoD%20GC%20Ney %20Aug%206%202020%20memo%20-%20brief%20overview%20of%20the%20law%20of%20war.pdf ("All servicemembers must . . . refuse to comply with clearly illegal orders to commit violations of the law of war.").

the same," and to "obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice." *See* 10 U.S.C. § 502; 5 U.S.C. § 3331.[6]

As the Attorney General explained in a filing before assuming her present office, "[t]hrough rigorous instruction and tragic lessons from history, military officers are trained not to carry out unlawful orders . . . . servicemembers are required not to do so."[7] Not only is her statement true, but it—like Senator Kelly's speech here—raises points of great importance and interest to the American people.

### III.   The Limited Restrictions on Speech Authorized by the UCMJ Are Irrelevant Here

It is undisputed that "military necessity" can justify otherwise impermissible speech restrictions for active service members in the military setting. *Parker v. Levy*, 417 U.S. 733 (1974). In close cases, courts may be required to weigh competing constitutional interests: "the essential needs of the armed services and the right to speak out as a free American." *United States v. Wilcox*, 66 M.J. 442, 447 (C.A.A.F. 2008).

This, however, is not a close case. The speech at issue – a retired officer's restatement of a settled principle of military law and his expression of opinions about appropriate uses of the military and the safeguarding of its personnel and reputational standing at home and abroad – bears no resemblance to the enumerated actions that may trigger discipline for an active service member under the UCMJ.

---

[6] The oath for enlisted personnel includes the explicit reference to obeying orders, though this language is not included in the oath for military officers.
[7] *See* Brief for Three Former Senior Military Officers and Executive Branch Officials as *Amici Curiae* Supporting Petitioner at 10, *Trump v. United States*, No. 23-939, 603 U.S. 593 (2024).

For example, the Secretary's letter of censure alleges that Senator Kelly's speech constitutes "conduct unbecoming an officer." *See* Dkt. 1, Ex. F. Yet, to punish speech as "conduct unbecoming an officer" in violation of UCMJ Article 133, courts have required a showing that the words at issue present a "clear and present danger," of "dishonoring or disgracing" the officer, or "seriously detract[ing] from his character" or "standing." Moreover, the conduct itself must be "more serious than slight" misbehavior that is "of a material and pronounced character." *See United States v. Voorhees*, 79 M.J. 5 (C.A.A.F. 2019); *United States v. Hartwig*, 39 M.J. 125, 129–30 (C.A.A.F. 1994); *Parker,* 417 U.S. at 754.

The Secretary also alleged that Senator Kelly's speech "bring[s] discredit upon the armed forces" and "prejudices good order and discipline." Dkt. 1, Ex. F. Yet, a violation of UCMJ Article 134's prohibition on "service discrediting" speech to the detriment of "good order and discipline" requires a finding of a nexus between the speech "and the military mission or military environment." This nexus requires a showing of an actual negative effect on the mission or environment, a so-called "direct and palpable connection." As the Court of Appeals for the Armed Forces explained, "[i]f such a connection were not required, the entire universe of servicemember opinions, ideas, and speech would be held to the subjective standard of what some member of the public, or even many members of the public, would find offensive." *Wilcox*, 66 M.J. at 449.

The speech targeted for punishment here fails to meet any of these standards. A retired officer no longer serving in the U.S. military or occupying a position in the chain of command does not dishonor or disgrace himself, or undermine mission, command structure, and the execution of orders by reiterating well-settled statements of American law or by speaking his mind on national security policy – even if others may reasonably disagree with his positions. The

recitation of existing legal obligations and expression of views as to where and how troops should be deployed in no way imply that servicemembers should refuse to perform their lawful duties. Nor is there any "direct and palpable connection" to any cognizable harm.

Rather, if this speech may serve as a lawful basis for punishing a retired service member, it is unclear what constitutional protection would remain for veterans wishing to express public disagreement with a present Administration on matters of national defense and military policy. Indeed, that Senator Kelly was punished despite the fact that his speech receives heightened protection under the Constitution's Speech and Debate Clause makes Defendants' actions even more chilling as to all other veterans outside of Congress who do not enjoy special protection for their speech on matters of public importance.

## <u>CONCLUSION</u>

Defendants' attempt to punish protected speech jeopardizes a cherished tradition of veteran participation in public discourse that dates to the earliest days of our republic. *Amici* therefore respectfully request that the Court grant Plaintiff's request for preliminary relief.

Respectfully Submitted,

Dated: January 20, 2026                              /s/ Kristy Parker

Kristy Parker                                       Conor Gaffney*
  *Counsel of Record*                               PROTECT DEMOCRACY PROJECT
PROTECT DEMOCRACY PROJECT                            201 St. Charles Ave, Suite 114
2020 Pennsylvania Ave. NW, Suite #163                New Orleans, LA 70170
Washington, D.C. 20006                               Tel: (202) 579-4582
Tel: (202) 579-4582                                  Fax: (202) 769-3176
Fax: (202) 769-3176                                  conor.gaffney@protectdemocracy.org
kristy.parker@protectdemocracy.org

                                                     Beau C. Tremitiere**
J. Andrew Boyle*                                     Lauren Groth*
Maithreyi Ratakonda*                                 PROTECT DEMOCRACY PROJECT
Christine P. Sun*                                    300 Center Ave, Suite G-251
STATES UNITED DEMOCRACY CENTER                       Superior, CO 80027
45 Main Street, Suite 320                            Tel: (202) 579-4582
Brooklyn, NY 11201                                   Fax: (202) 769-3176
Tel: (202) 999-9305                                  beau.tremitiere@protectdemocracy.org
andrew@statesunited.org                              lauren.groth@protectdemocracy.org
mai@statesunited.org
christine@statesunited.org                           *Pro Hac Vice forthcoming.*

*Counsel for Amici Curiae*                           **Application for admission to D.D.C.
                                                     accepted. Oath of admission forthcoming.*

## **CERTIFICATE OF SERVICE**

I, Kristy Parker, hereby certify that on January 20, 2026, I electronically filed the

foregoing Brief of *Amici* Curiae Former Service Secretaries, Retired Senior Military Officers,

and Vet Voice Foundation with the Clerk of the Court for the United States District Court for the

District of Columbia by using the CM/ECF system. A true and correct copy of this brief has been

served via the Court's CM/ECF system on all counsel of record.


Dated: January 20, 2026                          /s/ Kristy Parker
                                                  Kristy Parker

**APPENDIX: List of *Amici***

**Former Secretary of the Army Louis E. Caldera** graduated from the U.S. Military Academy at West Point in 1978 and served in the Army on active duty from 1978 to 1983. He served in two Senate-confirmed positions in the Clinton Administration, including Secretary of the Army, and as an Assistant to the President and Director of the White House Military Office in the Obama Administration.

**Former Secretary of the Navy Sean C. O'Keefe** began his public service career in 1978 at the Department of Defense and as U.S. Senate staff until his appointment as the Department of Defense Comptroller and Chief Finance Officer in 1989. President George H.W. Bush later named him the 69th Secretary of the Navy. Secretary O'Keefe also served in President George W. Bush's Administration as Deputy Director of the Office of Management and Budget and the 10th Administrator of NASA.

**Admiral C. Steve Abbot, U.S. Navy (Ret.)**, graduated from the U.S. Naval Academy in 1966, after which he was deployed to Vietnam and began a 34-year career with the U.S. Navy. His final active-duty tour was as Deputy Commander-in-Chief, U.S. European Command from 1998 to 2000. Following his retirement, Admiral Abbot served as Deputy Homeland Security Advisor to President George W. Bush from 2001 to 2003.

**Admiral Thad W. Allen, U.S. Coast Guard (Ret.)**, retired in 2010 as the 23rd Commandant of the U.S. Coast Guard. Admiral Allen led the federal responses to Hurricanes Katrina and Rita and the Deepwater Horizon oil spill. He led Atlantic Coast Guard forces in response to the 9/11 attacks and coordinated the Coast Guard response to the Haitian earthquake of 2010.

**Admiral Dennis C. Blair, U.S. Navy (Ret.),** entered active military service upon graduation from the U.S. Naval Academy. Prior to his retirement in 2002 after 34 years of service, Admiral Blair served as the Commander in Chief, U.S. Pacific Command and Director of the Joint Staff. Following retirement, he served as the Director of National Intelligence.

**General George W. Casey, Jr., U.S. Army (Ret.),** enjoyed a 41-year career in the U.S. Army. He is an accomplished soldier and an authority on strategic leadership. During his tenure as the Army Chief of Staff, he is widely credited with restoring balance to a war-weary Army and leading the transformation to keep it relevant in the 21st century. Prior to this, General Casey commanded the Multi-National Force – Iraq, a coalition of more than 30 countries.

**General Michael V. Hayden, U.S. Air Force (Ret.)**, entered active military service in 1969. During his career, he rose to the rank of four-star general and served as Director of the Central Intelligence Agency and the National Security Agency. General Hayden also served as Commander of the Air Intelligence Agency and held senior staff positions at the Pentagon, Headquarters U.S. European Command, and the National Security Council.

**Admiral Gregory G. Johnson, U.S. Navy (Ret.),** served as Commander, U. S. Naval Forces, Europe, and Allied Forces, Southern Europe. He previously had served as Commander, U.S. Sixth Fleet and before that Commander, Theodore Roosevelt Battle Group.  Other assignments

include serving as Military Assistant to the Secretary of Defense, William S. Cohen and earlier as Executive Assistant to General Colin L. Powell, Chairman, Joint Chiefs of Staff. He retired in 2004 after 36 years of service.

**Admiral John. B. Nathman, U.S. Navy (Ret.),** entered active military service following graduation from the U.S. Naval Academy in 1970. During his career, Admiral Nathman served in a variety of sea, shore and joint assignments, and flew over 40 different types of aircraft. He retired in 2007 as Commander, U.S. Fleet Forces Command.

**Admiral William A. Owens, U.S. Navy (Ret.)**, retired in 1996 as the Vice Chairman of the Joint Chiefs of Staff. He began his career as a nuclear submariner, spending a total of 4,000 days aboard submarines, including duty in Vietnam. Admiral Owens was a senior military assistant to two Secretaries of Defense and served as commander of the U.S. 6th Fleet during Operation Desert Storm.

**Vice Admiral Donald C. Arthur, U.S. Navy (Ret.)**, served as 35th Surgeon General of the Navy. He was Commander of the National Naval Medical Center in Bethesda, Maryland, and the Naval Hospital in Camp Lejeune, North Carolina. He deployed and served with the hospital ship USNS Mercy.

**Vice Admiral Michael T. Franken, U.S. Navy (Ret.),** served as the Deputy Commander, U.S. Africa Command and the initial director of the Defense POW/MIA Accounting Agency among many other roles ashore and at sea. His formative operational assignments were in guided missile destroyers. He was the first commanding officer of USS Winston S. Churchill (DDG 81) and served in USS King (DDG 41), USS Dahlgren (DDG 43) and USS Barry (DDG 52). As commodore, he commanded Destroyer Squadron 28 and Task Group 152.0 for the Eisenhower Strike Group.

**Lieutenant General Walter E. Gaskin, U.S. Marine Corps (Ret.),** commissioned in 1974 and retired in 2013 as the Deputy Chairman of the North Atlantic Treaty Organization (NATO) Military Committee. His other assignments as a General Officer included service as the Commanding General of the 2nd Marine Division; Commanding General of II Marine Expeditionary Force (Forward) in Iraq; Vice Director of The Joint Staff; Commanding General of Marine Corps Recruiting Command; Chief of Staff, Naval Striking and Support Forces-Southern Europe; and Commanding General, Training and Education Command.

**Lieutenant General Claudia J. Kennedy, U.S. Army (Ret.),** served for 32 years as an officer in the Women's Army Corps and then in Military Intelligence. When she retired in 2000, the Army intelligence staff, in collaboration with other intelligence services and agencies published a study projecting future international security threats 25 years into the future. This laid the foundation for decisions around force structure, modernization and strategic policy shifts.

**Lieutenant General Charles P. Otstott, U.S. Army (Ret.)**, is a graduate of West Point and the National War College. He is a former Deputy Chairman of the NATO Military Committee. He commanded the 25th Infantry Division and was awarded the Silver Star for service in Vietnam.

**Rear Admiral (Upper Half) William D. Baumgartner**, U.S. Coast Guard (Ret.), had a variety of operational and legal assignments during his 33 year career. As a flag officer, he served as the Judge Advocate General (TJAG)/Chief Counsel of the Coast Guard and then as the Commander of the Seventh (Southeast) Coast Guard District.

**Major General Richard T. Devereaux, U.S. Air Force (Ret.)**, graduated from the U.S. Air Force Academy in 1978 and went on to serve 34 years in the Air Force. During his career he logged more than 3,500 hours piloting the C-5 Galaxy, KC-135 Stratotanker, and several other aircraft, and commanded five organizations from the squadron level to the USAF Expeditionary Center. After retiring from the Air Force in 2012, General Devereaux worked as a defense industry consultant and served on several non-profit boards including Chairman of the National D-Day Memorial, Chairman of the Salvation Army of Asheville, President of the Rotary Club of Asheville, and Chairman of Blue Ridge Public Radio.

**Major General Paul D. Eaton, U.S. Army (Ret.)**, served over thirty years as an Infantry officer, including combat and post combat tours in Somalia, Bosnia and Iraq. He commanded the force to recreate the Iraqi Armed Forces after the fall of Saddam, served as Chief of Infantry for the American Army and helped create the Stryker based Infantry divisions.

**Rear Admiral (Upper Half) F. Stephen Glass, U.S. Navy (Ret.),** served in the U.S. Navy for twenty-nine years, serving as Staff Judge Advocate and Force Judge Advocate billets advising Flag rank Commanders regarding military law and procedures, culminating his career as the reserve Judge Advocate General of the Navy. He was awarded the Navy Marine Corps Distinguished Service Medal.

**Major General Jonathan S. Gration, U.S. Air Force (Ret.),** retired in 2006 after a 32-year career in the US Air Force as a fighter pilot and senior officer. During his military service, he logged over 5000 flight hours, served a White House Fellow, commanded several operational units in war, and flew 274 combat missions. As a US diplomat, he served as the Presidential Special Envoy to Sudan and the US Ambassador to Kenya.

**Rear Admiral (Upper Half) Donald J. Guter, U.S. Navy (Ret.)**, served on active duty in the Navy for 29 years, first as a surface warfare officer and then in the Judge Advocate General Corps, ultimately serving as the Judge Advocate General of the Navy from 2000-2002. After retiring from active duty, he served as Dean of Duquesne Law School and subsequently Dean of South Texas College of Law Houston.

**Major General Richard S. Haddad, U.S. Air Force (Ret.)**, was the Vice Commander of the Air Force Reserve Command, responsible for the daily operations of approximately 70,000 citizen Airmen and 300 aircraft among 3 numbered air forces, 33 flying wings, 10 flying groups and one space wing.

**Major General Irving L. Halter, Jr., U.S. Air Force (Ret.),** is an Air Force Academy graduate and former fighter pilot, serving in Iraq, Afghanistan, in the Pentagon with the Joint Chiefs of Staff, and as Vice Superintendent of the Air Force Academy. He is the recipient of two Bronze Stars.

**Rear Admiral (Upper Half) Janice Hamby, U.S. Navy (Ret.),** served on active duty from 1980 until 2012. Dr. Hamby's service included assignments at sea and in war zones, in command, on the Joint Staff, and as a Deputy Department of Defense Chief Information Officer on the staff of the Office of the Secretary of Defense. After retirement she became the Chancellor of National Defense University's College of Information and Cyberspace. She completed her federal service in 2018.

**Major General Dennis Laich, U.S. Army (Ret.),** retired from the U.S. Army after 35 years of service. He spent the last 14 years of his service in various command positions with his final assignment as Commander, 94th Regional Readiness Command. He currently serves as the Director of the Eisenhower Media Network and is the author of *Skin in the Game: Poor Kids and Patriots.*

**Major General Steven J. Lepper, U.S. Air Force (Ret.)**, served for 35 years in the United States Air Force as a judge advocate in a variety of roles including Deputy Legal Counsel to the Chairman of the Joint Chiefs of Staff, commander, and military judge. He culminated his service as Deputy Judge Advocate General of the Air Force.

**Major General Randy E. Manner, U.S. Army (Ret.)**, served over 36 years in the U.S. Army in positions such as the Acting Vice Chief of the National Guard Bureau overseeing the readiness and deployment of over 450,000 Guardsmen, the Deputy Commanding General of the U.S. Third Army, responsible for all Army forces in combat in the Middle East, and as the Acting and Deputy Director of the Defense Threat Reduction Agency, responsible for overseeing the safety of all U.S. nuclear and chemical weapons and developing DoD procedures to respond to pandemics.

**Major General Frederick H. Martin, U.S. Air Force (Ret.),** served 36 years on active duty, culminating in senior command and staff assignments across the global joint force. A command pilot with more than 5,000 flight hours in over a dozen aircraft, he led organizations from squadron- through numbered Air Force-levels. His staff assignments included service on the Joint Chiefs of Staff in the Pentagon, political-military affairs at U.S. Central Command, a key role in standing up U.S. Africa Command in Stuttgart, Germany, and Director of Operations for Air Mobility Command at Scott Air Force Base.

**Rear Admiral (Upper Half) David R. Oliver, Jr., U.S Navy (Ret.),** served as the Chief of Staff of the Seventh Fleet while on active duty and later held appointed positions in the Pentagon under Presidents William J. Clinton and George W. Bush.

**Major General Antonio Taguba, U.S. Army (Ret.)**, served in the U.S. Army for more than 34 years, including time as Deputy Assistant Secretary of Defense for readiness, training and mobilization in the Office of the Assistant Secretary of Defense for Reserve Affairs and as acting director of the Army Staff, Headquarters, Department of the Army.

**Major General F. Andrew Turley, U.S. Air Force (Ret.)**, served in the U.S. Air Force for more than 27 years, in a wide variety of active duty, Air Force Reserve and Air National Guard

judge advocate positions at the wing, major command and Air Staff levels, culminating in his appointment as the Ninth Air National Guard Assistant To The Judge Advocate General. As a federal civilian lawyer, he held senior level legal positions with several federal agencies, including the Department of Justice, the White House, and Department of the Air Force, and served as the general counsel of a small DoD agency. He is a retired member of the Senior Executive Service.

**Brigadier General Clara Adams-Ender, U.S. Army (Ret.),** commissioned in 1961 in the U.S. Army Nurse Corps. She was the first woman to graduate from the U.S. Army Command and General Staff College with a degree in military arts and science and the first Black nurse corps student to graduate from the U.S. Army War College. In addition to a number of teaching and staff nurse roles, she served as Commanding General, Fort Belvoir, Virginia, and Deputy Commanding General of the U.S. Military District of Washington.

**Rear Admiral (Lower Half) James A. Barnett, Jr., U.S. Navy (Ret.),** was a Surface Warfare Officer and attorney. He served as Deputy Commander of the Naval Expeditionary Warfare Command during the height of the wars in Iraq and Afghanistan. He later served as Chief of the Public Safety and Homeland Security Bureau of the Federal Communications Commission.

**Brigadier General Bela J. Chain, Jr., U.S. Army (Ret.),** commissioned into the Army upon graduation from Ole Miss and served as a cryptoanalyst for the National Security Agency while on active duty. As a member of the Mississippi National Guard, he served in a variety of roles from platoon leader to brigade commander as an Armor officer before becoming Assistant Division Commander of the First Cavalry Division. Brigadier General Chain completed his 34-year career as Commander of the 164th Transportation Brigade.

**Rear Admiral (Lower Half) Jay A. DeLoach, U.S. Navy (Ret.),** graduated from the U.S. Naval Academy in 1978, served on submarines, and retired as a rear admiral. He earned three masters degrees (Management; Nuclear Engineering; and National Security & Strategic Studies) and was an adjunct professor for the Naval War College. As a member of the Senior Executive Service, he served as the 12th Director of the Naval History & Heritage Command.

**Brigadier General John W. Douglass, U.S. Air Force (Ret.),** commissioned in 1963 as a procurement officer. He served on the National Security Council as director of defense programs and as the deputy U.S. military representative to the NATO Military Committee in Brussels, Belgium. Following his retirement from active military service, he served as Assistant Secretary of the Navy (Research, Development, and Acquisitions) from 1995 to 1998.

**Brigadier General Robert J. Felderman, U.S. Army (Ret.),** served as the United States Deputy Director and Principal Advisor to the North American Aerospace Defense Command (NORAD) and as the Deputy Director of Plans, Policy, and Strategy Directorate (DJ5) at the U.S. Northern Command (USNORTHCOM).

**Rear Admiral (Lower Half) Charles D. Harr, U.S. Navy (Ret.),** retired in 2013 as the 18th Medical Officer of the Marine Corps, former Commanding Officer of the 4th Medical Battalion.

He is a Cardiovascular and Thoracic Surgeon currently practicing in Raleigh, North Carolina, and serving as the Chief Medical Officer of WakeMed Health and Hospitals.

**Brigadier General David R. Irvine, U.S. Army (Ret.)**, is an attorney in private practice. He previously served four terms as a Republican member of the Utah House of Representatives. He enlisted as a private in the 96th Infantry Division in 1962. He received a direct commission as a strategic intelligence officer in 1967. He retired in 2002 as a BG, and his last assignment was Deputy Commander of the 96th Regional Support Command, U.S. Army Reserve.

**Rear Admiral (Lower Half) Harold L. Robinson, U.S. Navy (Ret.),** commissioned as an Ensign in the U.S. Naval Reserve in 1971 and served for 36 years before retiring in 2007. He is a Fleet Marine Force Qualified Officer, selected for Flag rank in 2003; in 2004 he was assigned as Deputy Chief of Chaplains for Reserve Matters and Director of Religious Programs, Marine Force Reserve. He also served as Vice President and President of the COMNAVRESFOR Policy Board FY 2004-2005, the first staff corps officer so assigned. He served in numerous overseas assignments around the world and is a recipient of the Distinguished Service Medal, Legion of Merit, Meritorious Service Medal, the Naval Commendation Medal with two Gold Stars, the Fleet Marine Force Service Ribbon, Global War on Terrorism Service Medal, and the Navy and Marine Corps Overseas Deployment Ribbon.

**Brigadier General John M. Schuster, U.S. Army (Ret.),** commissioned as an Infantry Officer in 1968 and held a variety of command and staff positions. He retired as Deputy Commanding General, United States Army 88th Regional Support Command, Fort Snelling, Minnesota.