## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK KELLY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| PETE HEGSETH, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 1:26-CV-00081

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND SECTION 705 STAY

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................ **1**

**BACKGROUND** ................................................................................................... **4**

**LEGAL STANDARD** ......................................................................................... **7**

**ARGUMENT** ....................................................................................................... **8**

    I.    Plaintiff's Claims Are Nonjusticiable. ................................................... 8

        A.    Whether Plaintiff's Conduct Warranted Censure Is Outside the
               Purview of the Judiciary. ........................................................... 8

        B.    Plaintiff Has Not Exhausted His Administrative Remedies. ................. 10

        C.    Plaintiff's Challenge to the Grade Proceeding Is Not Ripe. .................... 13

        D.    Plaintiff Alleges No Final Agency Action Subject to APA Review. ....... 16

    II.    Plaintiff's Substantive Challenges Are Not Likely To Succeed. ..................... 19

        A.    Plaintiff's First Amendment Challenge Lacks Merit. ............................. 19

               1.    This framework applies to retired servicemembers like
                      Plaintiff. ........................................................................ 20

               2.    For purposes of military discipline, Plaintiff's speech here
                      is unprotected. ............................................................... 21

        B.    The Speech Or Debate Clause does not apply to the statements
               at issue. ..................................................................................... 24

        C.    Plaintiff has not established any violation of the Separation of
               Powers. ..................................................................................... 28

        D.    Plaintiff's Due Process claim lacks merit. ........................................ 31

        E.    The Grade Proceeding is not contrary to statute. .................................. 34

    III.    Plaintiff Fails To Show Irreparable Harm Absent An Injunction. ................ 37

    IV.    The Balance of Equities Disfavor Injunctive Relief. ............................. 40

**CONCLUSION** .................................................................................................. **40**

# TABLE OF AUTHORITIES

*Aamer v. Obama,*
    742 F.3d 1023 (D.C. Cir. 2014) .................................................................. 7

*Adkins v. United States,*
    68 F.3d 1317 (Fed. Cir. 1995) ............................................................... 9, 22

*Alaska Commc'ns Sys. Holdings, Inc. v. NLRB,*
    6 F.4th 1291 (D.C. Cir. 2021) .................................................................. 32

*Am. Petroleum Inst. v. EPA,*
    683 F.3d 382 (D.C. Cir. 2012) ................................................................. 14

*Archdiocese of Wash. v. Wash. Metro Area Transit Auth.,*
    897 F.3d 314 (D.C. Cir. 2018) ................................................................. 38

*AT&T Corp v. FCC,*
    349 F.3d 692 (D.C. Cir. 2003) ................................................................. 14

*AT&T v. EEOC,*
    270 F.3d 973 (D.C. Cir. 2001) ................................................................. 17

*Austin v. U.S. Navy SEALs 1-26,*
    142 S. Ct. 1301 (2022) ............................................................................... 8

*Axon Enter., Inc. v. FTC,*
    598 U.S. 175 (2023) ............................................................................ 15, 16

*Ayele v. District of Columbia,*
    704 F. Supp. 3d 231 (D.D.C. 2023) ......................................................... 38

*Benevenuti v. Dep't of Def.,*
    586 F. Supp. 348 (D.D.C. 1984) .............................................................. 10

*Bennett v. Spear,*
    520 U.S. 154 (1997) .................................................................................. 16

*Bittner v. Sec'y of Def.,*
    625 F. Supp. 1022 (D.D.C. 1985) ............................................................ 11

*Bois v. Marsh,*
    801 F.2d 462 (D.C. Cir. 1986) ................................................................. 10

*Caez v. United States,*
   815 F. Supp. 2d 184 (D.D.C. 2011) .................................................................. 9

*Cargill v. Marsh,*
   902 F.2d 1006 (D.C. Cir. 1990) ...................................................................... 10

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ................................................................... 37, 39

*Chappell v. Wallace,*
   462 U.S. 296 (1983) ....................................................................................... 10

*Charette v. Walker,*
   996 F. Supp. 43 (D.D.C. 1998) ........................................................................ 9

*Chastain v. Sundquist,*
   833 F.2d 311 (D.C. Cir. 1987) ...................................................................... 27

*Chilcott v. Orr,*
   747 F.2d 29 (1st Cir. 1984) ............................................................................ 39

*Church v. Biden,*
   573 F. Supp. 3d 118 (D.D.C. 2021) .......................................................... 10, 37

*Closson v. U.S. ex rel. Armes,*
   7 App. D.C. 460 (D.C. Cir. 1896) .................................................................. 23

*Cronin v. FAA,*
   73 F.3d 1126 (D.C. Cir. 1996) ...................................................................... 32

*Curry v. Sec'y of the Army,*
   595 F.2d 873 (D.C. Cir. 1979) ...................................................................... 34

*Daniels v. United States,*
   947 F. Supp. 2d 11 (D.D.C. 2013) ................................................................... 9

*de la Torre v. Cassidy,*
   800 F. Supp. 3d 54 (D.D.C. 2025) ................................................................. 26

*Dep't of Navy v. Egan,*
   484 U.S. 518 (1988) .................................................................................... 8, 11

*Doe v. McMillan,*
   412 U.S. 306 (1973) .................................................................................. 25, 26

*DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.,*
  76 F.3d 1212 (D.C. Cir. 1996) .................................................................. 18

*Eastland v. U.S. Servicemen's Fund,*
  421 U.S. 491 (1975) ................................................................................ 27

*Elkins v. District of Columbia,*
  690 F.3d 554 (D.C. Cir. 2012) ................................................................ 32

*Ethredge v. Hail,*
  56 F.3d 1324 (11th Cir. 1995) ................................................................ 22

*Exxon Mobil Corp. v. FERC,*
  501 F.3d 204 (D.C. Cir. 2007) ................................................................ 13

*Foreman v. Dep't of the Navy,*
  No. 18-cv-367, 2019 WL 3767117 (D.D.C. Aug. 9, 2019) ....................... 11

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ................................................................................ 30

*FTC v. Standard Oil Co.,*
  449 U.S. 232 (1980) ................................................................................ 18

*Gilligan v. Morgan,*
  413 U.S. 1 (1973) ............................................................................... 8, 40

*Goldberg v. Kelly,*
  397 U.S. 254 (1970) ................................................................................ 32

*\*Goldman v. Weinberger,*
  475 U.S. 503 (1986) ................................................... 19, 20, 22, 24

*Gravel v. United States,*
  408 U.S. 606 (1972) ........................................................................ 25, 26

*Greer v. Spock,*
  424 U.S. 828 (1976) ................................................................................ 20

*Guerra v. Scruggs,*
  942 F.2d 270 (4th Cir. 1991) .................................................................. 37

*Guitard v. Sec'y of the Navy,*
  967 F.2d 737 (2d Cir. 1992) ..................................................................... 11

*Hanson v. District of Columbia,*
  120 F.4th 223 (D.C. Cir. 2024) ................................................................ 38

*Harline v. DEA,*
  148 F.3d 1199 (10th Cir. 1998) ............................................................... 33

*Hartikka v. United States,*
  754 F.2d 1516 (9th Cir. 1985) ................................................................. 37

*Holistic Candlers & Consumers Ass'n v. FDA,*
  664 F.3d 940 (D.C. Cir. 2012) ................................................................. 17

*Hutchinson v. Proxmire,*
  443 U.S. 111 (1979) ............................................................... 25, 26, 27

*Indep. Equip. Dealers Ass'n v. EPA,*
  372 F.3d 420 (D.C. Cir. 2004) ................................................................. 17

*Joshi v. NTSB,*
  791 F.3d 8 (D.C. Cir. 2015) ..................................................................... 17

*Kilburn v. Thompson,*
  103 U.S. 168 (1880) ................................................................................. 25

*Kreis v. Sec'y of the Air Force,*
  866 F.2d 1508 (D.C. Cir. 1989) ................................................................. 9

*Larrabee v. Braithwaite,*
  502 F. Supp. 3d 322 (D.D.C. 2020) ......................................................... 34

*\*Larrabee v. Del Toro,*
  45 F.4th 81 (D.C. Cir. 2022) ........................................................ 4, 21, 29

*Martin v. Stone,*
  759 F. Supp. 19 (D.D.C. 1991) ........................................................ 12, 13

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ................................................................................. 31

*McCarthy v. Madigan,*
  503 U.S. 140 (1992) ................................................................................. 12

*Miller v. Lehman,*
   801 F.2d 492 (D.C. Cir. 1986) ........................................................................... 11

*Millican v. United States,*
   744 F. Supp. 2d 296 (D.D.C. 2010) ................................................................... 24

*Myles-Pirzada v. D.C. Army Nat'l Guard,*
   No. 92-5466, 1993 WL 215207 (D.C. Cir. June 8, 1993) ........................................ 10

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) ....................................................................................... 13

*Neguse v. U.S. Immigr. & Customs Enf't,*
   No. 25-cv-2463, 2025 WL 3653597 (D.D.C. Dec. 17, 2025) ..................................... 7

*Nevada v. Dep't of Energy,*
   457 F.3d 78 (D.C. Cir. 2006) ............................................................................. 13

*New Mexico v. Musk,*
   769 F. Supp. 3d 1 (D.D.C. 2025) ................................................................... 7, 38

*Nken v. Holder,*
   556 U.S. 418 (2009) ......................................................................................... 7

*North Dakota v. United States,*
   495 U.S. 423 (1990) ....................................................................................... 22

*Ohio Foresty Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) ....................................................................................... 13

*Orloff v. Willoughby,*
   345 U.S. 83 (1953) ........................................................................................... 8

*Orton Motor, Inc. v. U.S. Dep't of Health & Human Servs.,*
   884 F.3d 1205 (D.C. Cir. 2018) ......................................................................... 18

*\*Parker v. Levy,*
   417 U.S. 733 (1974) .............................................................................. 19, 20, 24

*Priest v. Sec'y of the Navy,*
   570 F.2d 1013 (D.C. Cir. 1977) ......................................................................... 20

*Reilly v. Sec'y of Navy*,
  12 F. Supp. 3d 125 (D.D.C. 2014) ........................................................................ 9

*Reinhard v. Johnson*,
  209 F. Supp. 3d 207 (D.D.C. 2016) ..................................................................... 39

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726 (D.C. Cir. 2003) ........................................................................... 18

*Rochester Tel. Corp. v. United States*,
  307 U.S. 125 (1939) ........................................................................................... 18

*Roe v. Dep't of Def.*,
  947 F.3d 207 (4th Cir. 2020) .............................................................................. 11

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) ............................................................................................. 23

*Russel Motor Car Co. v. United States*,
  261 U.S. 514 (1923) ........................................................................................... 36

*Sackett v. EPA*,
  566 U.S. 120 (2012) ........................................................................................... 19

*Sampson v. Murray*,
  415 U.S. 61 (1974) ....................................................................................... 37, 39

*Sataki v. Broad. Bd. of Governors*,
  733 F. Supp. 2d 54 (D.D.C. 2010) ..................................................................... 33

*Schweiker v. McClure*,
  456 U.S. 188 (1982) ........................................................................................... 32

*Sierra Club v. FERC*,
  97 F.4th 16 (D.C. Cir. 2024) .............................................................................. 35

*Sohm v. Fowler*,
  365 F.2d 915 (D.C. Cir. 1966) ........................................................................... 15

*Solorio v. United States*,
  483 U.S. 435 (1987) ........................................................................................... 21

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261 (D.C. Cir. 2018) ......................................................................... 19

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................................................... 15

*Talbott v. United States,*
  No. 25-5087, 2025 WL 3533344 (D.C. Cir. Dec. 9, 2025) ...................... 8, 19, 22, 39

*Thomas v. District of Columbia,*
  407 F. Supp. 2d 102 (D.D.C. 2005) ....................................................... 33

*Trudeau v. FTC,*
  384 F. Supp. 2d 281 (D.D.C. 2005), *aff'd,* 456 F.3d 178 (D.C. Cir. 2006).............. 39

*United States Army Corps of Engineers v. Hawkes Co.,*
  578 U.S. 590 (2016) ............................................................................ 18, 19

*United States ex rel. Toth v. Quarles,*
  350 U.S. 11 (1955) ................................................................................ 5, 20

*United States v. Brewster,*
  408 U.S. 501 (1972) ....................................................................... 25, 26, 28

*United States v. Helstoski,*
  442 U.S. 477 (1979) ............................................................................ 28

*United States v. McDade,*
  28 F.3d 283 (3d Cir. 1994)................................................................... 26

*United States v. Menendez,*
  831 F.3d 155 (3d Cir. 2016).......................................................... 25, 27

*United States v. Myers,*
  635 F.2d 932 (2d Cir. 1980)............................................................. 28, 31

*United States v. Rose,*
  28 F.3d 181 (D.C. Cir. 1994) .......................................................... 30, 31

*Wilson v. Curtis,*
  150 F.4th 1359 (10th Cir. 2025)................................................. 4, 21, 29

*Wilson v. James,*
  139 F. Supp. 3d 410 (D.D.C. 2015) .......................................... 9, 10, 24

*Winter v. Natural Resources Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................. 37, 40

*Withrow v. Larkin*,
    421 U.S. 35 (1975) ..................................................................... 32

**Constitutional Authorities**

U.S. Const. art. I, § 5, cl. 2 ............................................................. 28

U.S. Const. art. I, § 6, cl. 1 ............................................................. 25

U.S. Const. art. I, § 8, cl. 14 ........................................................... 21

U.S. Const. art. II, § 2, cl. 1 ........................................................... 31

**Statutes**

5 U.S.C. § 704 ............................................................................. 16

5 U.S.C. § 705 ............................................................................. 41

10 U.S.C. Ch. 47, (UCMJ) ................................................................. 5

10 U.S.C. §1552 ........................................................................... 11

10 U.S.C. § 113 ........................................................................... 37

10 U.S.C. § 802 ..................................................................... 5, 20, 29

10 U.S.C. §§ 816-21 ....................................................................... 5

10 U.S.C. § 888, UCMJ Art. 88 ........................................................... 23

10 U.S.C. § 1370 ................................................................... *passim*

10 U.S.C. § 8323 ........................................................................... 4

**Other Authorities**

DoD Instruction 1352.01, Management of Regular and Retired Military
    Members, (Dec. 8, 2016) .............................................................. 17

Joint Service Committee on Military Justice, *Manual for Court Martial*
    (2024 ed.) ............................................................................. 23

Senator Mark Kelly Press Release, *ICYMI: Kelly Won't Back Down as Hegseth Censures and Threatens Demotion* (Jan. 6, 2026)................................................... 40

U.S. Dep't of Navy, Sec'y Navy Instr. 1920.6D (July 24, 2019) ................................ 13

## INTRODUCTION

This case is not about legislative independence or freedom of speech in civilian society.  Instead, this case involves a retired military officer who seeks to use his military status as a sword and his legislative position as a shield against the consequences of his actions in military personnel matters.  Plaintiff's suit demands all the privileges, pay, benefits, and status of a retired commissioned officer—while simultaneously seeking an exemption from all the rules, processes, and accountability that Congress has expressly made applicable to retired servicemembers.  The Constitution does not allow such an asymmetrical arrangement, and Congress did not create one.  Instead, Congress has determined that retired servicemembers such as Plaintiff remain part of the military community, subject to recall and to its disciplinary framework and administrative processes. Because Plaintiff asks this Court to override military judgment exercised under that congressional authorization and to interrupt ongoing military proceedings, the motion for a preliminary injunction should be denied.

Plaintiff is a retired Navy Captain who also is a sitting Senator in the United States Congress.  Although retired, he continues to receive military pay and benefits, retains his rank, and remains subject to recall to active duty.  By statute, he also remains subject to the Uniform Code of Military Justice and to the standards of conduct that govern retired officers.

In 2025, Plaintiff made a series of public statements on social media and in news interviews urging servicemembers to question the legitimacy of specific ongoing military operations and directives.   Plaintiff did not stop there.  Speaking "directly to members of the military," Plaintiff urged servicemembers to refuse to follow orders he characterized as unlawful, and separately publicly accused senior military leaders of war crimes.

After reviewing Plaintiff's statements, the Secretary of War issued a Secretarial Letter of Censure and initiated a statutory process to determine whether Plaintiff should continue to enjoy the honor of his current retired grade. Rather than avail himself of the military administrative processes established by Congress, Plaintiff rushed to federal court to collaterally attack that process, in the hope of stopping it midstream. He now asks this Court to enjoin nonfinal, unexhausted military personnel actions; to second-guess the professional judgment of senior military leadership about good order and discipline; to expand the Speech or Debate Clause far beyond its settled bounds; and to create a constitutional safe harbor allowing retired servicemembers to retain all the benefits of military status without its attendant obligations. No principle of law or equity supports that result.

To start, Plaintiff's claims are unreviewable for at least three reasons. First, he has not exhausted the administrative remedies Congress designed for servicemembers to challenge personnel actions. Second, his challenge to the grade determination process is not ripe; that proceeding has only been initiated, no final decision has been made, and any alleged injury depends on contingent future events that may never occur. Third, Plaintiff identifies no final agency action subject to review under the Administrative Procedure Act (APA), as neither the Letter of Censure nor initiation of a grade review process itself alters his legal rights, obligations, rank, pay, or benefits. Consistent with the fundamental principle that the Judiciary does not superintend military personnel decisions, relief should be denied on threshold grounds.

Plaintiff's claims also fail on the merits. Plaintiff is not a private citizen and does not enjoy the First Amendment freedom of speech as if he were one when being assessed by the military in military proceedings to determine whether his conduct comports with his obligations as a retired servicemember. The Supreme Court has long held that the military may punish speech by servicemembers that risks

2

undermining military discipline and good order. And well-established case law makes clear that the military is not required to tolerate speech by its own members—active or retired—that undermines the chain of command, encourages disobedience, or erodes confidence in leadership. The Secretary's determination that Plaintiff's statements posed those risks is entitled to the highest degree of deference, if it is reviewable at all.

Nor does Plaintiff's status as a sitting Senator change the analysis. The Speech or Debate Clause protects legislative acts—not press interviews, social media posts, or exhortations aimed at the public or the Executive, and particularly not active-duty servicemembers. Plaintiff does not claim that he was censured for speech on the Senate floor, participation in committee proceedings, or any other conceivably legislative act. Instead, he advances a theory of immunity that would effectively shield Members of Congress from generally applicable laws and obligations whenever they speak on a topic that would be potentially relevant to the legislative process, a breathtaking view that the Supreme Court has squarely rejected.

Plaintiff's separation of powers argument fails for similar reasons. The government's application of generally applicable laws to a Member of Congress does not intrude on Congress' prerogatives; it is the faithful execution of Congress' commands. If Congress wished to exempt retired servicemembers who later become Members of Congress, it could have done so. But it did not. And this Court is not free to supply that exemption without itself offending the separation of powers.

Nor is Plaintiff likely to succeed on his due process challenge to a proceeding that is still underway and may result in no consequences. Even putting aside the lack of deprivation of a property or liberty interest—which is fatal to his due process claim, Plaintiff has not carried his heavy burden of establishing that the Department has prejudged the outcome of the grade determination proceeding. Plaintiff's statutory challenge—contending that the military may not consider his post-

retirement conduct in the grade proceeding—fares no better. The relevant statutory provision expressly provides that an officer's retirement grade may be reopened for "good cause," and nothing in its text limits that authority to pre-retirement conduct. Plaintiff's effort to impose a temporal restriction Congress did not enact is inconsistent with the statute's structure and Congress' decision to maintain retired servicemembers' ongoing legal relationship with the Armed Forces.

Last, Plaintiff cannot satisfy the equitable prerequisites for the extraordinary relief of a preliminary injunction. He identifies no imminent, irreparable injury; he points only to abstract and unmaterialized constitutional harms, speculative reputational concerns, and the ordinary burdens of participating in an administrative process. By contrast, the equities weigh decisively against premature judicial intervention into the military's internal disciplinary processes, which would harm the public interest in the orderly administration of military discipline by the political branches.

For all of these reasons, the Court should deny Plaintiff's motion.

## BACKGROUND

In 2011, Plaintiff retired from the Navy as an O-6, Captain. Compl. ¶ 24, ECF No. 1. As a retired servicemember, he receives retired pay and benefits commensurate with his retirement grade. *See* 10 U.S.C. § 8323; Compl. ¶ 8. Although retired, Plaintiff remains part of the military and subject to its rules. "Retired servicemembers have an ongoing duty to obey military orders," including an order to reenter active duty. *Wilson v. Curtis*, 150 F.4th 1359, 1369 (10th Cir. 2025); *see Larrabee v. Del Toro*, 45 F.4th 81 (D.C. Cir. 2022). They "maintain a formal relationship with the military[,] . . . may wear their uniform in limited circumstances, they hold a military rank, and they receive retired pay." *Wilson*, 150 F.4th at 1369. "Taken together, these factors distinguish retirees from separated servicemembers, who have 'severed all relationship with the military and its

institutions.'" *Id.* (quoting *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 14 (1955)).

Congress has thus permissibly determined that retired servicemembers remain subject to the Uniform Code of Military Justice ("UCMJ"). *See* 10 U.S.C. § 802(a)(4). The UCMJ, set out in 10 U.S.C. Ch. 47, provides a set of substantive rules that govern servicemembers' conduct, *id.* §§ 816-21, which the military may enforce through trial by court martial or administrative measures.

In 2025, Plaintiff violated those standards. Beginning in mid-2025, Plaintiff made a series of public statements that characterized ongoing military operations as illegal, advised members of the military to refuse orders related to those operations, and accused senior military leadership of committing war crimes. The statements at issue were made on social media and in news interviews. *See* Ex. 1, Decl. of Col. (Ret.) Ricky D. Buria, Chief of Staff, Secretary of War (Buria Decl.) ¶¶ 5, 7.

Most prominently, in November 2025, Plaintiff participated in a widely circulated video titled "Don't Give Up the Ship," which was initially posted on Senator Elisa Slotkin's X account. *See* Compl. ¶ 51 n.40. In that video, Plaintiff identified himself as a former Navy Captain and stated, "We want to speak directly to members of the military." *Id.* ¶ 53. He then, among other things, encouraged servicemembers to "refuse illegal orders," counseling them to be "vigilan[t]" in the face of "[t]his Administration . . . pitting our uniformed military" against the American public. *Id.*

Plaintiff reinforced those themes in television interviews and public remarks concerning reported military strikes and command decisions. Plaintiff continued to call for servicemembers to refuse what he characterized as "unlawful orders," while also accusing senior military officials of war crimes and other misconduct.

In late November, the Department of War announced that it had "received serious allegations of misconduct against" Plaintiff and would be conducting "a thorough review of these allegations . . . to determine further actions, which may

include recall to active duty for court-martial proceedings or administrative measures." Compl. ¶ 75. The Secretary of War then referred the matter to the Secretary of the Navy for review. *Id.* ¶ 78.

After reviewing Plaintiff's public statements, Secretary Hegseth issued a Secretarial Letter of Censure on January 5, 2026. *See* Ltr., Ex. F, ECF No. 1-6 (Censure Letter). The Secretary concluded that Plaintiff's statements, taken as a whole and in context, constituted "a serious breach of the standards expected of officers in the United States Navy, even in retirement." *Id.* at 2. Among other things, the Secretary determined that Plaintiff's conduct undermined respect for the military chain of command, encouraged disobedience, and risked eroding good order and discipline by inviting individual servicemembers to substitute personal judgment for lawful command authority. *See id.* Specifically, the Secretary found that Plaintiff counseled members of the Armed Forces to refuse lawful orders related to National Guard deployments and counter-narcotics operations, and has portrayed lawful military operations as criminal acts, all of which has the effect of creating confusion and bringing discredit upon the military. *Id.*

Based on these determinations, the Secretary "formally censure[d] [Plaintiff] for conduct prejudicial to good order and discipline in the armed forces and conduct unbecoming an officer." *Id.* The Censure Letter noted that it would be placed in Plaintiff's official military personnel file and that he had the right to submit a written rebuttal. *Id.* at 3.

The Censure Letter also stated that "good cause exists to reopen the determination of [Plaintiff's] retired grade under the provisions of 10 U.S.C. § 1370." Ltr. at 3. Thus, the Secretary of War "direct[ed] the Secretary of the Navy to recommend to [him] whether a reduction in grade is appropriate." *Id.* The letter further explained that, "[a]fter receiving the Secretary of the Navy's recommendation," Secretary Hegseth would "determine if a reduction is warranted."

*Id.*

That same day, the Department sent Plaintiff a Notice Letter regarding the retirement grade determination proceeding (Grade Proceeding). *See* Notice Letter, Ex. G, ECF No. 1-7. The Notice Letter advised Plaintiff that he was entitled to participate in the Grade Proceeding, including by submitting a statement or any mitigating evidence after consultation with counsel. *Id.* Plaintiff was also advised that he could request copies of the materials that would be forwarded to the Secretary of the Navy to support his recommendation. *Id.*

Rather than participate in the process provided him, Plaintiff filed this suit and the instant motion for emergency relief.

## LEGAL STANDARD

A preliminary injunction, "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion." *New Mexico v. Musk*, 769 F. Supp. 3d 1, 4 (D.D.C. 2025) (quotation omitted)  To obtain a preliminary injunction, a plaintiff must show "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014)  The last two factors merge when the Government is the nonmoving party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The "same factors" governing issuance of a preliminary injunction also govern the issuance of a stay under § 705 of the APA. *Neguse v. U.S. Immigr. & Customs Enf't*, No. 25-cv-2463, 2025 WL 3653597, at *8 (D.D.C. Dec. 17, 2025).

## ARGUMENT

### I.    Plaintiff's Claims Are Nonjusticiable.

#### A.    Whether Plaintiff's Conduct Warranted Censure Is Outside the Purview of the Judiciary.

Plaintiff seeks to challenge the Secretary's Letter of Censure, which is a quintessential matter of military discipline not within the Judiciary's purview. Under Article II of the Constitution, the President, not any federal judge, is the Commander in Chief of the Armed Forces. "In light of that bedrock constitutional principle, 'courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.'" *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (mem.) (Kavanaugh, J., concurring) (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)); *accord Talbott v. United States*, No. 25-5087, 2025 WL 3533344, at *5 (D.C. Cir. Dec. 9, 2025) ("decades of precedent establish that the judiciary must tread carefully when asked to second-guess considered military judgments of the political branches").

As the Supreme Court has emphasized, "[t]he complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). Such judgments are "subject *always* to civilian control of the Legislative and Executive Branches"—but rarely to judicial supervision. *Id.*; *see also Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953) ("The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").

For these reasons, "[d]ecisions within this Circuit routinely have found military personnel actions—including promotions, discharges, and discipline—to be nonjusticiable." *Wilson v. James*, 139 F. Supp. 3d 410, 431 (D.D.C. 2015) (court lacked jurisdiction to consider whether a servicemember's "conduct warranted the [letters of reprimand]" and noting that granting relief "would require this court to second-guess the wisdom of a military decision to reprimand Plaintiff"); *see, e.g., Caez v. United States,* 815 F. Supp. 2d 184, 188 n. 4 (D.D.C. 2011) ("adverse personnel actions . . . including a [Memorandum of R]eprimand . . . are *not* reviewable by this Court"); *see also Kreis v. Sec'y of the Air Force,* 866 F.2d 1508, 1514 (D.C. Cir. 1989); *Daniels v. United States,* 947 F. Supp. 2d 11, 19 (D.D.C. 2013); *Charette v. Walker,* 996 F. Supp. 43, 50 (D.D.C. 1998).

While courts may in limited circumstances review final agency actions taken by the military, "the jurisdiction of federal courts concerning military personnel decisions is 'typically limited to challenges to *procedures*—it does not extend to the *merits.*'" *Wilson*, 139 F. Supp. 3d at 431 (quoting *Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125, 140 (D.D.C. 2014)); *see also, e.g.*, *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995) (same); *Daniels*, 947 F. Supp. 2d at 20 (a claim that the military "lacked valid substantive grounds" to take the decision is not reviewable, even if a claim that "the government failed to provide him with any of the procedural safeguards to which he was entitled" may be). But here, Plaintiff does not allege that the Secretary of War failed to follow required procedures in issuing the Censure Letter. Instead, he insists that the discipline was unjustified because Defendants acted with improper motives, his speech should not have triggered discipline as a matter of law, and lesser or no punishment was warranted. Mem. in Supp. of Pl.'s Mot. for TRO, Prelim. Inj. & Stay (Mot.) at 11-18, ECF No. 2-1. Those arguments require the Court to assess whether Plaintiff's conduct *substantively* merited censure in the first place—an inquiry that necessarily entails weighing things like the nature

of the conduct and its effect on good order and military discipline. Those are precisely the types of military judgments "courts are not permitted to address." *Wilson*, 139 F. Supp. 3d at 432.

Thus, to the extent any of Plaintiff's claims are reviewable, the same separation of powers principle strongly favors strict enforcement of the other threshold limits on judicial review discussed below.

### B.    Plaintiff Has Not Exhausted His Administrative Remedies.

All of Plaintiff's claims are not reviewable for the independent reason that Plaintiff has not exhausted the administrative remedies available to him. It is undisputed that Plaintiff has not sought any relief from the Board for Correction of Naval Records (BCNR) after receiving the Censure Letter, nor utilized his opportunity to respond to the Letter—and that the Grade Proceeding has only been initiated. The failure to exhaust administrative remedies strongly disfavors judicial intervention into the military chain of command to review Plaintiff's claims.

The Supreme Court has instructed that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with" the "peculiar and special relationship of the soldier to his superiors." *Chappell v. Wallace*, 462 U.S. 296, 300 (1983); *see also Benevenuti v. Dep't of Def.*, 586 F. Supp. 348, 353 (D.D.C. 1984). The D.C. Circuit too has recognized "the well-established principle 'that a court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures.'" *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (quotation omitted). Thus, in this Circuit, the "salutary rule [is] that an aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court." *Church v. Biden*, 573 F. Supp. 3d 118, 137 (D.D.C. 2021) (quoting *Bois*, 801 F.2d at 468); *see Myles-Pirzada v. D.C. Army Nat'l Guard*, No. 92-5466, 1993 WL 215207, at *1 (D.C. Cir. June 8, 1993) (per curiam); *Cargill v. Marsh*, 902 F.2d 1006, 1008 (D.C. Cir. 1990).

Even where a plaintiff "allege[s] the deprivation of a constitutional right" or claims the military "has acted in violation of applicable statutes," "the plaintiff must have exhausted the available intraservice corrective measures" before suing in federal district court. *Roe v. Dep't of Def.*, 947 F.3d 207, 218 (4th Cir. 2020) (quotations omitted). Indeed, courts "should not address constitutional claims where issues may be resolved in plaintiff's favor at the administrative level on nonconstitutional grounds." *Bittner v. Sec'y of Def.*, 625 F. Supp. 1022, 1027 (D.D.C. 1985). "The imperatives concerning military discipline require the strict application of the exhaustion doctrine[.]" *Guitard v. Sec'y of the Navy*, 967 F.2d 737, 740 (2d Cir. 1992); *cf. Egan*, 484 U.S. at 530.

Plaintiff's challenges to the Censure Letter and Grade Proceeding are unexhausted. With respect to the letter, Congress has established a mechanism for servicemembers to seek to "correct an error or remove an injustice" in their military records. *See* 10 U.S.C. §1552(a)(1); *e.g., Foreman v. Dep't of the Navy*, No. 18-cv-367, 2019 WL 3767117, at *3 (D.D.C. Aug. 9, 2019) ("The BCNR, by the Secretary of the Navy's delegation, has authority to 'correct any military record . . . when [it] considers it necessary to correct an error or remove an injustice.'" (quoting 10 U.S.C. § 1552(a)(1))). Thus, once Plaintiff has responded to the Censure Letter and if no further action is taken by the Secretary of War on the Censure Letter in response, Plaintiff should first "appl[y] to the BCNR for expungement of the letter of censure from his record." *Miller v. Lehman*, 801 F.2d 492, 496 (D.C. Cir. 1986). The BCNR would then have to "adequately consider[]" his objections and to provide a reasoned explanation for its decision. *Id.* at 497 (reviewing BCNR's adjudication of the plaintiff's constitutional challenges).

Having the benefit of BCNR's review serves the important goals of exhaustion here because this Court does not have the military expertise in assessing whether any provision of the UCMJ has been violated, and how Plaintiff's conduct

11

"undermines the chain of command," "counsels disobedience" or "create[s] confusion among servicemembers about their duty," among other things.  Ltr. at 2.  And if the BCNR denies Plaintiff's request and assuming reviewability, this Court would have the benefit of the BCNR's review.  *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context").  Plaintiff's decision to bypass the BCNR process entirely is a textbook failure to exhaust.  And Plaintiff's claims relating to the Grade Proceeding are necessarily unexhausted because that proceeding has just begun.  Separation-of-powers principles strongly favor judicial restraint under these circumstances and particularly in a case such as this one, in which Plaintiff has deliberately foregone administrative process in favor of litigation.

Plaintiff contends that exhaustion of the Grade Proceeding should be excused because the Department has "predetermined the issue before it."  Mot. 35 (quoting *McCarthy*, 503 U.S. at 148).  But speculation about an adverse outcome does not establish predetermination or futility.  *Cf.  Martin v. Stone*, 759 F. Supp. 19, 21 (D.D.C. 1991) (rejecting that "resort to the Board should not be required . . . since the Board would simply be revisiting the issues already considered by the Secretary").

In any event, Plaintiff points to no directive requiring a particular result or any procedural defect that forecloses meaningful consideration of his position. The Secretary of War has directed the Secretary of the Navy to investigate the basis for reopening and "recommend . . . whether a reduction in grade is appropriate."  Ltr. at 3.  He did not mandate a particular outcome and made clear that he will decide only "[a]fter receiving the Secretary of the Navy's recommendations." *Id.* at 3. Plaintiff may meaningfully participate in the process, including by submitting any arguments or mitigating evidence.  *See id.*  The Grade Proceeding thus provides Plaintiff a concrete opportunity to influence both the factual record and ultimate

recommendation. Any assertion that the Proceeding is a "charade" or somehow incapable of providing meaningful relief is baseless speculation. Mot. 36.

Plaintiff's focus on the identity of the ultimate decisionmaker misses the point. *See id.*; *Martin*, 759 F. Supp. at 21. The Censure Letter reflects an initial disciplinary judgment, not a final grade determination. The Grade Proceeding requires a distinct, holistic assessment of the officer's record, including mitigating evidence. *See* U.S. Dep't of Navy, Sec'y Navy Instr. 1920.6D, Enclosure 9, 2(a) (July 24, 2019). Indeed, Navy guidance makes clear that even where an officer has committed, for example, "an act which brings discredit upon the armed services," retirement in the officer's current grade may still be warranted if the record "is otherwise so meritorious." *Id.* That guidance alone defeats Plaintiff's claim that the outcome of the Grade Proceeding is foreordained by the Censure Letter. This Court should refrain from reviewing Plaintiff's unexhausted claims now.

### C. Plaintiff's Challenge to the Grade Proceeding Is Not Ripe.

Even if exhaustion were not required, Plaintiff's collateral attack on the ongoing Grade Proceeding (as distinct from the Censure Letter) is not ripe for judicial review. The Court thus lacks subject matter jurisdiction over this claim. *See Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 207 (D.C. Cir. 2007). Ripeness "evaluate[s] (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The ripeness doctrine avoids judicial intervention where it would "inappropriately interfere with further administrative action" and where the courts "would benefit from further factual development of the issues presented." *Ohio Foresty Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). It ensures that courts need not prematurely wade into disputes that "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) (quotation omitted).

Courts should particularly hesitate to intervene in ongoing administrative proceedings. The Court of Appeals has stressed that courts should "declin[e] jurisdiction over a dispute while there is still time for the challenging party to convince the agency to alter a tentative position," which may "eliminat[e] the need for (and costs of) judicial review." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) (quotation omitted). That reasoning squarely applies here, where the administrative proceeding has just begun and may result in no change to Plaintiff's grade at all. At a minimum, "permitting the administrative process to reach its end can at least solidify or simplify the factual context and narrow the legal issues at play." *Am. Petroleum Inst.*, 683 F.3d at 387. The very purpose of the Grade Proceeding is to apply the governing standards to the relevant facts in the first instance. Allowing that process to run its course affords the military an opportunity to develop the record (including through Plaintiff's submissions), explain its reasoning, and—if warranted—resolve the matter without any adverse action against Plaintiff. And even if the Grade Proceeding results in an adverse decision, this Court's review would benefit from a developed record and sharpened issues. *See id.*

And as for hardship, where "there are strong interests militating in favor of postponement," "the burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship to overcome the agency's challenge to ripeness." *AT&T Corp v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003). Participation in the Grade Proceeding imposes no cognizable hardship beyond the ordinary burdens of administrative process, which are insufficient as a matter of law. *See id.* And Plaintiff identifies no other concrete consequence that will occur absent immediate judicial intervention. At most, Plaintiff faces the prospect that the Department may eventually reach an adverse decision—an outcome that, if it occurs, can be reviewed at the appropriate time, in the appropriate tribunal, and on a complete record.

14

As for Plaintiff's asserted constitutional injuries that purportedly would arise from the mere participation in the administrative process, those constitutional arguments have no merit, as will be discussed in detail below. Indeed, if a respondent subject to a military administrative process can circumvent the process by simply asserting constitutional injuries as a result of having to participate in that process, that would render the ripeness doctrine a nullity, and yet, judicial restraint should be at its height in that context.

Plaintiff's reliance on *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), is misplaced. That case involved whether the plaintiffs had established an injury-in-fact for purposes of Article III standing in the context of pre-enforcement review. *See id.* at 157-58. But the case says nothing about whether a collateral attack on an inchoate administrative proceeding is ripe. Unlike Plaintiff's claims here, for example, the claims at issue in *Susan B. Anthony List* raised "purely legal" questions that would "not be clarified by further factual development." *Id.* at 167.

Nor does the Supreme Court's *Axon* decision suggest that Plaintiff's challenge to the Grade Proceeding is fit for review. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 195-96 (2023). *Axon* did not involve ripeness or exhaustion. Rather, the case involved whether the failure to follow the relevant statutory review schemes precluded judicial review of claims challenging the agency's "power generally" rather than "anything particular about how that power was wielded." *Id.* at 193. *Axon* does not speak to the rule "that administrative remedies should be exhausted so long as the agency clearly has jurisdiction over the case and so long as resort to the agency is not obviously futile." *Sohm v. Fowler*, 365 F.2d 915, 918 (D.C. Cir. 1966) (reversing for failure to exhaust remedies available from Board for Correction of Military Records).

In fact, the reasoning in *Axon* cuts against Plaintiff's position. As noted, *Axon* concerned lawsuits that "charged that some fundamental aspect of the [agency's] structure violates the Constitution; that the violation made the entire proceeding

15

unlawful; and that being subjected to such an illegitimate proceeding causes legal injury (independent of any ruling the [agency] might make)." 598 U.S. at 182. Thus, the claims in *Axon* did not concern "any specific substantive decision" of the agency or the "commonplace procedures agencies use to make such a decision"—rather, "the structure of the very existence of the agency." *Id.* at 189. Those kinds of claims "protest the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process." *Id.* at 192. That sort of injury is inflicted "irrespective of [the proceeding's] outcome, or of other decisions made within it." *Id.*

Plaintiff's challenge, in contrast, raises no structural constitutional defect in the Grade Proceeding. While he argues that no proceeding should occur at all, that is because he substantively disagrees with the need for the proceeding, *see* Mot. 11-18, not because he disputes the authority of Senate-confirmed principal officers to conduct the proceeding under 10 U.S.C. § 1370. In any event, *Axon* was explicit that its decision did not reflect "newfound enthusiasm for interlocutory review" and reaffirmed the general rule that the "expense and disruption of protracted adjudicatory proceedings . . . do not justify immediate review." 598 U.S. at 192 (quotation omitted).

### D.    Plaintiff Alleges No Final Agency Action Subject to APA Review.

The APA permits review only of "final agency action." 5 U.S.C. § 704. To be final, an action must both "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Neither the Censure Letter nor the reopening of Plaintiff's grade determination are final agency actions and thus Plaintiff's APA claims are not likely to succeed.

First, the Censure Letter is not final agency action because no legal consequences flow from it. It does not alter Plaintiff's pay, rank, duties, or benefits.

16

Nor does it impose any other legal consequences or mandate any action by Plaintiff, beyond the opportunity to respond to the Letter, which Plaintiff is free to forego. A letter "remind[ing]" Plaintiff that he would be held "accountab[le] for conduct that undermines good order and discipline in our Armed Forces," Ltr. at 3, thus does not constitute final agency action. Mot. 33.

The D.C. Circuit has repeatedly held that agency communications that merely criticize conduct, issue warnings, or signal how the agency might exercise discretion in the future do not constitute final agency action. *See, e.g.*, *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944-45 (D.C. Cir. 2012) (reasoning that "[a]lthough a warning letter communicates the agency's position on a matter" it lacks legal consequences because it "compels action by neither the recipient nor the agency"); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (an EPA advice letter that "had no binding effect whatsoever—not on the agency and not on the regulated community"—was not final agency action); *AT&T v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001) (EEOC Letters of Determination, "stating that in [the Commission's] view [the plaintiff] had unlawfully discriminated," did not constitute final agency action).

While having a Censure Letter in one's personnel record may have the *practical* consequence of affecting future personnel matters for some servicemembers, Plaintiff identifies no way in which the Censure Letter has such effect for him. Indeed, as a retiree, Plaintiff is ineligible for promotion. *See* DoD Instruction 1352.01, Management of Regular and Retired Military Members, at 6 (Dec. 8, 2016). More fundamentally, "practical consequences," "including reputational harm," are "not legal harms that can transform" the Censure Letter into final agency action. *Joshi v. NTSB*, 791 F.3d 8, 11 (D.C. Cir. 2015); *see Indep. Equip. Dealers*, 372 F.3d at 428. It is equally irrelevant that the Censure Letter may be relied on during the Grade Proceeding or some other potential action. An agency action is nonfinal when it "does

not *itself* adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (emphasis added) (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)); *see Orton Motor, Inc. v. U.S. Dep't of Health & Human Servs.*, 884 F.3d 1205, 1215 (D.C. Cir. 2018) ("FDA warning letters, while potentially significant as bases for later enforcement, are not subject to review where no legal consequences flow from the agency's conduct to [that point]." (quotation omitted)).

For this reason, the Censure Letter is not reviewable even though it also initiated the Grade Proceeding. An ongoing process to reconsider or reopen a prior determination is, by definition, nonfinal. It does not mark the consummation of the agency's decisionmaking process and does not itself determine rights or obligations. Until the agency completes that process and issues a definitive determination on Plaintiff's grade in retirement, there is no legal consequence to Plaintiff and thus nothing for a court to review. *See, e.g.*, *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731-32 (D.C. Cir. 2003) (conduct that "thus far amount[s] to an investigation" is not final because "[n]o legal consequences flow from the agency's conduct to date"); *FTC v. Standard Oil Co.*, 449 U.S. 232, 242 (1980) (FTC's issuance of an administrative complaint not final because it lacked "legal or practical effect"). Because Plaintiff "still enjoys an opportunity to convince the agency" that no change to his retirement grade is warranted, judicial review at this early stage would "improperly intrude[] into the agency's decisionmaking process" and "squander[] judicial resources." *Reliable Automatic Sprinkler*, 324 F.3d at 732.

The cases Plaintiff cites are not to the contrary. *See* Mot. 33-34. This suit is unlike *United States Army Corps of Engineers v. Hawkes Co.*, which concerned an agency's "jurisdictional determination" that "b[ound]" the agencies authorized to bring enforcement actions under the Clean Water Act. 578 U.S. 590, 598 (2016).

That binding effect also "deprive[d]" the plaintiffs of a regulatory "safe harbor from liability" for five years.  *Id.* at 600.  No comparable legal consequences flow from the Department's actions here.  Nor does *Sackett v. EPA*, 566 U.S. 120 (2012), aid Plaintiff.  There, the plaintiff landowners challenged the EPA's compliance letter finding that they had violated the Clean Water Act.  The compliance order imposed immediate and concrete "legal obligation[s]" on the plaintiffs, including mandatory restoration requirements and compelled access to property and records, while simultaneously (by operation of agency regulations) limiting the plaintiffs' legal right to a permit.  "[B]ut unlike the Sacketts," Plaintiff "is neither out of regulatory review options nor subject to an order" with legal effect.  *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1269 (D.C. Cir. 2018).

## II.    Plaintiff's Substantive Challenges Are Not Likely To Succeed.

### A.    Plaintiff's First Amendment Challenge Lacks Merit.

Plaintiff is unlikely to succeed on his First Amendment claim because, as a retired servicemember, he has no First Amendment right to encourage other servicemembers to question the legitimacy of their military orders or to impugn their superior officers when such conduct violates his ongoing duties and obligations to the military.  The First Amendment is not a shield against the consequences of such violations in military personnel matters.

The Supreme Court has long recognized that the First Amendment operates differently "in the military context."  *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986).  Although servicemembers enjoy First Amendment rights, "the different character of the military community and of the military mission requires a different application of those protections.  The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it."  *Parker v. Levy*, 417 U.S. 733, 758 (1974); *cf. Talbott*, 2025 WL 353344, at *6 ("review of

constitutional challenges to military rules . . . 'is far more deferential than constitutional review of similar laws or regulations designed for civilian society'" (quoting *Goldman*, 475 U.S. at 507)).

Specifically, servicemembers have no First Amendment right to engage in speech that "may . . . undermine the effectiveness of response to command," *Levy*, 417 U.S. at 759, or "dimin[ish] . . . military 'loyalty, discipline, or morale,'" *Priest v. Sec'y of the Navy*, 570 F.2d 1013, 1017 (D.C. Cir. 1977) (quoting *Greer v. Spock*, 424 U.S. 828, 840 (1976)).  For purposes of military discipline, such speech "is constitutionally unprotected."  *Levy*, 417 U.S. at 759.  And the military has latitude to sanction servicemembers for such speech.  There is no exception for retired servicemembers, who, as explained below, remain subject to recall and to the UCMJ, and whose public speech may continue to bear on good order, discipline, and confidence in the chain of command.  Here, the Secretary of War reasonably determined that Plaintiff's public statements have had, and continue to have, "a detrimental impact on military discipline and good order."  Ltr. 2.  That speech therefore may be subject to military discipline consistent with the First Amendment.

## 1. This framework applies to retired servicemembers like Plaintiff.

Rather than engage with the controlling First Amendment principles as applied to the military, Plaintiff insists that the "military context" of his speech is irrelevant because he is retired.  Mot. 15.  Not so.  Plaintiff has not "severed all relationship with the military and its institutions."  *Toth*, 350 U.S. at 14.  As a "[r]etired member[] of a regular component of the armed forces who [is] entitled to pay," he remains, by statute, fully subject to the UCMJ.  10 U.S.C. § 802(a)(4).  In short, Plaintiff remains part of the military and subject to its standards of conduct, and consistent with the First Amendment jurisprudence in the military context, the

military may take appropriate actions against him irrespective of the rules governing purely civilian expression.

Plaintiff halfheartedly suggests that Congress lacks power under the Make Rules Clause to extend military jurisdiction to retired servicemembers. *See* Mot. 15; *see also* U.S. Const. art. I, § 8, cl. 14 (Congress has authority to "make Rules for the Government and Regulation of the land and naval Forces"). But the Court of Appeals's decision in *Larrabee v. Del Toro*, 45 F.4th 81 (D.C. Cir. 2022), squarely forecloses that argument. *Larrabee* held that a member of the Fleet Marine Reserve could be subject to the UCMJ consistent with the Make Rules Clause. As a Fleet Marine Reservist, Larrabee "[i]n practice . . . became a retiree, but he maintained a legal relationship with the armed forces." *Id.* at 9. Because Larrabee "had legally bound himself to the armed forces and assumed a duty to obey military orders" (including an order to reenter active-duty service), the court held that he "had a 'military status' and was properly subject to court-martial jurisdiction." *Id.* at 96 (quoting *Solorio v. United States*, 483 U.S. 435, 439 (1987)). The same is true of regular retired servicemembers like Plaintiff, as the Tenth Circuit has also recently held. *See Wilson*, 150 F.4th at 1369 (because "[r]etired servicemembers have an ongoing duty to obey military orders" and "maintain a formal relationship with the military," they "hold military status and are thus amenable to court-martial jurisdiction"). Thus, in issuing the Censure Letter, the Secretary properly reminded Plaintiff that "as a retired Naval officer, [Plaintiff] remain[s] subject to the Uniform Code of Military Justice." Ltr. at 3.

### 2. For purposes of military discipline, Plaintiff's speech here is unprotected.

Against this settled backdrop, Plaintiff's First Amendment claim lacks merit. The Secretary of War reasonably determined that Plaintiff's public statements have had, and continue to have, "a detrimental impact on military discipline and good

order." Ltr. 2. As the Secretary explained, "[w]hen a retired officer with a previously distinguished service record and a current position of authority tells servicemembers that their appointed leaders are committing war crimes and that they must refuse orders, it: undermines trust in leadership; creates legal confusion; encourages insubordination; damages morale; and harms public confidence." *Id.* Under *Levy*, Plaintiff may face military consequences for speech with such effects consistent with the First Amendment.

The Secretary's determination about the effect of Plaintiff's speech on military order is not subject to judicial second-guessing. *See Adkins*, 68 F.3d at 1323 ("The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review."). Even assuming judicial review is available, the Court "must give great deference to the professional judgment of military authorities." *Goldman*, 475 U.S. at 507-08; *see also North Dakota v. United States*, 495 U.S. 423, 443 (1990) ("When the Court is confronted with questions relating to military discipline and military operations, we properly defer to the judgment of those who must lead our Armed Forces in battle."). Indeed, "[j]udicial deference is at its apogee" in this area. *Goldman*, 475 U.S. at 508. "Not only are courts ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have, but the military authorities have been charged by the Executive and Legislative Branches with carrying out our Nation's military policy." *Id.* at 507-08.

Accordingly, the Court must defer to the Secretary's considered judgment that Plaintiff's public statements risk undermining "military discipline and good order." Ltr. 2; *see, e.g., Ethredge v. Hail*, 56 F.3d 1324, 1328 (11th Cir. 1995) ("We must give great deference to the judgment of" military officials that "Ethredge's [speech] would undermine military order, discipline, and responsiveness"); *Talbott*, 2025 WL 3533344, at *6 (the Supreme Court has "credited the 'professional judgment of

military authorities' that [a] restriction advanced legitimate goals including 'obedience, unity, commitment, and esprit de corps.'" (quoting *Rostker v. Goldberg*, 453 U.S. 57, 68 (1981)).  That deference is especially warranted here because Plaintiff does not meaningfully contest "the accuracy of the Secretary's inferences" about his public statements.  Mot. 14.

In any event, the Secretary's assessment of Plaintiff's speech is reasonable under any standard.  Plaintiff's public statements—some of which were directly addressed to active-duty servicemembers ("we want to speak directly to members of the Military," Compl. ¶ 53)—openly criticized senior military leadership, accused them of war crimes, and questioned the legitimacy of then-ongoing military actions. Such speech risks eroding respect for the chain of command and weaking confidence in military authority.  *See* 10 U.S.C. § 888, UCMJ Art. 88 (prohibiting "contemptuous words" against the President, the Secretary of War, and the Secretaries of the military departments, among others); Joint Service Committee on Military Justice, *Manual for Court Martial*, at IV-21 (2024 ed.) (for Art. 88, "[t]he truth or falsity of the statements is immaterial").  Indeed, before the enactment of the UCMJ, it was long established that retired servicemembers do not have the freedom to make contemptuous statements about the military chain of command.  *See Closson v. U.S. ex rel. Armes*, 7 App. D.C. 460, 471 (D.C. Cir. 1896) (rejecting retired Army captain's habeas petition; the retiree wrote a "letter of an offensive character" to a commanding general and was prosecuted for "conduct to the prejudice of good order and military discipline" and "conduct unbecoming an officer and a gentleman").

The negative effects of Plaintiff's statements are heightened because of his "previously distinguished service record and a current position of authority."  Ltr. at 2.  Moreover, as the Secretary explained, Plaintiff was not merely "providing abstract legal education about the duty to refuse patently illegal orders," but was "specifically counseling servicemembers to refuse particular operations that [Plaintiff] ha[s]

23

characterized as illegal." *Id.* The Secretary reasonably interpreted Plaintiff's public statements as encouraging "members of the armed forces to refuse lawful orders related to National Guard deployments and counter-narcotics operations." *Id.* Those statements, along with Plaintiff's other statements criticizing senior military leaders, undermine the chain of command, counsel disobedience, and create confusion about duty, among other things. *Id.*

Such speech by servicemembers is unprotected. *See, e.g.*, *Wilson*, 139 F. Supp. 3d at 427 ("speech by a subordinate that publicly denigrates and humiliates a commanding officer" or "protests the decision of a senior military official outside the sender's chain of command and urges that official to reverse his decision receives no First Amendment protection"); *Millican v. United States*, 744 F. Supp. 2d 296, 307 (D.D.C. 2010) ("Urging Squadron members to disregard orders and calling into question a commander's credibility and concern for his Squadron members is constitutionally unprotected[.]"); *Levy*, 417 U.S. at 761 ("His conduct, that of a commissioned officer publicly urging enlisted personnel to refuse to obey orders which might send them into combat, was unprotected under the most expansive notions of the First Amendment.").

The First Amendment has never been thought to require the military to tolerate speech by its own members that undermines good order, discipline, or morale. *Goldman*, 475 U.S. at 507 ("[t]he military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment"). Plaintiff's First Amendment challenge therefore is not likely to succeed.

## B.    The Speech Or Debate Clause does not apply to the statements at issue.

Some claims of legislative immunity pose close questions about the scope of the Speech or Debate Clause. This case does not. A legislator's public statements in

interviews and on social media are not legislative acts protected by the Speech or Debate Clause.

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Clause affords Members of Congress immunity only for "legislative acts." *Doe v. McMillan*, 412, U.S. 306, 311-12 (1973). Because the Clause "was designed to preserve legislative independence, not supremacy," courts must "closely scrutinize[]" invocations that extend "beyond what is needed to protect legislative independence." *Hutchinson v. Proxmire*, 443 U.S. 111, 126-27 (1979). Thus, while the Clause safeguards the legitimate prerogatives of Congress, it does not extend beyond the legislative sphere, and it does not "make Members of Congress super-citizens, immune from" all accountability. *United States v. Menendez*, 831 F.3d 155, 165 (3d Cir. 2016) (quoting *United States v. Brewster*, 408 U.S. 501, 516 (1972)). "A Member seeking to invoke the Clause's protections bears the burden of establishing the applicability of legislative immunity." *Id.*

Consistent with its text, "[t]he heart of the Clause is speech or debate in either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). The Supreme Court has also extended the Clause's protection beyond its literal terms to include acts "generally done in a session of the House by one of its members in relation to the business before it," such as voting, issuing committee reports, and participating in committee hearings. *Id.* at 624 (quoting *Kilburn v. Thompson*, 103 U.S. 168, 204 (1880)). "The gloss going beyond a strictly literal reading of the Clause has not, however, departed from the objective of protecting only legislative activities." *Hutchinson*, 443 U.S. at 125. The Clause thus reaches only acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage

25

or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625.

Because the Speech or Debate Clause is limited to acts that are integral to the legislative process, the Supreme Court has squarely held that a Member's communications with constituents or to the public "are political in nature rather than legislative" acts protected by the Clause. *Brewster*, 408 U.S. at 512. Indeed, "it has never been seriously contended" that "speeches delivered outside the Congress" or "news releases" are activities afforded protection by the Speech or Debate Clause. *Id.*

The Supreme Court has also repeatedly held that the Clause "does not protect attempts to influence the conduct of executive agencies." *Hutchinson*, 443 U.S. at 121 n.10. Although Members of Congress may frequently seek to affect executive action, that conduct, "though generally done," is "not protected legislative activity." *Doe*, 412 U.S. at 313 (quoting *Gravel*, 408 U.S. at 625); *see also United States v. McDade*, 28 F.3d 283, 299 (3d Cir. 1994) (Alito, J.).

The Supreme Court's clear instruction that the Speech or Debate Clause does not protect statements to the public or attempts to influence the Executive Branch dooms Plaintiff's reliance on the Clause. The Censure Letter does *not* address any of Plaintiff's speech on the Senate floor, participation in committee hearings, votes on legislation, or preparation of committee reports. *See* Buria Decl. ¶ 7. It addresses only Plaintiff's public statements on social media and in news interviews. *See id.* ¶¶ 5, 7. Plaintiff does not allege otherwise, relying instead on his *status* as a member of the Senate's Armed Services Committee and Select Committee on Intelligence, and the proposition that anything he does in furtherance of that status is immune. *See* Mot. 1, 20-22. But the "[i]mmunity applies based on the nature of Senators' actions, not their status as legislators." *de la Torre v. Cassidy*, 800 F. Supp. 3d 54, 63 (D.D.C. 2025).

26

Because Plaintiff's "acts are so clearly non-legislative," "no inquiry into their content or underlying motivation or purpose is needed to classify them" as outside the scope of the Clause. *Menendez*, 831 F.3d at 166; *accord, e.g.*, *Chastain v. Sundquist*, 833 F.2d 311, 314 (D.C. Cir. 1987) ("statements to the public, via press release or press conference, do not constitute legislative activity"). Perhaps for this reason, Plaintiff has not identified any case applying the Speech or Debate Clause to a legislator's social media posts, public statements outside of any legislative process, or statements to journalists.

Plaintiff instead advances a theory that would yield something approaching legislative impunity, rather than any recognized form of Speech or Debate Clause immunity. He suggests that any conduct by a Member which could conceivably be characterized as "oversight" is immunized by the Clause. Mot. 19. But this cannot be squared with the settled rule that the Clause "does not protect attempts to influence the conduct of executive agencies"—a prototypical oversight function. *Hutchinson*, 443 U.S. at 121 n.10. Thus, "claims of 'oversight' do not automatically result in Speech or Debate protection." *Menendez*, 831 F.3d at 168.

To be sure, some exercises of oversight authority—like the issuance of a Congressional subpoena pursuant to an authorized investigation—may count as legislative acts. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 505 (1975). But tellingly, Plaintiff does not allege, much less argue, that any of his statements were made for the purpose of "seek[ing] information or otherwise attempt[ing] to aid a congressional investigation." *Chastain*, 833 F.2d at 315. Instead, Plaintiff characterizes his statements as having "signaled deep concerns about military actions," "contributed to ongoing legislative debate," and "signaled" possible future action. Mot. 22. That is merely another way of describing efforts to "inform the public" and "influence the conduct of" the Executive Branch—conduct that the Supreme Court has repeatedly held falls outside the Clause's protection. *Hutchinson*,

27

443 U.S. at 121 n.10, 133; *see also United States v. Helstoski*, 442 U.S. 477, 489 (1979) ("Promises by a Member to perform an act in the future are not legislative acts.").

Plaintiff's position thus reduces to the sweeping proposition that all "statements of an elected representative *as a representative* . . . [are] . . . protected." Mot. 22.  Again, that view is flatly inconsistent with the Supreme Court's repeated admonition that the Clause does not cover "all things in any way related to the legislative process."  *Brewster*, 408 U.S. at 516.  Plaintiff's claim of legislative immunity should be dismissed out of hand.

## C.    Plaintiff has not established any violation of the Separation of Powers.

Plaintiff repackages his Speech or Debate argument as a freestanding separation-of-powers claim, contending that the military's action based on his public statements impermissibly intrudes on the Legislative Branch.  *See* Mot. 23-25.  As discussed, that argument fails because the Constitution already specifies—through the Speech or Debate Clause—the precise scope of protection afforded to legislators' statements and conduct, including against interference by the Executive.  Where that Clause does not apply, separation-of-powers principles do not supply a shield.

None of the constitutional principles identified by Plaintiff suggest there is any separation of powers problem here.  Plaintiff first points to Article I's Rulemaking Clause, which grants Congress the power to "punish its Members for disorderly Behavior."  U.S. Const. art. I, § 5, cl. 2.  But this provision has never been understood to vest Congress with exclusive authority over Members' misconduct *generally*.  In upholding the bribery prosecution of a sitting Senator in *Brewster*, the Supreme Court "necessarily rejected any contention that Congressional punishment power in such matters was exclusive."  *United States v. Myers*, 635 F.2d 932, 938 (2d Cir. 1980); *see Brewster*, 408 U.S. at 520.  Taken seriously, Plaintiff's argument would suggest

legislator immunity from generally applicable laws even when their conduct does not constitute legislative acts.  That is not the law.

Nor does the Incompatibility Clause have anything to do with the military's authority over retired servicemembers.  Plaintiff's reliance on the Clause is a red herring because the Department is not disciplining him because he is a Senator. Leaving aside the storied history and tradition of retired servicemembers serving in Congress, the Incompatibility Clause is irrelevant here because Defendants' assertion of authority to impose military discipline on Plaintiff stems from his status as a retired servicemember subject to the UCMJ.  Specifically, Congress has extended the UCMJ to all "[r]etired members of a regular component of the armed forces who are entitled to pay."  10 U.S.C. § 802(a)(4).  Thus, Congress has decided that the UCMJ applies to Plaintiff by virtue of his current status as a retired member of the Navy.  Plaintiff therefore must conform his conduct to the standards applicable to retired servicemembers (or face military discipline if he does not).

Notably, the Make Rules Clause permits Congress to extend UCMJ jurisdiction over any "person who has a formal relationship with the military that includes an obligation to obey military orders," because such persons are "part of the 'land and naval Forces,' as that phrase was understood at the Founding."  *Larrabee*, 45 F.4th at 95; *see Wilson*, 150 F.4th at 1365.  Thus, the UCMJ may be constitutionally applied to Plaintiff because he assumed an obligation to obey military orders, even as a retired servicemember.  *See Larrabee*, 45 F.4th at 95.  Because Defendants' authority to take administrative actions against Plaintiff does not turn on whether he has active-duty status, the Court need not opine on the scope or effect of Incompatibility Clause.

Even if the Clause were somehow relevant to the military's authority over retired servicemembers like Plaintiff, the constitutional infirmity would lie in Plaintiff's own choice to retain the benefits of retired officer status (rather than

separating from the military) while in the Senate.    To accept Plaintiff's Incompatibility Clause argument would require concluding that he simultaneously holds "offices" in both the Executive and Legislative Branches in a way that violates the Clause.  But that would mean that Plaintiff is either ineligible to hold his Senate seat—a position Congress clearly does not agree with, as it allowed Plaintiff (and others like him) to serve in Congress—or is not part of the military for purposes of retirement status and entitlement to retired pay and benefits.  Put differently, if the Incompatibility Clause applied in the manner Plaintiff suggests, it would force a choice between his Senate seat and very thing Plaintiff is "fighting for" in this lawsuit—his military status and benefits.  Mot. 17.  Whether that is true, Plaintiff cannot argue that the Clause shields him from all military discipline, while suing to keep all military privileges and benefits along with his Senate seat.

Because Congress has empowered the Executive to enforce military standards against retired servicemembers, and because Plaintiff has not identified any specific, constitutionally designated authority of Congress that is being encroached upon by the Executive, Defendants' actions pose no separation of powers problem.  *See United States v. Rose*, 28 F.3d 181, 190 (D.C. Cir. 1994); *cf. Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 484 (2010) (separation of powers violation because "multilevel protection from removal is contrary to Article II's vesting of the executive power in the President").

Nor is there any actual Executive interference into the legislative sphere.  The Court of Appeals has already rejected this line of reasoning in *Rose*.  There, the court held that DOJ's prosecution of a Congressman under the Ethics Act was consistent with the separation of powers despite assertions that allowing such charges to proceed "would hinder" the work of Congress.  *Rose*, 28 F.3d at 190.  The court explained that by enacting the Ethics Act, "Congress has empowered the executive and judicial branches to enforce" its requirements.  *Id.*  Thus, "in bringing th[e]

action," the Executive "was fulfilling its constitutional responsibilities, not encroaching on Congress's." *Id.*

The same reasoning applies here. In addition to the President's own constitutionally vested power as the "Commander in Chief," U.S. Const. art. II, § 2, cl. 1, Congress has authorized the Executive to administer the military, to maintain good order and discipline, and to apply those standards to servicemembers—including retired servicemembers. In carrying out those responsibilities, Defendants are not intruding into the legislative sphere, but executing the laws Congress enacted and the constitutional duties assigned to the Executive. As in *Rose*, any incidental burden on a particular Member's activities does not transform lawful execution of generally applicable authority into a separation of powers violation.

And as the court emphasized in *Rose*, Congress retains the ultimate institutional safeguard. If Congress "feels threatened by" the Executive's execution of the law against its Members, Congress may "amend the [UCMJ] to restrict the jurisdiction of the [Executive] or to exempt Members of Congress." 28 F.3d at 190. That structural check—not judicial interference with ongoing enforcement actions—is the Constitution's chosen remedy. *See also Myers*, 635 F.2d at 939 ("With the policy choice thus fully within the control of Congress, we cannot conclude that the separation of powers doctrine creates a constitutional barrier to the law enforcement technique selected by the Executive Branch."). The only part of this dispute that offends the separation of powers is Plaintiff's attempt to enlist the Judiciary to preempt the Executive's performance of its constitutional and statutory obligations.

### D. Plaintiff's Due Process claim lacks merit.

The Due Process Clause of the Fifth Amendment requires that no person be deprived of life, liberty, or property without due process of law. *Mathews v. Eldridge*, 424 U.S. 319 (1976). "'The fundamental requisite of due process of law is the opportunity to be heard' at 'a meaningful time and in a meaningful manner.'" *Alaska*

*Commc'ns Sys. Holdings, Inc. v. NLRB*, 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).  It is also "fundamental" that "[t]o state a procedural due process claim, a complaint must suggest what sort of process is due." *Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) (quotation omitted).

As an initial matter, Plaintiff identifies no deprivation of a protected liberty or property interest that has already occurred.  Nor does he contend that he has been deprived of notice or an opportunity to be heard in the Grade Proceeding.  This is unsurprising, as Plaintiff has received notice and a meaningful chance to participate in the Proceeding, which remains ongoing and may result in no adverse action against him.  There is no Due Process violation before the process afforded him has concluded and before any concrete deprivation has occurred.  Plaintiff's Due Process claim therefore is unlikely to succeed and should be dismissed at the threshold.  *See Cronin v. FAA*, 73 F.3d 1126, 1128 (D.C. Cir. 1996) (due process claim premature because courts "cannot possibly guess at the precise nature of a claimed denial of procedural due process until one actually arises").

Indeed, rather than identifying the process that is purportedly due to him, Plaintiff does not want any process at all—he largely reprises his argument that pursuing available administrative remedies would be futile because the outcome is allegedly prejudged.  *See* Mot. 26-27.  Again, Plaintiff has not carried his weighty burden of establishing that the relevant decisionmaker—the Secretary of War—has unconstitutionally prejudged the outcome of the Grade Proceeding.

Courts "must start . . . from the presumption" that administrative decisionmakers are "unbiased."  *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  Litigants must carry a "difficult burden of persuasion" to "overcome [the] presumption of honesty and integrity in those serving as adjudicators."  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  For bias to require disqualification, "it must be of a

continuing and personal nature and not simply bias against the [individual] because of his conduct." *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 54, 65 (D.D.C. 2010) (quotation omitted). Plaintiff has not rebutted that presumption with any "substantial countervailing reason" demonstrating actual bias or unconstitutional prejudgment. *Thomas v. District of Columbia*, 407 F. Supp. 2d 102, 109 (D.D.C. 2005) (quoting *Harline v. DEA*, 148 F.3d 1199, 1204 (10th Cir. 1998)).

The structure of the Grade Proceeding itself confirms the absence of prejudgment. The Secretary of War directed the Secretary of the Navy to examine the basis for reopening the grade determination and to "recommend . . . appropriate" action. Ltr. at 2. That directive does not suggest, much less compel, any particular result. And the Secretary of War made explicit that he will exercise his independent judgment to decide "if a reduction is warranted" only "[a]fter receiving the Secretary of the Navy's recommendations." *Id.* at 3.

Moreover, the Proceeding allows Plaintiff to shape both the factual record and the recommendation ultimately presented for decision, including by submitting argument and mitigating evidence after consultation with counsel. Once Plaintiff has been heard, the Secretary of the Navy will exercise his independent judgment in determining whether a reduction in grade is warranted. The Secretary of War will then separately evaluate that recommendation and make a final determination. Nothing about this process suggests that its outcome is "foreordained." Mot. 27.

Plaintiff again misses the mark in focusing on Secretary Hegseth's independent, antecedent determination that Plaintiff's conduct warranted censure. That determination addressed a different question, applied different standards, and served a different function than the Grade Proceeding. A finding that certain conduct warranted censure says nothing about whether, after a holistic assessment of Plaintiff's entire service record, mitigating evidence, and legal and factual arguments, that same conduct justifies a reduction in retirement grade. Moreover,

although Plaintiff ignores that the Grade Proceeding interposes an independent decisionmaker between the determination to censure and any final grade determination, there is no basis for this Court to assume that Secretary Hegseth will ignore the considered recommendation of Secretary Phelan. Accepting Plaintiff's due process claim would flip the presumption of regularity applicable to administrative decisionmakers on its head. *Cf. Curry v. Sec'y of the Army*, 595 F.2d 873, 880 (D.C. Cir. 1979) (provisions of the UCMJ assigning multiple roles to the convening authority in the initiation, prosecution, and review of courts-martial are constitutional).

### E.    The Grade Proceeding is not contrary to statute.

Even if an inchoate administrative proceeding were somehow final agency action or ripe for immediate judicial review, Plaintiff's statutory argument under 10 U.S.C. § 1370 would fail on the merits. He contends that the military's authority to reduce a retired officer's grade for "good cause" is implicitly limited to conduct occurring before retirement. Mot. 28-31. But that limitation appears nowhere in the text, conflicts with the statute's structure, and cannot be reconciled with Congress' decision to subject retired servicemembers to the UCMJ and court-martial jurisdiction. As this Court previously recognized, military retirees generally may be "administratively separated from the service" for "offenses committed after retirement." *Larrabee v. Braithwaite*, 502 F. Supp. 3d 322, 332 (D.D.C. 2020) (Leon, J.). If they can be separated from the service for post-retirement conduct, they likewise can have their grade reduced; after all, no statue authorizes any retired pay for discharged servicemembers.

Section 1370(a) provides that, upon retirement, an officer "shall be retired in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily." 10 U.S.C. § 1370(a)(1). The statute also vests the Department with discretion to "reopen" a final retirement grade determination in

various circumstances. More specifically, § 1370(f)(2) sets out four situations in which an officer's grade in retirement "may be reopened":

(A) If the retirement or retired grade of the officer was procured by fraud.

(B) If substantial evidence comes to light after the retirement that could have led to determination of a different retired grade under this section if known by competent authority at the time of retirement.

(C) If a mistake of law or calculation was made in the determination of the retired grade.

(D) If the applicable Secretary determines, pursuant to regulations prescribed by the Secretary of Defense, that good cause exists to reopen the determination of retired grade.

Secretary Hegseth determined "good cause exists to reopen" Plaintiff's retired grade. Ltr. at 3. Under the text of the statute, that is sufficient to conclude that the Department has authority to conduct the Grade Proceeding. Nothing in subsection (D) restricts "good cause" to events occurring before retirement. And the statute points the other way. Subsection (D) effectively operates as a catch-all provision, deliberately conferring broad discretion on the Secretary to address circumstances not exhaustively enumerated elsewhere in the statute. *See Sierra Club v. FERC*, 97 F.4th 16, 29 (D.C. Cir. 2024) (noting the agency's "broad discretion to decide what facts were sufficient to meet the 'good cause' standard"). Plus, where Congress intends to impose temporal limits, it does so expressly—as it did in subsection (B), which specifically addresses evidence discovered "after the retirement." Congress' decision not to include similar language in subsection (D) must be respected.

Plaintiff's contrary reading appears to rely on a *noscitur a sociis*-style inference. He contends that because other provisions in § 1370(f)(2) refer to conduct or errors occurring before or at the time of the initial grade determination, "good cause" must be similarly constrained. But that canon has no application here. Subsection (D) is not one term in a list of closely related verbs describing a single

category of misconduct. Instead, it is a distinct, deliberately open-ended provision that follows more narrow grounds for reopening. In that context, the surrounding provisions provide no basis to strip the broad discretion that is vested in the Department by the plain text of subsection (D) itself. *Cf. Russel Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923) (*noscitur* canon should not be applied when a provision has "a character of its own not to be submerged by its association").

Moreover, the rule against surplusage cuts decisively against Plaintiff's interpretation. If "good cause" were limited to pre-retirement conduct, subsection (D) would add little or nothing beyond subsection (B), which already addresses newly discovered evidence of pre-retirement conduct bearing on the original grade determination. Reading subsection (D) to encompass post-retirement circumstances thus gives independent meaning to each provision and accords with Congress' evident intent to allow reopening where fairness or military interests so require.

Plaintiff's interpretation would also produce an implausible and untenable result. It would mean that once an officer retires, even serious post-retirement misconduct could never be considered except through court martial. That outcome cannot be squared with Congress' decision to maintain retired servicemembers' ongoing legal relationship with the Armed Forces, including their continued subjection to the UCMJ and their susceptibility to recall to active duty. Congress did not preserve those authorities only to disable the Department from addressing post-retirement conduct bearing on an officer's suitability to retain the honors and privileges of a particular grade.

As a fallback, Plaintiff contends the Grade Proceeding must stop "because Secretary Hegseth, rather than the Secretary of the Navy," determined that good cause exists for reopening. Mot. 31. That argument defies both the statute's structure and basic principles of executive supervision. The Secretary of War is the superior officer within the Department and exercises plenary authority over the

military departments, including the Navy.  *See* 10 U.S.C. § 113(b).  It would make little sense to read the statute to prohibit the Secretary of War—who must ultimately decide whether a reduction in grade is warranted unless he decides to delegate that decision, *see id.* § 1370(f)(6)—from determining that good cause exists to initiate review in the first place.  Moreover, if the Secretary of War may lawfully determine that good cause exists to reopen the retirement grade of the most senior naval officers, *see id.* § 1370(f)(3)(B) (and no one disputes that he may) it follows that he may direct the Secretary of the Navy to reopen a grade determination for a subordinate officer.  Nothing in § 1370 requires the Secretary of War to blind himself to misconduct or to await an unsolicited determination by a subordinate before exercising supervisory authority.

## III. Plaintiff Fails To Show Irreparable Harm Absent An Injunction.

Plaintiff has also failed to establish "that irreparable injury is *likely* in the absence of an injunction."  *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The Circuit "has set a high standard for irreparable injury."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  To meet it, a plaintiff must establish that he faces an injury that is "both certain and great," "actual and not theoretical," and "beyond remediation."  *Id.* (citation omitted).  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to qualify as irreparable.  *Sampson v. Murray*, 415 U.S. 61, 90–91 (1974).  And in the military context, "the showing of irreparable harm must be *especially strong* before an injunction is warranted, given the national security interests weighing against judicial intervention in military affairs."  *Church*, 573 F. Supp. 3d at 145; *see also Guerra v. Scruggs*, 942 F.2d 270, 274 (4th Cir. 1991); *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985).  Plaintiff's asserted injuries fall short of that demanding standard, and the court should deny the motion on that basis alone.

Plaintiff's principal theory of irreparable harm is that Defendants have violated his constitutional rights.  *See* Mot. 41-43.  This does not work because an alleged "deprivation of constitutional rights" can only constitute irreparable injury "to the extent such deprivation is shown to be likely." *Archdiocese of Wash. v. Wash. Metro Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018).  Because Plaintiff is not likely to succeed on the merits of his constitutional claims, he cannot predicate irreparable harm on an establishment of likely constitutional injury.

In any event, the Court of Appeals has recently clarified that courts should "not axiomatically find that a plaintiff will suffer irreparable harm simply because it alleges a violation of its rights"—"[e]ven in the sensitive area[] of freedom of speech." *Hanson v. District of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024) (quotation omitted); *see also Ayele v. District of Columbia*, 704 F. Supp. 3d 231, 239 (D.D.C. 2023) ("[T]here is no per se rule that the violation of any constitutional rights is inherently irreparable.").  Rather, a plaintiff must come forward with evidence that he will be "*irreparably* harmed if . . . required to wait until the court" enters final judgment. *Hanson*, 120 F.4th at 244.  Thus, even asserted constitutional harms must be "sufficiently certain, persuasively demonstrated, and so clearly irremediable that it warrants a court reaching out to alter the status quo before the merits are resolved." *Id*.

Plaintiff has made no such showing.  Most notably, Plaintiff does not actually contend that *his* speech is being chilled in any way.  Just the opposite.  *See* Mot. 18 ("Defendants' actions have not silenced Senator Kelly himself.").  It is insufficient for Plaintiff to assert an alleged chilling effect on unnamed third parties; Plaintiff must show that *he* will suffer irreparable harm absent an injunction.  *See Musk*, 769 F. Supp. 3d at 5 ("[H]arm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court.").  Nor has

Plaintiff explained, much less shown, how he faces an irreparable injury under his due process theory.

Indeed, he has not even identified any protected liberty or property interest of which he has been deprived, much less shown that a possible future deprivation would "be beyond remediation." *Chaplaincy*, 454 F.3d at 297. And "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Talbott*, 2025 WL 3533344, at *11 (quoting *Chaplaincy*, 454 F.3d at 297–98). Thus, even the loss of a valued military position "does not usually constitute irreparable injury" because of the possibility of remediation. *Id.* (citing *Sampson*, 415 U.S. at 90-91). To the extent Plaintiff's claim of irreparable harm is based on potential reduction in rank or retirement pay—which is clearly subject to repair—that is not a basis for injunctive relief.

Last, Plaintiff's mere assertion of reputational damage also cannot constitute irreparable harm. That can be shown only when it is "concrete and corroborated, not merely speculative." *Trudeau v. FTC*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006); *cf. Reinhard v. Johnson*, 209 F. Supp. 3d 207, 220 (D.D.C. 2016) (servicemember's involuntary separation for misconduct did not constitute irreparable harm despite claim that the discharge will create a "stigma," or otherwise "unfairly paint" plaintiff). Here, the administrative process has just begun, and "courts applying these principles have held that even less-than-honorable military discharges do not constitute irreparable injuries warranting interim relief." *Talbott*, 2025 WL 3533344, at *11; *see also Chilcott v. Orr*, 747 F.2d 29, 33-34 (1st Cir. 1984). Moreover, Plaintiff is a sitting United States Senator with an established public platform and unrivaled access to the channels of public discourse. He retains every opportunity to respond publicly and defend his reputation, and he has done so. *See*, *e.g.*, Senator Mark Kelly Press Release, *ICYMI: Kelly Won't Back Down as*

*Hegseth Censures and Threatens Demotion* (Jan. 6, 2026) ("In case you missed it, Arizona Senator Mark Kelly went on *The Daily Show* with Jon Stewart, NPR's *Morning Edition*, ABC's *Good Morning America*, and MS NOW's *The Rachel Maddow Show* to call out Pete Hegseth's censure and threats to demote him—making clear he won't back down."). In these circumstances, Plaintiff's conclusory assertion of reputational harm does not justify an injunction.

## IV. The Balance of Equities Disfavor Injunctive Relief.

The remaining equitable factors likewise weigh decisively in the government's favor. The relief Plaintiff seeks would interfere with the military's ability to maintain good order and discipline—interests that the Supreme Court has repeatedly recognized as paramount and constitutionally committed to the political branches. *E.g., Gilligan*, 413 U.S. at 10 (the "power of oversight and control of military force by elected representatives and officials . . . underlies our entire constitutional system"). Enjoining the Grade Proceeding or Censure Letter would prevent the Department from ensuring retired servicemembers comply with their obligations under the UCMJ and signal that routine mechanisms of military accountability are subject to immediate judicial veto. Any inchoate harm to Plaintiff is substantially outweighed by the harm to the government and to the public that would flow from an order prohibiting the military from addressing "conduct that undermines good order and discipline in our Armed Forces." Ltr. at 3; *see Winter*, 555 U.S. at 23 (holding that "[e]ven if plaintiffs ha[d] shown irreparable injury from the Navy's training exercises, any such injury [wa]s outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors").

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion for a preliminary injunction and stay under 5 U.S.C. § 705.

DATED: January 22, 2026                    Respectfully submitted,


                                           BRETT A. SHUMATE
                                           Assistant Attorney General

                                           ERIC HAMILTON
                                           Deputy Assistant Attorney
                                           General

                                           JEAN LIN
                                           Special Litigation Counsel

                                           JOSEPH E. BORSON
                                           Assistant Branch Director


                                           */s/ John Bailey*
                                           JOHN BAILEY
                                           Counsel to the Assistant
                                           Attorney General
                                           United States Department of
                                           Justice
                                           Civil Division
                                           950 Constitution Ave. NW
                                           Washington, DC 20005
                                           Phone: (202) 514-6993
                                           Email: john.bailey@usdoj.gov

                                           *Counsel for Defendants*