**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARK KELLY, United States Senator
representing the State of Arizona,

*Plaintiff*,

v.

PETE HEGSETH, in his official capacity as
Secretary of Defense, *et al.*,

*Defendants*.

Case No. 26-cv-81

Oral Argument Requested
Expedited Hearing Requested

**REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION**
**FOR A PRELIMINARY INJUNCTION AND STAY UNDER 5 U.S.C. § 705**

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..............................................................................................................................3

I.      Senator Kelly Is Likely to Succeed on the Merits .................................................................3

   A.    Defendants' Actions Violate the First Amendment.........................................................3

   B.    Defendants' Actions Violate the Speech or Debate Clause...............................................8

   C.    Defendants' Actions Violate the Separation of Powers ....................................................9

   D.    Defendants' Actions Violate Due Process........................................................................10

   E.    Defendants' Reopening Exceeds Their Statutory Authority .............................................12

   F.    Defendants' Actions Are Subject to Immediate Judicial Review .....................................14

II.     Senator Kelly Will Suffer Irreparable Harm Absent Injunctive Relief ................................23

III.    The Balance of Equities and Public Interest Weigh Heavily in Senator Kelly's Favor ........25

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. United States*,
    68 F.3d 1317 (Fed. Cir. 1995).............................................................................5, 22

*Am. Acad. of Pediatrics v. HHS*,
    2026 WL 80796 (D.D.C. Jan. 11, 2026).........................................................23, 24

*Am. Bar Ass'n v. DOJ*,
    783 F. Supp. 3d 236 (D.D.C. 2025)......................................................................23

*Amos Treat & Co. v. SEC*,
    306 F.2d 260 (D.C. Cir. 1962)..............................................................................24

*AT&T Corp. v. FCC*,
    349 F.3d 692 (D.C. Cir. 2003)..............................................................................18

*Austin v. U.S. Navy Seals 1-26*,
    142 S. Ct. 1301 (2022).........................................................................................22

*\*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023).......................................................................................18, 19

*Bellion Spirits, LLC v. United States*,
    7 F.4th 1201 (D.C. Cir. 2021)...............................................................................17

*\*Bennett v. Spear*,
    520 U.S. 154 (1997)..............................................................................................14

*Bois v. Marsh*,
    801 F.2d 462 (D.C. Cir. 1986).........................................................................20, 21

*\*Bond v. Floyd*,
    385 U.S. 116 (1966)................................................................................................3

*Buckley v. Valeo*,
    424 U.S. 1 (1976)..................................................................................................10

*Caez v. United States*,
    815 F. Supp. 2d 184 (D.D.C. 2011)......................................................................22

*Chappell v. Wallace*,
    462 U.S. 296 (1983)..............................................................................................22

*Charette v. Walker*,
  996 F. Supp. 43 (D.D.C. 1998) ........................................................................22

*Ciba-Geigy Corp. v. EPA*,
  801 F.2d 430 (D.C. Cir. 1986) .........................................................................17

\*Cinderella Career & Finishing Schs. v. FTC*,
  425 F.2d 583 (D.C. Cir. 1970) .........................................................................11

*Closson v. U.S. ex rel. Armes*,
  7 App. D.C. 460 (D.C. Cir. 1896) .......................................................................5

*Cohen v. United States*,
  650 F.3d 717 (D.C. Cir. 2011) (en banc) ..........................................................17

*Comm. for GI Rts. v. Callaway*,
  518 F.2d 466 (D.C. Cir. 1975) ....................................................................20, 21

*Cossio v. Air Force Ct. of Crim. Appeals*,
  129 F.4th 1013 (7th Cir. 2025) ........................................................................21

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*,
  637 F.3d 408 (D.C. Cir. 2011) .........................................................................16

*Daniels v. United States*,
  947 F. Supp. 2d 11 (D.D.C. 2013) ...................................................................22

\*Darby v. Cisneros*,
  509 U.S. 137 (1993) .........................................................................................20

*Dilley v. Alexander*,
  603 F.2d 914 (D.C. Cir. 1979) .........................................................................23

\*Emory v. Sec'y of Navy*,
  819 F.2d 291 (D.C. Cir. 1987) .........................................................................22

*Ethredge v. Hail*,
  56 F.3d 1324 (11th Cir. 1995) ...........................................................................4

*FTC v. Standard Oil Co.*,
  449 U.S. 232 (1980) .........................................................................................16

*Gilligan v. Morgan*,
  413 U.S. 1 (1973) .............................................................................................22

*Goldman v. Weinberger*,
  475 U.S. 503 (1986) ...........................................................................................4

*Gravel v. United States,*
    408 U.S. 606 (1972) ............................................................................................. 8, 9

*Greer v. Spock,*
    424 U.S. 828 (1976) ................................................................................................... 4

*Harrington v. Purdue Pharma L.P.,*
    603 U.S. 204 (2024) ................................................................................................. 12

*Hartman v. Moore,*
    547 U.S. 250 (2006) ................................................................................................. 24

*Hettinga v. United States,*
    560 F.3d 498 (D.C. Cir. 2009) ................................................................................ 20

*Holistic Candlers & Consumers Ass'n v. FDA,*
    664 F.3d 940 (D.C. Cir. 2012) ................................................................................ 15

*Hutchinson v. Proxmire,*
    443 U.S. 111 (1979) ............................................................................................. 8, 9

*In re Sealed Case,*
    80 F.4th 355 (D.C. Cir. 2023) ................................................................................... 8

*Indep. Equip. Dealers Ass'n v. EPA,*
    372 F.3d 420 (D.C. Cir. 2004) ........................................................................... 15, 16

*INS v. Chadha,*
    462 U.S. 919 (1983) ................................................................................................. 10

*\*Jenner & Block LLP v. DOJ,*
    784 F. Supp. 3d 76 (D.D.C. 2025) .......................................................................... 23

*Jewish War Veterans of U.S., Inc. v. Gates,*
    522 F. Supp. 2d 73 (D.D.C. 2007) .......................................................................... 24

*Kreis v. Sec'y of Air Force,*
    866 F.2d 1508 (D.C. Cir. 1989) .............................................................................. 22

*Larrabee v. Del Toro,*
    45 F.4th 81 (D.C. Cir. 2022) ..................................................................................... 5

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders,*
    264 F.3d 52 (D.C. Cir. 2001) .................................................................................. 25

*McCarthy v. Madigan,*
    503 U.S. 140 (1992) ................................................................................................. 21

*McKart v. United States*,
    395 U.S. 185 (1969)................................................................................20, 21

*Media Matters for Am. v. Paxton*,
    138 F.4th 563 (D.C. Cir. 2025)................................................................24

*Miller v. Lehman*,
    801 F.2d 492 (D.C. Cir. 1986)................................................................5, 15

*Millican v. United States*,
    744 F. Supp. 2d 296 (D.D.C. 2010)........................................................4

*Minney v. OPM*,
    130 F. Supp. 3d 225 (D.D.C. 2015)........................................................10

*Musgrave v. Warner*,
    104 F.4th 355 (D.C. Cir. 2024)................................................................8

*NB ex rel. Peacock v. District of Columbia*,
    794 F.3d 31 (D.C. Cir. 2015)..................................................................11

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977)................................................................................9

*NLRB v. Noel Canning*,
    573 U.S. 513 (2014)................................................................................10

*Orloff v. Willoughby*,
    345 U.S. 83 (1953)..................................................................................22

*Ostrow v. Sec'y of Air Force*,
    48 F.3d 562 (D.C. Cir. 1995) (per curiam) (unpublished)......................20

*Parker v. Levy*,
    417 U.S. 733 (1974)................................................................................4

*Perkins Coie LLP v. DOJ*,
    783 F. Supp. 3d 105 (D.D.C. 2025)........................................................24

*PETA, Inc. v. Gittens*,
    215 F. Supp. 2d 120 (D.D.C. 2002)........................................................23

*Priest v. Sec'y of the Navy*,
    570 F.2d 1013 (D.C. Cir. 1977)..............................................................4

*Reilly v. Sec'y of the Navy*,
    12 F. Supp. 3d 125 (D.D.C. 2014)..........................................................22

*Reliable Automatic Sprinkler Co. v. CPSC*,
    324 F.3d 726 (D.C. Cir. 2003) .................................................................16

*Rhea Lana, Inc. v. DOL*,
    824 F.3d 1023 (D.C. Cir. 2016) ...........................................................15, 16

*Roberts v. United States*,
    741 F.3d 152 (D.C. Cir. 2014) ................................................................22

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ..................................................................................3

*Sackett v. EPA*,
    566 U.S. 120 (2012) ................................................................................16

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ..................................................................................3

*Steffan v. Cheney*,
    733 F. Supp. 115 (D.D.C. 1989) .............................................................21

*Stromberg v. California*,
    283 U.S. 359 (1931) ................................................................................10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ...........................................................................18, 19

*Talbott v. United States*,
    2025 WL 3533344 (D.C. Cir. Dec. 9, 2025) ..........................................22

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ................................................................................15

*United States v. Brewster*,
    408 U.S. 501 (1972) ..................................................................................8

*United States v. Johnson*,
    383 U.S. 169 (1966) ..................................................................................9

*United States v. Priest*,
    45 C.M.R. 338 (C.M.A. 1972) .................................................................6

*United States v. Richard*,
    82 M.J. 473 (C.A.A.F. 2022) .................................................................6, 7

*United States v. Rose*,
    28 F.3d 181 (D.C. Cir. 1994) ..................................................................10

*United States v. Stevens*,
   559 U.S. 460 (2010) ....................................................................................................5

*United States v. Wilcox*,
   66 M.J. 442 (C.A.A.F. 2008) .....................................................................................6

*Unity08 v. FEC*,
   596 F.3d 861 (D.C. Cir. 2010) ...........................................................................17, 18

*\*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*,
   784 F. Supp. 3d 127 (D.D.C. 2025) ......................................................3, 17, 24, 25

*Wilson v. Curtis*,
   150 F.4th 1359 (10th Cir. 2025) ................................................................................5

*Wilson v. James*,
   139 F. Supp. 3d 410 (D.D.C. 2015) ....................................................................4, 22

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ..................................................................................................10

**Statutes & Regulations**

5 U.S.C. § 8312(a) ............................................................................................................13

5 U.S.C. § 8311(3) ............................................................................................................13

10 U.S.C. § 1370 ..........................................................................................5, 12, 13, 17

10 U.S.C. § 12731(a) ........................................................................................................11

10 U.S.C. § 12740(2) ........................................................................................................13

32 C.F.R. §§ 723.6(e)(2), 723.7(a) ................................................................................21

Uniform Code of Military Justice, Act of May 5, 1950
   Pub. L. No. 81-5065, ch. 169, 64 Stat. 108 (1950) ...................................4, 5, 9, 25

**Other Authorities**

Aaron Parseghian, *Rep. Bergman 'pissed' at Biden's 'lack of leadership,' says
   troop deaths were avoidable*, FOX 17 (Aug. 26, 2021) ............................................6

Alexander Hamilton, *Concerning the Public Conduct and Character of John
   Adams, Esq. President of the United States* (Oct. 24, 1800) ....................................5

*Centralizing Border Control Policy Under the Attorney General*,
   26 Op. Att'y Gen. 22 (2002) ...................................................................................14

JAGINST 5800.7G CH-2, *Manual of the Judge Advocate General* (Dec. 1, 2023) .....................15

Letter from Mark E. Green et al. to Lloyd J. Austin III, Sec'y of Def. (Aug. 6, 2021)...................6

Manual for Courts-Martial, United States (2024 ed.) .......................................................................6

Michael Duffy, *The Revolt of the Generals*, TIME (Apr. 16, 2006).................................................5

*The President and Accounting Officers*,
    1 Op. Att'y Gen. 624 (1823).......................................................................................................14

*The Federalist No. 76* (H. Lodge ed. 1888)...................................................................................10

U.S. Dep't of Navy, Sec'y of Navy Instr. 1920.6D (July 24, 2019).............................................20

## INTRODUCTION

Defendants assert an absolute and unreviewable authority to impose military punishment on a retired veteran and sitting United States Senator for engaging in speech a civilian political appointee dislikes. That position is as alarming as it is unprecedented.

On the First Amendment, Defendants ask this Court to embrace a novel rule: that retired military veterans have no constitutional protection for their speech whenever the Secretary of Defense—in his sole discretion and without even identifying all of the speech at issue—concludes that it "risks undermining military discipline and good order." They even invoke Senator Kelly's extraordinary service record and prominent public role as *more* reason to diminish his speech rights. Their theories defy settled First Amendment doctrine and our Nation's long tradition of veterans participating vigorously in public debate over national security issues.

Defendants also improperly minimize the separation-of-powers consequences of their position. The Framers vested legislative power in Congress and adopted the Speech or Debate Clause, the Incompatibility Clause, and other Article I authorities to prevent the Executive from wielding coercive power over legislators. Against that backdrop, the military punishment of Senator Kelly is no routine "application of generally applicable laws," as Defendants insist; it is a brazen assertion of executive authority over a Member of Congress—a stark echo of the Crown's use of "sedition" charges to silence parliamentary opponents. Those constitutional violations are compounded by Defendants' predetermination of the outcome of the proposed proceedings and their violation of clear statutory limits on reopening retirement grades.

The affront is not only to veterans and to Congress, but to the judiciary. Defendants begin from the premise that questions of "military discipline" lie beyond judicial review. Their claim that this Court is "not permitted to address" Senator Kelly's challenge disregards reams of precedent reviewing military disciplinary actions and demands an untenable level of deference.

1

Defendants' fallback efforts to evade review—through exhaustion, ripeness, and finality arguments—likewise flout the Supreme Court's repeated instruction that parties threatened with unconstitutional sanctions need not wait for punishment to be imposed before seeking relief.

As a decorated combat veteran and member of the Senate Armed Services Committee, Senator Kelly is deeply committed to the necessity of good order and discipline in the armed forces. He asks this Court to reinforce, not degrade, those principles. His speech—simply reminding servicemembers of their fundamental obligation not to follow unlawful orders—promotes good order. And discipline does not demand silence—particularly from those no longer serving on active duty. Former Service Secretaries, senior military officers, and a veterans organization explain that veteran participation in public life—including candid debate over national security policy and legality—is "essential to democratic self-government," not a threat to discipline. Amicus Br. 5, ECF No. 13-1. Allowing the Secretary of Defense to punish retirees for such speech would "impoverish public debate on critical issues relating to our military," *id.* at 5-6, and sacrifice fidelity to the Constitution for loyalty to transient political leadership.

This lawsuit asks the Court not to delve into a factual dispute or ongoing investigation, but only to decide whether Defendants acted within statutory and constitutional limits. Historical practice often marks those boundaries, and it does so here. Defendants do not and cannot deny that the censure of Senator Kelly and their efforts to reduce his retirement grade and pay are unprecedented. The Court should not permit Defendants to shield those actions behind extravagant claims of deference and nonreviewability, and it should promptly enjoin their constitutional and statutory violations.

## ARGUMENT

**I.    Senator Kelly Is Likely to Succeed on the Merits**

**A.    Defendants' Actions Violate the First Amendment**

This is an unusual First Amendment case: Executive Branch officials *attest* that they took adverse actions against a sitting Senator solely based on his "public statements" on "public issues." Mem. in Supp. of Pl's Emergency Mot. at 11, 18 ("Mem."), ECF No. 2-1 (quoting Letter from Pete Hegseth, U.S. Sec'y of Def., to Sen. Mark Kelly at 1 (Jan. 5, 2026) ("Ltr."), ECF No. 2-2; *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)). That violation warrants an immediate injunction.

*1.    Defendants' Position Rests Entirely on Novel First Amendment Principles*

Defendants do not deny that they targeted Senator Kelly's speech because of its "content" and "viewpoint." Mem. 13 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). They do not mention retaliation doctrine at all, much less dispute that their actions "would deter the speech of a person of ordinary firmness." Mem. 16; *see Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 152 (D.D.C. 2025). They do not meaningfully contend—let alone demonstrate—that their actions withstand any level of ordinary First Amendment scrutiny. Mem. 13-15. Above all, Defendants do not address controlling Supreme Court authority holding that legislators' speech lies at the core of the First Amendment. Mem. 11, 13-14. Under *Bond v. Floyd*—a case featured in Senator Kelly's opening memorandum (at 13-14) but unmentioned by Defendants—the First Amendment requires "that legislators be given the widest latitude to express their views on issues of policy," even if government officials view those statements as offensive or disloyal. 385 U.S. 116, 132-36 (1966).

Defendants ignore all this settled First Amendment doctrine and instead stake their defense on a radical new rule: that retired servicemembers have "no First Amendment right" to engage in speech whenever the Secretary of Defense "reasonably determine[s]" that the speech may bear on

"good order" or "discipline." Opp. 20. Once that secretarial determination is made, Defendants insist, no "judicial second-guessing" may occur. Opp. 22.

Defendants identify *no* case justifying this transformative exclusion of military retirees from the First Amendment's protections. Every First Amendment decision they cite either dealt with uniformed servicemembers currently serving the military, *see Parker v. Levy*, 417 U.S. 733, 736 (1974) (active duty); *Goldman v. Weinberger*, 475 U.S. 503, 505 (1986) (active duty); *Priest v. Sec'y of the Navy*, 570 F.2d 1013, 1015 (D.C. Cir. 1977) (active duty); *Millican v. United States*, 744 F. Supp. 2d 296, 301 (D.D.C. 2010) (reserve active-status); *Wilson v. James*, 139 F. Supp. 3d 410, 417 (D.D.C. 2015) (national guard), or involved speech restrictions for civilians on military bases (which are nonpublic forums), *see Greer v. Spock*, 424 U.S. 828, 838 (1976); *Ethredge v. Hail*, 56 F.3d 1324, 1328 (11th Cir. 1995). Those decisions are rooted in the "fundamental necessity for obedience, and the consequent necessity for imposition of discipline," of uniformed servicemembers. *Parker*, 417 U.S. at 758. The speaker in *Parker*, for instance, was an active-duty officer instructing enlisted soldiers at his base to refuse to fight in the Vietnam War. 417 U.S. at 736-37. The Court's deference to the officer's "military superiors" rested on his active status in "a specialized society separate from civilian society," where the "law is that of obedience." *Id.* at 737.

This "obedience" rationale has no bearing on retirees, who speak on public issues as part of the "civilian community" rather than as members of a separate "specialized society." *Id.* at 743. That is particularly true of Senator Kelly, who spoke not on a military base as an active-duty officer, but publicly as a citizen and a Senator. And he did so after identifying himself as a *former* Captain. Compl. ¶¶ 51, 53 ("I *was* a captain in the United States Navy." (emphasis added)).

Defendants nevertheless argue that because (1) courts have held that the Uniform Code of Military Justice (UCMJ) applies to retirees and (2) retirees may be subject to court-martial

jurisdiction, retirees' First Amendment protections are significantly diminished. Opp. 19-24. But not one of Defendants' cited cases relating to retirees involved a First Amendment challenge—let alone resolved the scope of retirees' speech protections. *See Larrabee v. Del Toro*, 45 F.4th 81 (D.C. Cir. 2022); *Closson v. U.S. ex rel. Armes*, 7 App. D.C. 460 (D.C. Cir. 1896); *Wilson v. Curtis*, 150 F.4th 1359 (10th Cir. 2025); *Adkins v. United States*, 68 F.3d 1317 (Fed. Cir. 1995). And Defendants' punishments are not imposed under the UCMJ. This case involves (1) a censure letter, a measure "exempt from" relevant UCMJ provisions, *Miller v. Lehman*, 801 F.2d 492, 498-99 & n.2 (D.C. Cir. 1986); and (2) a grade-determination proceeding under 10 U.S.C. § 1370, a provision not within the UCMJ. In any event, the UCMJ—a *statute* that may impose speech restrictions on those properly subject to it—cannot define *constitutional* free-speech protections. This Court need not resolve broader questions about retirees under the UCMJ and "make Rules" Clause, Mem. 15, to hold, consistent with all precedent of which counsel is aware, that the First Amendment protects retirees' speech on public matters.

Nor could retirees' speech be excluded from "the scope of the First Amendment" on the theory that it is "historically unprotected." *United States v. Stevens*, 559 U.S. 460, 472 (2010). Our nation has a long tradition of retired military officers publicly debating—and often sharply criticizing—military operations and leadership without fear of discipline. From Alexander Hamilton denouncing President Adams's fitness to command during the Quasi-War,[1] to modern episodes in which retired generals publicly called for Secretary Rumsfeld's resignation over the Iraq War,[2] retired officers have long participated forcefully in public debate over military policy. The same is true today: retired servicemembers, including Members of Congress, have openly

---

[1] Alexander Hamilton, *Concerning the Public Conduct and Character of John Adams, Esq. President of the United States* (Oct. 24, 1800), https://bit.ly/4qJbbxg.
[2] Michael Duffy, *The Revolt of the Generals*, TIME (Apr. 16, 2006), https://bit.ly/3M5ewri.

criticized presidential decisions ranging from the Afghanistan withdrawal to vaccination requirements.[3] Many continue to serve with distinction as legislators, governors, and federal judges. Yet against that backdrop, Defendants assert the power to limit the First Amendment rights of more than two million retired servicemembers, all without judicial review.

### 2. Defendants' Actions Violate Even the Standard for Active-Duty Speech

Even assuming military retirees are subject to the same limitations as active-duty servicemembers, Defendants still have not met their burden. Recognizing that "the proper balance must be struck between the essential needs of the armed services and the right to speak out as a free American," *United States v. Priest*, 45 C.M.R. 338, 344 (C.M.A. 1972), particularly "on issues of social and political concern," *United States v. Wilcox*, 66 M.J. 442, 446-47 (C.A.A.F. 2008), courts have long applied a balancing test to restrictions on active-duty speech. If a court finds "a reasonably direct and palpable connection between the speech and the military mission or military environment," it must weigh the competing interests to determine whether punishing the speech "is justified despite First Amendment concerns." *Id.* at 449. That framework demands a showing of concrete prejudice—not inchoate "risks." Opp. 2, 3, 23. By the military's own definition, conduct prejudicial to good order and discipline must be "directly prejudicial," not "remote or indirect." Joint Serv. Comm. on Military Justice, Manual for Courts-Martial, United States pt. IV, ¶ 91.c.(2)(a) (2024 ed.).

Defendants ignore this settled framework and offer *no* evidence that Senator Kelly's speech "had any negative effect—indeed, any effect at all—on the good order and discipline of the armed forces." *United States v. Richard*, 82 M.J. 473, 478 (C.A.A.F. 2022). They instead rely entirely on

---

[3] Letter from Mark E. Green et al. to Lloyd J. Austin III, Sec'y of Def. (Aug. 6, 2021), https://bit.ly/3LL2jbh; Aaron Parseghian, *Rep. Bergman 'pissed' at Biden's 'lack of leadership,' says troop deaths were avoidable*, Fox 17 (Aug. 26, 2021), https://bit.ly/4thjn9R.

the Secretary's conclusory assertions and "speculative arguments" of potential harm, which are "legally insufficient" to establish prejudice. *Id.* at 477, 479. Nor could any such evidence exist. Senator Kelly simply stated the indisputable principle that servicemembers "can refuse illegal orders." Compl. ¶ 53. That speech does not undermine good order and discipline; it *promotes* it by reinforcing the duty to obey lawful authority. Mem. 15. Nor do Defendants offer any support for their notion that the Senator's statements are *more* susceptible to punishment given his "distinguished service record"—a theory that would disfavor the most informed and credible speakers. Opp. 23.

To make matters worse, aside from the video reciting settled law, Defendants do not even *identify* all of the statements they are punishing. Their opposition, like the censure letter, baldly claims that Senator Kelly made "a series of public statements that characterized ongoing military operations as illegal, advised members of the military to refuse orders related to those operations, and accused senior military leadership of committing war crimes." Opp. 5. Equally opaque is their terse declaration from Secretary Hegseth's Chief of Staff stating that "[a]ll of the statements relied upon in the Censure Letter were public statements that Plaintiff made on social media and in news interviews." ECF No. 20-1 ¶ 7. The First Amendment requires the government to justify its restrictions with more than say-so that leaves speakers to defend themselves with guesswork.

Defendants then ask this Court for the "highest degree of deference" in deciding what these unspecified statements even meant. Opp. 3, 22. The danger of that position is underscored by the unsupportable ways in which the Secretary "interpreted" Senator Kelly's supposed remarks. Opp. 23-24. Contrary to the Secretary's assertion, Senator Kelly never told members of the armed forces to refuse any particular military orders: The video does not single out any specific military orders or operations. Compl. ¶ 53. And although Secretary Hegseth characterizes Senator Kelly's

statements as "accusing the Secretary of War and senior military officers of war crimes," Ltr. at 2, the only relevant statement in the record does no such thing: Asked by a reporter whether a *hypothetical* "second strike to eliminate any survivors" would constitute a war crime, Senator Kelly responded, "it seems to." Compl. ¶ 49. Senator Kelly's statements are entitled to First Amendment protection under any standard of review short of unprecedented and total deference.

### B.    Defendants' Actions Violate the Speech or Debate Clause

Defendants' actions also violate the Speech or Debate Clause, which "confer[s] absolute immunity" for any speech that can be considered a "legislative act[]." *Musgrave v. Warner*, 104 F.4th 355, 361 (D.C. Cir. 2024). Defendants contend that Senator Kelly's speech was not protected legislative activity, pointing to cases in which the Supreme Court held certain public statements or communications directed at Executive Branch officials were "political in nature rather than legislative." Opp. 26-27 (citing *United States v. Brewster*, 408 U.S. 501, 512 (1972)). But from this precedent Defendants conclude that *all* outward communications fall outside of the legislative sphere. That unprecedented exception would swallow the Clause's protections.

The legislative nature of speech turns not on "formality or regularity," *In re Sealed Case*, 80 F.4th 355, 368 (D.C. Cir. 2023), but on its functional role in the legislative process. When public-facing speech is "in preparation for" legislative activity, is "integral" to legislative activity, or itself constitutes "legitimate legislative activity," the Speech or Debate Clause protects it. *Gravel v. United States*, 408 U.S. 606, 624-25 (1972). Immunity thus applies "when necessary to prevent indirect impairment of" the "deliberative and communicative processes . . . with respect to [] matters which the Constitution places within the jurisdiction of either House." *Hutchinson v. Proxmire*, 443 U.S. 111, 126-27 (1979).

Senator Kelly's speech was part and parcel of his oversight duties. In tandem with all of the statements the Secretary ascribed to him, Senator Kelly, as a member of the Armed Services

Committee, was actively engaged in hearings, briefings, investigations, and legislative initiatives concerning the Administration's deployment of National Guard troops and the legality of lethal military strikes against boats in the Caribbean. Compl. ¶¶ 31-50; *see* Mem. 20-22. His speech about the Secretary's firing of generals and admirals was directly related to military appointments Senator Kelly voted to confirm, and for whose replacements he must provide advice and consent. Compl. ¶ 137. By contrast, the unprotected speech in *Gravel* took place *after* the legislative activity occurred, 408 U.S. at 625-26, and the press releases and newsletters in *Hutchinson* served only to publicize the Senator's criticism of wasteful spending, 443 U.S. at 114-17, 130-31. Leaving that speech unprotected left core legislative functions intact. Punishing Senator Kelly's statements, by contrast, strikes at the heart of oversight activity to which those statements were integral.

Defendants' narrow view of the Clause's protections also runs contrary to its history and purpose. The English precursor to the Clause—which the Framers adopted "almost verbatim"— "was the culmination of a long struggle for parliamentary supremacy," one in which the Crown frequently used charges of "seditious libel" as an "instrument for intimidating legislators." *United States v. Johnson*, 383 U.S. 169, 177-78, 182 (1966). Defendants' accusations of "sedition" here, Compl. ¶¶ 76-77, ignore the lessons of that history and eerily echo the Crown's abuses.

### C.    Defendants' Actions Violate the Separation of Powers

Defendants' separation-of-powers response begins with the claim that "the Department is not disciplining him because he is a Senator." Opp. 29. But the proper analysis is a functional one, *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443-45 (1977); it does not require *mens rea*. Defendants next argue that Congress authorized this punishment by enacting the UCMJ, Opp. 29, but the UCMJ is not the source of these punishments. *Supra* p. 5.

Defendants also attempt to minimize the Senator's separation-of-powers argument by slicing it into pieces and maintaining that no isolated offense rises to the level of a constitutional

violation. But the separation of powers is a structural protection that is more than the sum of its "isolated clauses." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring); *see INS v. Chadha*, 462 U.S. 919, 946 (1983); *Buckley v. Valeo*, 424 U.S. 1, 120 (1976). For instance, the Incompatibility Clause is pertinent not because Senator Kelly is violating the prohibition on simultaneous service, Opp. 29, but rather because that Clause—along with the Speech or Debate Clause, the authority to discipline members, and others, Mem. 23-24—make up the structural protections that prevent the Executive from usurping the Congress's power or interfering in its constitutional duties. *See Buckley*, 424 U.S. at 120-123. Defendants' position that the military may subjugate the Senator to obtain his "obedience," Opp. 19, cannot be squared with the Constitution's text and purpose of preventing "executive influence upon the legislative body." *The Federalist No. 76*, at 476 (H. Lodge ed. 1888).

Finally, Defendants do not contest Senator Kelly's argument that separation-of-powers doctrine often turns on "[l]ong settled and established practice," and that no historical precedent supports their actions. Mem. 25 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014)). The only precedent they appear to invoke is *United States v. Rose*, 28 F.3d 181 (D.C. Cir. 1994), but there Congress had expressly "empowered" the Executive to pursue ethics-reporting violations by Members. Congress gave no such authority here. Defendants are therefore "encroaching on Congress's" "constitutional responsibilities," not "fulfilling" their own. *Id.* at 190.

### D.    Defendants' Actions Violate Due Process

Defendants' opening response to Senator Kelly's due process argument is that he has been deprived of no constitutionally protected interest. But Defendants target "the right of free speech," which squarely falls within "the conception of liberty under the due process clause." *Stromberg v. California*, 283 U.S. 359, 368 (1931). Moreover, federal benefits "conferred by operation of statute[] are eminently concrete"—indeed, "[i]t is difficult indeed to conceive of a benefit that

resides more perfectly within the aegis of constitutional protection." *Minney v. OPM*, 130 F. Supp. 3d 225, 232 (D.D.C. 2015); *see, e.g.*, *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015). That is true of military pay, to which a retiree "is entitled" after satisfying statutory criteria. 10 U.S.C. § 12731(a).

Defendants also fail to rebut the Senator's argument that they have violated due process by prejudging the outcome of the reopening determination. They argue that Secretary Hegseth has not "compel[led] . . . any result," and the Secretary of the Navy "will exercise his independent judgment." Opp. 33. But Secretary Hegseth's letter has already made a series of conclusive determinations that simultaneously provide the predicate for the censure and prefigure the grounds for reducing an officer's retirement grade. *See* U.S. Dep't of Navy, Sec'y of Navy Instr. 1920.6D, Enclosure (9), 2(c) (July 24, 2019). The grade-determination letter itself confirms that the sole "factual basis supporting this action is [the] Secretary of War letter of censure." Letter from J.J. Czerkewko, Chief of Naval Personnel, to Mark Kelly at 2 (Jan. 5, 2026), ECF No. 2-3. Secretary Hegseth accordingly has already reached the conclusions necessary to trigger a reduction in grade—and he is the official who ultimately "will determine if a reduction is warranted." Ltr. at 3.

While Defendants argue that there is no basis to "assume that Secretary Hegseth will ignore the considered recommendation" of the Secretary of the Navy, Secretary Hegseth's public statements are plainly to the contrary. Opp. 34. He has, among many other things, already called Senator Kelly a "Commander" (a lower rank than his retired one as Captain), placed his actual rank of Captain in scare quotes, and branded his speech "seditious." Compl. ¶¶ 76-77, 113-14. Given these "shafts and squibs at a case awaiting his official action," a "disinterested" observer "could hardly fail to conclude" that the Secretary has "in some measure decided" the matter "in advance." *Cinderella Career & Finishing Schs. v. FTC*, 425 F.2d 583, 591 (D.C. Cir. 1970).

**E.    Defendants' Reopening Exceeds Their Statutory Authority**

*1.    Section 1370 Forecloses Reopening Senator Kelly's Retirement Grade Based on Post-Retirement Conduct*

Defendants' reopening of Senator Kelly's retirement pay and grade is improper because 10 U.S.C. § 1370 does not authorize reliance on post-retirement conduct. Mem. 28-30. Defendants respond that this reading "produce[s] an implausible and untenable result," Opp. 34-35, but they admit that the statute requires an officer to "be retired in the highest permanent grade in which such officer is determined to have *served on active duty* satisfactorily." Opp. 34 (quoting 10 U.S.C. § 1370(a)(1)) (emphasis added). And they do not dispute that "[r]eopening the grade determination simply puts the original question back before the Secretary: His authority is limited to re-determining whether 'such officer . . . served *on active duty* satisfactorily.'" Mem. 29. The statute's text authorizes no other inquiry. It is Defendants, then, who defy the statute's plain text when they fail to explain how post-retirement conduct could be relevant to determining whether an officer "served on active duty satisfactorily."

Defendants instead argue that § 1370(f)(2)(D)'s "good cause" language "effectively operates as a catch-all provision." Opp. 35. But "[w]hen faced with a catchall phrase . . . courts do not necessarily afford it the broadest possible construction it can bear. Instead, [they] generally appreciate that the catchall must be interpreted in light of its surrounding context." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 217 (2024). Applying this "ancient interpretive principle," "an obvious link" exists between the four subparts of § 1370(f)(2). *Id*. Every other aspect of § 1370 focuses on pre-retirement conduct, including the other exceptions to retirement grade finality. Defendants' reading therefore defies the *ejusdem generis* canon and would confer a radically broader reopening power than Congress intended.

Defendants counter with three misguided assertions. First, they posit that Senator Kelly's reading makes subsection (D) superfluous because subsection (B) "already addresses newly discovered evidence of pre-retirement conduct." Opp. 36. But subsection (D) could play an independent role if, for instance, evidence was "*known* by competent authority at the time of retirement" but in hindsight was not given appropriate weight or consideration. Such a reevaluation would not justify reopening under subsection (B) but could provide "good cause" under subsection (D). Second, they assert that if retirees "can be separated from the service for post-retirement conduct, they likewise can have their grade reduced." Opp. 34. But such separations occur under a different provision—10 U.S.C. § 12740(2)—that deals only with separations following court-martial sentences. Finally, Defendants claim that the Secretary *must* be given virtually unchecked "discretion" to reopen a retiree's grade or else "once an officer retires, even serious post-retirement misconduct could never be considered except through court martial." Opp. 35-36. But Congress has answered that concern. Another statute expressly provides for the termination of military retirement pay based on certain post-retirement convictions. *See* 5 U.S.C. §§ 8312(a), 8311(3).

    2.    *Section 1370 Does Not Permit the Secretary of Defense to Reopen the Grade Determination of a Navy Captain*

Defendants argue that reading § 1370 to require the Secretary of the Navy, rather than Secretary Hegseth, to make the "good cause" and reopening determinations defies "both the statute's structure and basic principles of executive supervision." Opp. 36-37. But they conspicuously do not reference the statutory *text*, which is unambiguous. And Senator Kelly's reading better respects § 1370's structure, which consistently delineates between the responsibilities of Service Secretaries and the Secretary of Defense. It also accords with the Executive Branch's own treatment of Congress's allocations of power: "It has long been established that, '[i]f the laws . . . require a particular officer by name to perform a duty, not only

is that officer bound to perform it, but no other officer"—not even "the President"—"can perform it without a violation of the law.'" *Centralizing Border Control Policy Under the Attorney General*, 26 Op. Att'y Gen. 22, 23 (2002) (quoting *The President and Accounting Officers*, 1 Op. Att'y Gen. 624, 625 (1823)).

### F.    Defendants' Actions Are Subject to Immediate Judicial Review

Defendants identify no basis for allowing ongoing constitutional harm to unfold while the Executive proceeds with further punitive action. Immediate review is warranted on three independent grounds.

#### 1.    *Defendants' Actions Are Final and This Challenge Is Ripe*

Immediate review is available under the APA because both the censure letter and the initiation of the grade-determination proceeding are final agency actions. Mem. 32-37. A conclusion that the letter alone is final suffices to support all relief the Senator seeks.

***The censure letter is final.*** Defendants do not dispute that, given its definitive findings and statement that Senator Kelly has no right to appeal, the letter marks the "consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation omitted). Their sole response is that it lacks "legal consequences," Opp. 17, ignoring that finality *also* exists when agency action determines "rights or obligations." *Bennett*, 520 U.S. at 178. The censure letter definitively concludes that Senator Kelly had no right to make certain public statements, and it punishes him for those statements notwithstanding the First Amendment. That is enough to make the letter final.

Regardless, the letter also imposes a host of legal consequences. Defendants concede that the censure letter has been placed permanently in Senator Kelly's "personnel record." Opp. 17; *see* Mem. 33. Though Defendants speculate the letter will have no real effect on the Senator's "future personnel matters," Opp. 17, they ignore the letter's *current* use in his grade-determination

14

proceeding. Nor do they dispute that the letter may be used in "any . . . administrative action on the part of the service concerned." Mem. 33 (quoting U.S. Dep't of Navy, JAGINST 5800.7G CH-2, *Manual of the Judge Advocate General*, sec. 0114A(b) (Dec. 1, 2023)). The letter accordingly has legal consequences, which is presumably why the government in prior litigation has "agree[d]" that the refusal to remove a censure from a retiree's military record "is a final agency action." *Miller v. Lehman*, 801 F.2d 492, 496 (D.C. Cir. 1986).

Independently, the letter is final because it is the sole basis for reopening Senator Kelly's retirement grade. ECF No. 2-3 at 2. Agency action is final when it "makes [a party] eligible for . . . penalties" that otherwise would not attach. *Rhea Lana, Inc. v. DOL*, 824 F.3d 1023, 1028 (D.C. Cir. 2016). And like other threshold eligibility determinations that courts deem final, the letter is "definitive" in its position on all of the constitutional and statutory issues raised in this case, even if those legal positions "would have effect only if and when" further enforcement occurs. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597-99 (2016); Mem. 33-34. In particular, Secretary Hegseth made unappealable, conclusive findings (in violation of due process) regarding post-retirement conduct (in violation of the statute) based exclusively on statements that the Senator made in his capacity as a legislator (in violation of the First Amendment, Speech or Debate Clause, and separation of powers). Defendants' punishment is predicated on those determinations.

The letter is therefore not, as Defendants suggest, a tentative "warning[]" or "signal" about potential future action. Opp. 17. The cases Defendants cite in support of that theory involved mere "reminders of regulated parties' legal obligations"—"the type of workaday advice letter that agencies prepare countless times per year in dealing with the regulated community." *Rhea Lana*, 824 F.3d at 1028 (distinguishing *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 945 n. 6 (D.C. Cir. 2012), and *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004)).

Those sorts of warnings are not final because they "le[ave] the world just as [they] found it." *Id.* (quoting *Indep. Equip. Dealers*, 372 F.3d at 428). By contrast, the censure letter has real-world effects. It definitively condemns Senator Kelly's conduct, places that determination in his official military record, and opens a statutory process that jeopardizes his rank and retired pay. Ltr. at 3; ECF No. 2-3 at 2. Nor are these consequences "contingent" on future administrative proceedings. Opp. 13. The censure letter has *already* opened Senator Kelly's previously final retirement grade; the only contingency is the illusory chance that Defendants will not reduce his grade. Yet the "possibility that the agency might not bring an action for penalties or, if it did, might not succeed in establishing the underlying violation d[oes] not rob the administrative [action] . . . of its legal consequences." *Rhea Lana*, 824 F.3d at 1032 (citing *Sackett v. EPA*, 566 U.S. 120, 126-27 (2012)).

**The initiation of the grade-determination proceeding is also final.** Relying on cases holding that mere initiation of an investigation is not final, Defendants argue that the Court cannot review the initiation of the grade-determination proceeding. Opp. 18-19 (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 242 (1980), and *Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 731-32 (D.C. Cir. 2003)). But those cases involved no "definitive statement of position"—only "threshold determination[s] that further inquiry is warranted." *Standard Oil*, 449 U.S. at 241; *see Reliable Automatic Sprinkler Co.*, 324 F.3d at 731 (challenging "an investigation," a "statement of the agency's intention to make a preliminary determination," and "a request for voluntary corrective action"). Here, the agency has taken a "definitive . . . position" on "purely legal" questions with "immediate and significant" consequences. *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011). Such gatekeeping decisions are reviewable even before "the completion of a full enforcement action." *Id.* at 413-14 & n.2 (distinguishing *Standard Oil* and *Reliable Automatic Sprinkler*).

***The challenge to the grade-determination proceeding is ripe.*** Defendants contend that, even if the grade reopening is final, any challenge to it is unripe. Opp. 13-16. But Defendants identify no ripeness problem with the censure letter. And because the censure letter is the basis for all actions Defendants have taken, its finality supports all relief sought.

Regardless, there is no ripeness defect. Ripeness turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1209 (D.C. Cir. 2021). The test "incorporate[s] a presumption of reviewability" of agency action, *Cohen v. United States*, 650 F.3d 717, 735 (D.C. Cir. 2011) (en banc), which is "at its apogee where the complainant raises a credible claim that the agency action violates [its] constitutional rights." *Unity08 v. FEC*, 596 F.3d 861, 866 (D.C. Cir. 2010). As in the D.C. Circuit's many cases holding pre-enforcement challenges ripe, *see id.*, both factors are easily satisfied here. "The Court need not wait for the sword to fall before ruling on the case." *Wilmer*, 784 F. Supp. 3d at 147.

As to fitness, the issues are purely legal and require no further factual development. Defendants do not dispute that the grade-determination proceeding rests exclusively on Senator Kelly's public statements on matters of public importance, or that it is predicated entirely on post-retirement conduct. Accordingly, this case squarely presents the legal questions whether Defendants' actions violate the First Amendment, the Speech or Debate Clause, separation-of-powers principles, and the limits of 10 U.S.C. § 1370. Those "purely legal question[s]" about the government's authority to proceed are fit for review. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 434-35 (D.C. Cir. 1986).

Defendants suggest the case might "benefit from a developed record," Opp. 14, but they never explain how. Allowing the process to "run its course," *id.*, would not alter the constitutional

17

or statutory analysis; it would only inflict further injury on the Senator. And as with finality, the possibility that Defendants might ultimately refrain from imposing penalties does not render the challenge unripe. *Supra* p. 16; *see Unity08*, 596 F.3d at 865 ("Our reluctance to require parties to subject themselves to enforcement proceedings . . . is of course at its peak where, as here, First Amendment rights are implicated"). By that logic, pre-enforcement review would never be available. *Cf. id.*; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) ("*SBA List*").

Withholding review would also impose substantial hardship. Senator Kelly faces an active proceeding jeopardizing his retirement grade and pay, an ongoing threat to punish core political speech and legislative activity, and an express warning of "criminal prosecution or further administrative action" if he continues to speak. Ltr. at 3. Contrary to Defendants' suggestion, this is not a case where the only injury is the mere "burden of participating" in unlawful proceedings. Opp. 14 (quoting *AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003)). Denying review would impose continuing constitutional and reputational harm, including by forcing the Senator to choose "between refraining from core political speech . . . or engaging in that speech and risking costly [agency] proceedings and criminal prosecution." *SBA List*, 573 U.S. at 167-68.

### 2. The Court Can Immediately Review Defendants' Authority to Proceed

On top of the APA, this Court has equitable authority to enjoin Defendants' actions regardless of their finality. Mem. 37-39 (citing *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190 (2023)). Defendants do not dispute that courts may hear "challenge[s] [to] the constitutional authority of [an] agency to proceed" even when proceedings are "ongoing." *Axon*, 598 U.S. at 189. They instead claim that Senator Kelly merely "substantively disagrees" with a decision without challenging Defendants' "power generally." Opp. 15. That is a caricature of this case. Like the plaintiffs in *Axon*, Senator Kelly challenges the Executive's authority to subject him to proceedings *at all*. He alleges that Defendants' actions are forbidden because they target protected political

speech, violate the Speech or Debate immunity, reflect prejudgment, and assert coercive power over a sitting Senator in violation of the separation of powers—the very same guarantee invoked in *Axon*. 598 U.S. at 193. Those defects make the proceeding unlawful and injurious "irrespective of its outcome." *Id.* at 192. And they pose "standard questions of administrative and constitutional law," not military expertise. *Id.* at 194 (quotation omitted).

### 3.    The Threats of Future Enforcement Alone Warrant Immediate Intervention

Finally, immediate review is further available because Defendants "proscribe[d]" the Senator's conduct and made "a credible threat of [future] enforcement." *SBA List*, 573 U.S. at 158-59. The censure letter identifies categories of public speech that, in the Secretary's view, justify punishment, then threatens "criminal prosecution or further administrative action" based on Senator Kelly's constitutionally protected conduct. Ltr. at 3; *see* Mem. 39-41. Defendants' sole response is that *SBA List* "says nothing about whether a collateral attack on an inchoate administrative proceeding is ripe." Opp. 15. But the Supreme Court expressly addressed ripeness, holding that "the 'fitness' and 'hardship' factors are easily satisfied." *SBA List*, 573 U.S. at 167. And if Defendants' point is that the case featured no *ongoing* administrative proceeding, that distinction works against them. The lack of ongoing enforcement proceedings, if anything, counseled *against* judicial intervention, yet the Supreme Court held that even *threats* suffice.

### 4.    Senator Kelly Need Not Exhaust Administrative Remedies

Defendants argue that Senator Kelly must exhaust administrative remedies—principally by seeking relief from the Board for Correction of Naval Records—before this Court may act. But exhaustion doctrine is altogether inapplicable here, and exhaustion is unnecessary regardless.

***No exhaustion requirement applies.*** As a threshold matter, exhaustion is not required for the actions challenged here. Mem. 35. The Supreme Court has established a clear rule in APA cases: "[w]here neither the statute nor agency rules specifically mandate exhaustion as a

19

prerequisite to judicial review," federal courts lack "authority to require that a plaintiff exhaust available administrative remedies before seeking judicial review." *Darby v. Cisneros*, 509 U.S. 137, 138, 147 (1993). While litigants must exhaust intra-agency appeals mandated by statute or rule, they need not pursue optional review. *Id.* at 147-48. The D.C. Circuit has applied *Darby* in the military context, holding that courts "cannot impose" a requirement to exhaust review with the Board of Corrections because there was no "'express' requirement of exhaustion in [the Board] statute." *Ostrow v. Sec'y of Air Force*, 48 F.3d 562, at *2 (D.C. Cir. 1995) (per curiam) (unpublished).

Defendants do not address *Darby*, and it defeats their exhaustion theory. They cite no statute or regulation requiring Senator Kelly to seek review from the Board before filing suit. To the contrary, the censure letter states expressly that he "do[es] not have a right to appeal this administrative action," Ltr. at 3, and the regulations governing retirement-grade determinations impose no exhaustion requirement, *see* U.S. Dep't of Navy, Sec'y of Navy Instr. 1920.6D, Enclosure (9), 2(c) (July 24, 2019).

**_Exhaustion would be inappropriate even if available._** Even if this Court *could* require exhaustion of administrative remedies in this case despite *Darby*, exhaustion is "subject to numerous exceptions." *McKart v. United States*, 395 U.S. 185, 193 (1969). It does not apply, even where otherwise required, (a) "when the reasons supporting the doctrine are found inapplicable," *Comm. for GI Rts. v. Callaway*, 518 F.2d 466, 474 (D.C. Cir. 1975); (b) when exhaustion would "in all likelihood be futile," *id.* at 474 n.20; or (c) when exhaustion would cause "irreparable harm," *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986). All three exceptions apply.

First, exhaustion would neither protect agency authority nor promote efficiency. *Hettinga v. United States*, 560 F.3d 498, 506 (D.C. Cir. 2009). The Board lacks power to grant Senator Kelly

meaningful relief; in censure and grade matters, it functions only in an advisory capacity, leaving final decisionmaking to the Secretary. *See* 32 C.F.R. §§ 723.6(e)(2), 723.7(a). Nor would Board review "let the agency develop the necessary factual background upon which decisions should be based." *McKart*, 395 U.S. at 193-94. Defendants have already compiled the record they deem sufficient, and the issues raised in this case are "purely legal," requiring "no exercise of military discretion or expertise." *Cossio v. Air Force Ct. of Crim. Appeals*, 129 F.4th 1013, 1023 (7th Cir. 2025) (quoting *Comm. for GI Rts.*, 518 F.2d at 474).

Second, requiring exhaustion would "in all likelihood be futile." *Comm. for GI Rts.*, 518 F.2d at 474 n.20. The retirement grade proceeding and Board review offer Senator Kelly no "real possibility of adequate relief." *Bois*, 801 F.2d at 468. Senator Kelly seeks relief *from the administrative process itself*, so even a favorable outcome would not "afford . . . complete relief." *Steffan v. Cheney*, 733 F. Supp. 115, 119 (D.D.C. 1989). Moreover, courts do not require exhaustion "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). As explained, the Board at most could provide advisory input, and Secretary Hegseth has already conclusively determined that Senator Kelly's speech justifies a reduction in grade. He has also repeatedly and publicly committed to punishing Senator Kelly and declared that he will be the ultimate decisionmaker in both the retirement grade proceeding itself and any subsequent Board challenge. Mem. 26-27.

Third, the exhaustion doctrine does not apply where an aggrieved plaintiff can show irreparable harm. *Bois*, 801 F.2d at 468. Here, as explained, the very proceedings that Defendants would require Senator Kelly to exhaust constitute the constitutional injury. *Supra* pp. 18-19.

### 5.    *Military Actions Are Not Immune from Judicial Review*

Defendants' remaining threshold barrier to review is more extreme and categorical than the rest. In their view, questions of "military discipline" lie beyond judicial review entirely. Opp.

7-10. This Court, they claim, is "not permitted to address" Defendants' actions because they constitute "military judgments." Opp. 10. But courts do not abdicate their constitutional role simply because the military invokes discipline or personnel authority. "The military has not been exempted from constitutional provisions that protect the rights of individuals," and it "is precisely the role of the courts to determine whether those rights have been violated." *Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987). And while the Supreme Court has recognized the need for deference in appropriate cases, it has "never held . . . that military personnel are barred from all redress in civilian courts for constitutional wrongs." *Chappell v. Wallace*, 462 U.S. 296, 304 (1983). That is true even where the challenged action involves personnel matters. *See, e.g.*, *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014).

Defendants cite no authority to the contrary. Each case they invoke featured a challenge to discretionary judgments over the allocation of active military resources—"who should be allowed to serve on active duty and, in what capacity." *Reilly v. Sec'y of the Navy*, 12 F. Supp. 3d 125, 138-40 (D.D.C. 2014) (Jackson, J.) (citation omitted).[4] "The logic of these cases is that, given the special circumstances in which the military must operate, the courts are ill-equipped to resolve

---

[4] *See Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring) ("maintaining strategic and operational control over the assignment and deployment of all Special Warfare personnel—including control over decisions about military readiness."); *Gilligan v. Morgan*, 413 U.S. 1, 5-6 (1973) ("continuing regulatory jurisdiction over the activities of the Ohio National Guard"); *Orloff v. Willoughby*, 345 U.S. 83, 92-93 (1953) ("to determine whether specific assignments to duty fall within the basic classification of petitioner"); *Talbott v. United States*, 2025 WL 3533344, at *6 (D.C. Cir. Dec. 9, 2025) (Secretary's policy regarding transgender servicemembers serving in the military); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) ("request for retroactive promotion"); *Adkins*, 68 F.3d at, 1324 (direction to "the Secretary to promote him to the rank of colonel"); *Wilson*, 139 F. Supp. 3d at 431-32, 427 (refusing to "second-guess *the wisdom* of a military decision to reprimand Plaintiff" but adjudicating Plaintiff's constitutional claims); *Daniels v. United States*, 947 F. Supp. 2d 11, 20 (D.D.C. 2013) (whether discharge was "wrongly decided"); *Caez v. United States*, 815 F. Supp. 2d 184, 188 n.4 (D.D.C. 2011) (claims against "the Army's underlying decision to discharge" plaintiff); *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998) ("request for reinstatement and promotion").

controversies arising from the use of discretionary powers specifically designed to provide military authorities with the freedom and flexibility needed to establish and maintain a well-trained and well-disciplined armed force." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979). That "logic is wholly inappropriate . . . when a case presents an issue that is amenable to judicial resolution." *Id.*

That logic likewise has no application here. Senator Kelly is a retired Captain and a sitting United States Senator. He does not seek reinstatement to active duty, a promotion, or any remedy that would intrude on force structure, command decisions, or allocation of military resources. Nor does he ask this Court to assess "the wisdom" of Defendants' actions or second-guess professional military judgments about training, discipline, or readiness. His claims are legal, not managerial. He alleges that Defendants have violated various clear constitutional and statutory limits on their authority, and those claims are readily "amenable to judicial resolution." *Dilley*, 603 F.2d at 920.

## II. Senator Kelly Will Suffer Irreparable Harm Absent Injunctive Relief

As this Court has recognized, a "plaintiff's First Amendment claim is determinative of its ability to satisfy the test for a preliminary injunction." *PETA, Inc. v. Gittens*, 215 F. Supp. 2d 120, 128 (D.D.C. 2002). That is true here. Defendants expressly threaten Senator Kelly with more punishment if he continues to speak out on these issues, as he will. *See* Ltr. at 3; Compl. ¶¶ 117-18. His "First Amendment injury is concrete and ongoing" because he "regularly engages in protected expressive activity," and Defendants' actions "directly punish[] that activity." *Am. Acad. of Pediatrics v. HHS*, 2026 WL 80796, at *22 (D.D.C. Jan. 11, 2026) (quoting *Am. Bar Ass'n v. DOJ*, 783 F. Supp. 3d 236, 247 (D.D.C. 2025)). Without an injunction, Senator Kelly will have to make a "choice the Constitution protects [him] from having to make: change [his] speech or suffer a serious" consequence. *Jenner & Block LLP v. DOJ*, 784 F. Supp. 3d 76, 113 (D.D.C. 2025).

Defendants insist that Senator Kelly falls short because he has yet to be silenced—a view that would preclude intrepid speakers from ever showing irreparable First Amendment harm. But in addition to Defendants' continuing threats, their retaliation is a distinct, irreparable First Amendment injury. *See Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025); *Am. Acad. of Pediatrics*, 2026 WL 80796, at *22 (recognizing "the irreparable injury that flows from" a "First Amendment retaliation claim"). That is because "[o]fficial reprisal for protected speech . . . threatens to inhibit exercise of the protected right," *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quotation omitted), and retaliation injuries "cannot be fully compensated by later damages." *Perkins Coie LLP v. DOJ*, 783 F. Supp. 3d 105, 178 (D.D.C. 2025) (quotation omitted).

Senator Kelly's irreparable harms are not limited to his free speech injuries. "It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Wilmer*, 784 F. Supp. 3d at 172. Senator Kelly has ongoing irreparable harm from Defendants' violation of the separation of powers and their deprivation of his due process rights. *See id.*; *Amos Treat & Co. v. SEC*, 306 F.2d 260, 266-68 (D.C. Cir. 1962) (granting "preliminary injunction restraining further conduct of the proceedings" where decisionmaker had "already thrown his weight on the other side"). And the Speech or Debate Clause violation necessitates immediate relief because it provides a "constitutional privilege of critical importance" that, if lost, cannot be restored. *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 81 (D.D.C. 2007).

Finally, Senator Kelly's reputational harms are the direct and intended consequence of the censure letter. Defendants cannot have it both ways: They insist the censure is a "military judgment[]" so consequential that judicial review would imperil Executive prerogatives, Opp. 8, but also that its effect is too "speculative" to cause real harm, Opp. 39. The letter constitutes an

"official characterization" by the head of the Department of Defense, declaring that Senator Kelly's conduct brought discredit on the armed forces. *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders*, 264 F.3d 52, 57 (D.C. Cir. 2001). And the censure is unreviewable within the agency, so without injunctive relief, the stigma Defendants have intentionally imposed will persist.

## III.    The Balance of Equities and Public Interest Weigh Heavily in Senator Kelly's Favor

The equitable factors overwhelmingly favor Senator Kelly. Defendants argue that enjoining the censure letter or grade proceeding would "interfere with the military's ability to maintain good order and discipline" by preventing enforcement of retirees' UCMJ obligations and "signal[ing] that routine mechanisms of military accountability are subject to immediate judicial veto." Opp. 40. But the unprecedented nature of Defendants' actions—subjecting a sitting Senator to military discipline to punish him for his public statements—undermines any argument that Defendants are merely maintaining "routine military accountability."

On the other hand, Defendants' actions are "unconstitutional, and thus defendants do not have a legitimate interest in enforcing [them]." *Wilmer*, 784 F. Supp. 3d at 173. If allowed to proceed, they risk chilling the speech of more than two million military retirees, thereby depriving the public of their "distinct perspective[s] and specialized expertise." Amicus Br. 5-6. Enjoining these unprecedented sanctions would preserve—not disrupt—a centuries-old status quo. The balance of equities favors immediate relief.

## CONCLUSION

The Court should grant Senator Kelly's motion, enjoin and stay the effect of Defendants' actions pending further review, and enjoin Defendants from initiating or furthering any enforcement proceeding against Senator Kelly.

Dated: January 26, 2026                    Respectfully submitted,

                      By:    */s/ Paul J. Fishman*
                             Paul J. Fishman (DC Bar No. 449014)
                             ARNOLD & PORTER KAYE SCHOLER LLP
                             One Gateway Center
                             Suite 1025
                             Newark, NJ 07102
                             (973) 776–1900
                             paul.fishman@arnoldporter.com

                             Benjamin C. Mizer (DC Bar No. 204906)
                              (*pro hac vice*)
                             Deborah A. Curtis (DC Bar No. 451716)
                             Jeffrey H. Smith (DC Bar No. 419-521)
                              (*pro hac vice*)
                             Samuel F. Callahan (DC Bar No. 888314461)
                             Bonnie E. Devany (*pro hac vice*)[*]
                             Aaron X. Sobel (DC Bar No. 90018659)
                              (*pro hac vice*)
                             ARNOLD & PORTER KAYE SCHOLER LLP
                             601 Massachusetts Avenue, NW
                             Washington, DC 20001
                             (202) 942–5000
                             benjamin.mizer@arnoldporter.com
                             deborah.curtis@arnoldporter.com
                             jeffrey.smith@arnoldporter.com
                             sam.callahan@arnoldporter.com
                             bonnie.devany@arnoldporter.com
                             aaron.sobel@arnoldporter.com

---

[*] *Admitted only in Texas; practicing in D.C. pursuant to D.C. Ct. of Appeals R. 49(c)(8), under supervision of D.C. Bar Members.*