APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:26–cv–00081–RJL</u>

KELLY v. HEGSETH et al
Assigned to: Judge Richard J. Leon
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 01/12/2026
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**MARK KELLY**
*United States Senator Representing the
State of Arizona*

represented by **Benjamin Mizer**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave NW
Washington D.C., DC 20001
202–942–6106
Email: benjamin.mizer@arnoldporter.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey Smith**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202–942–5115
Email: jeffrey.smith@arnoldporter.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Joseph Fishman**
ARNOLD & PORTER KAYE SCHOLER
LLP
One Gateway Center
Suite 1025
Newark, NJ 07102
973–776–1900
Email: paul.fishman@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Sobel**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave NW

1

Washington D.C., DC 20001
202–942–5833
Email: aaron.sobel@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bonnie Devany**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001
202–942–6834
Email: Bonnie.Devany@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deborah A. Curtis**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202–942–5081
Email: deborah.curtis@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942–5000
Email: sam.callahan@arnoldporter.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**PETE HEGSETH**                    represented by **John Bailey**
*in his Official Capacity as Secretary of*                    DOJ–Civ
*Defense*                    Civil
                    950 Pennsylvania Ave NW
                    Ste 3618
                    Washington, DC 20530
                    202–514–6993
                    Email: john.bailey@usdoj.gov
                    *LEAD ATTORNEY*
                    *ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF DEFENSE**    represented by **John Bailey**
                    (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN C. PHELAN**
*in his Official Capacity as Secretary of the Navy*

represented by **John Bailey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF THE NAVY**

represented by **John Bailey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**FORMER SERVICE SECRETARIES**

represented by **Beau Tremitiere**
PROTECT DEMOCRACY
300 Center Dr
Suite G–251
Superior, CO 80027
202–993–3672
Email: beau.tremitiere@protectdemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
PROTECT DEMOCRACY
2020 Pennsylvania Avenue NW
Suite 163
Washington, DC 20006
202–579–4582
Fax: 929–777–8428
Email: kristy.parker@protectdemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Elizabeth Groth**
PROTECT DEMOCRACY PROJECT
300 Center Avenue
Suite G–251
80205
Superior, CO 80027
202–699–2571
Email: groth.lauren@gmail.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Patricia Sun**
STATES UNITED DEMOCRACY

3

CENTER
95 Third Street
2nd Floor
San Francisco, CA 94103
202–999–9305
Email: christine@statesuniteddemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Andrew Boyle**
STATES UNITED DEMOCRACY
CENTER
45 Main Street
Suite 320
Brooklyn, NY 11201
202–999–9305
Email: andrew@statesunited.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
STATES UNITED DEMOCRACY
CENTER
45 Main Street
Suite 320
Brooklyn, NY 11201
202–999–9305
Email: mai@statesuniteddemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**RETIRED SENIOR MILITARY**        represented by   **Beau Tremitiere**
**OFFICIALS**                                         (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kristy Parker**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Lauren Elizabeth Groth**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Christine Patricia Sun**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

**Joseph Andrew Boyle**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**VET VOICE FOUNDATION**          represented by   **Beau Tremitiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristy Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Elizabeth Groth**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Patricia Sun**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Andrew Boyle**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/12/2026 | 1 | COMPLAINT against PETE HEGSETH, JOHN PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY ( Filing fee $ 405 receipt number ADCDC–12180058) filed by MARK KELLY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Civil Cover Sheet, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons, # 16 Summons)(Fishman, Paul) (Entered: |

| | | 01/12/2026) |
|---|---|---|
| 01/12/2026 | 2 | Emergency MOTION for Temporary Restraining Order , *Preliminary Injunction, and Stay Under 5 U.S.C. § 705* by MARK KELLY. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Text of Proposed Order)(Fishman, Paul). Added MOTION for Preliminary Injunction, MOTION to Stay on 1/12/2026 (znmw). (Entered: 01/12/2026) |
| 01/12/2026 | | Case Assigned to Judge Richard J. Leon. (zjd) (Entered: 01/12/2026) |
| 01/12/2026 | 3 | SUMMONS (6) Issued Electronically as to PETE HEGSETH, JOHN PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY, U.S. Attorney, and U.S. Attorney General. (Attachments: # 1 Notice and Consent) (zjd) (Entered: 01/12/2026) |
| 01/12/2026 | 4 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Benjamin C. Mizer, Filing fee $ 100, receipt number ADCDC–12180530. Fee Status: Fee Paid. by MARK KELLY. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 [Proposed] Order Granting Admission PHV)(Callahan, Samuel) (Entered: 01/12/2026) |
| 01/12/2026 | 5 | NOTICE of Appearance by John Bailey on behalf of All Defendants (Bailey, John) (Main Document 5 replaced on 1/13/2026) (mg). (Entered: 01/12/2026) |
| 01/12/2026 | | MINUTE ORDER. Regarding plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C. § 705, it is hereby ORDERED that defendants shall file a response by no later than 10:00 AM on Thursday, January 15, 2026. The Court will hold a hearing on the motion on Thursday, January 15, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 01/12/2026. (lcrjl1) (Entered: 01/12/2026) |
| 01/14/2026 | 6 | NOTICE of Appearance by Paul Joseph Fishman on behalf of MARK KELLY (Fishman, Paul) (Entered: 01/14/2026) |
| 01/14/2026 | 7 | NOTICE of Appearance by Samuel Francis Callahan on behalf of MARK KELLY (Callahan, Samuel) (Entered: 01/14/2026) |
| 01/14/2026 | 8 | Joint MOTION for Scheduling Order by MARK KELLY. (Attachments: # 1 Text of Proposed Order)(Fishman, Paul) (Entered: 01/14/2026) |
| 01/14/2026 | 9 | NOTICE of Appearance by Deborah A. Curtis on behalf of MARK KELLY (Curtis, Deborah) (Entered: 01/14/2026) |
| 01/14/2026 | | MINUTE ORDER. It is hereby ORDERED that the motion hearing scheduled for Thursday, January 15, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon is converted to a status conference to discuss the parties' 8 Joint Motion for Scheduling Order. It is further ORDERED that the deadline for defendants' response to plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C. § 705 is VACATED pending further order of the Court. SO ORDERED. Signed by Judge Richard J. Leon on 1/14/2026. (lcrjl1) (Entered: 01/14/2026) |
| 01/14/2026 | | MINUTE ORDER. Upon consideration of the 4 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that Benjamin C. Mizer be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to** |

| | | |
|---|---|---|
| | | **LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 1/14/2026. (lcrjl1) (Entered: 01/14/2026) |
| 01/15/2026 | 10 | NOTICE of Appearance by Benjamin Mizer on behalf of MARK KELLY (Mizer, Benjamin) (Entered: 01/15/2026) |
| 01/15/2026 | | Minute Entry for Status Conference held on 1/15/2026 before Judge Richard J. Leon. Parties discussed posture of the case. The Court directs the parties to file a new proposed Scheduling Order by 1/16/2026. The Court will hold a hearing on Plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C. § 705 on 1/28/2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. Court Reporter: Lisa Edwards. (zljn) (Entered: 01/15/2026) |
| 01/16/2026 | | Set/Reset Deadlines: Proposed Schedule due by 1/16/2026 (zljn) (Entered: 01/16/2026) |
| 01/16/2026 | 11 | Joint MOTION for Scheduling Order by MARK KELLY. (Attachments: # 1 Text of Proposed Order)(Fishman, Paul) (Entered: 01/16/2026) |
| 01/16/2026 | | MINUTE ORDER. Upon consideration of the parties' 11 Joint Motion for Scheduling Order, and consistent with the agreement reached at the status conference held January 15, 2026, it is hereby ORDERED that the motion is GRANTED. Plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C. § 705 is CONVERTED to a Motion for Preliminary Injunction and Stay under 5 U.S.C. § 705. Defendants shall file a response to plaintiff's motion no later than January 22, 2026, at 5:00 PM, and plaintiff shall file a reply to defendants' response no later than January 26, 2026, at 5:00 PM. The Court will hold a hearing on plaintiff's motion on January 28, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 1/16/2026. (lcrjl1) (Entered: 01/16/2026) |
| 01/20/2026 | 12 | NOTICE of Appearance by Kristy Parker on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Parker, Kristy) (Entered: 01/20/2026) |
| 01/20/2026 | 13 | Unopposed MOTION for Leave to File Amicus Brief *in Support of Plaintiffs Motion for a Preliminary Injunction and Stay Under 5 U.S.C. § 705* by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Parker, Kristy) (Entered: 01/20/2026) |
| 01/20/2026 | 14 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jeffrey H. Smith, Filing fee $ 100, receipt number ADCDC–12193578. Fee Status: Fee Paid. by MARK KELLY. (Attachments: # 1 Declaration of Jeffrey H. Smith, # 2 DC Bar – Certificate of Good Standing, # 3 Text of Proposed Order)(Callahan, Samuel) (Entered: 01/20/2026) |
| 01/20/2026 | 15 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Bonnie E. Devany, Filing fee $ 100, receipt number ADCDC–12193862. Fee Status: Fee Paid. by MARK KELLY. (Attachments: # 1 Declaration of Bonnie E. Devany, # 2 Texas Bar – Certificate of Good Standing, # 3 Text of Proposed Order)(Callahan, Samuel) (Entered: 01/20/2026) |
| 01/20/2026 | 16 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Aaron X. Sobel, Filing fee $ 100, receipt number ADCDC–12193917. Fee Status: Fee Paid. by MARK |

| | | |
|---|---|---|
| | | KELLY. (Attachments: # 1 Declaration of Aaron X. Sobel, # 2 DC Bar – Certificate of Good Standing, # 3 Text of Proposed Order)(Callahan, Samuel) (Entered: 01/20/2026) |
| 01/21/2026 | | NOTICE OF ERROR regarding 14 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jeffrey H. Smith, Filing fee $ 100, receipt number ADCDC–12193578. Fee Status: Fee Paid.. The following error(s) need correction: Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 01/21/2026) |
| 01/21/2026 | | NOTICE OF ERROR regarding 15 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Bonnie E. Devany, Filing fee $ 100, receipt number ADCDC–12193862. Fee Status: Fee Paid.. The following error(s) need correction: Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 01/21/2026) |
| 01/21/2026 | | NOTICE OF ERROR regarding 16 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Aaron X. Sobel, Filing fee $ 100, receipt number ADCDC–12193917. Fee Status: Fee Paid.. The following error(s) need correction: Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 01/21/2026) |
| 01/21/2026 | 17 | DECLARATION *of Jeffrey H. Smith in Support of Motion for Admission PRO HAC VICE* by MARK KELLY re 14 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jeffrey H. Smith, Filing fee $ 100, receipt number ADCDC–12193578. Fee Status: Fee Paid.. (Callahan, Samuel) (Entered: 01/21/2026) |
| 01/21/2026 | 18 | DECLARATION *of Bonnie Devany in Support of Motion for Admission PRO HAC VICE* by MARK KELLY re 15 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Bonnie E. Devany, Filing fee $ 100, receipt number ADCDC–12193862. Fee Status: Fee Paid.. (Callahan, Samuel) (Entered: 01/21/2026) |
| 01/21/2026 | 19 | DECLARATION *of Aaron X. Sobel in Support of Motion for Admission PRO HAC VICE* by MARK KELLY re 16 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Aaron X. Sobel, Filing fee $ 100, receipt number ADCDC–12193917. Fee Status: Fee Paid.. (Callahan, Samuel) (Entered: 01/21/2026) |
| 01/22/2026 | | MINUTE ORDER. Upon consideration of the 13 Motion for Leave to File Brief of Amici Curiae, it is hereby ORDERED that the Motion is GRANTED. The amicus brief attached as Exhibit 1 to the 13 Motion is deemed filed with the Court upon entry of this order. SO ORDERED. Signed by Judge Richard J. Leon on 1/22/2026. (lcrjl1) (Entered: 01/22/2026) |
| 01/22/2026 | | MINUTE ORDER. Upon consideration of the 14 15 16 Motions for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motions are GRANTED. It is further ORDERED that Jeffrey H. Smith, Bonnie E. Devany, and Aaron X. Sobel be, and hereby are, admitted pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 1/22/2026. (lcrjl1) (Entered: 01/22/2026) |
| 01/22/2026 | 20 | RESPONSE re 2 Emergency MOTION for Temporary Restraining Order , *Preliminary Injunction, and Stay Under 5 U.S.C. § 705* MOTION for Preliminary Injunction MOTION to Stay filed by PETE HEGSETH, JOHN C. PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY. (Attachments: # 1 Exhibit 1 – Buria Decl., # 2 Text of Proposed Order)(Bailey, John) |

| | | (Entered: 01/22/2026) |
|---|---|---|
| 01/26/2026 | | MINUTE ORDER. Due to inclement weather and scheduling conflicts with other matters, the preliminary injunction hearing currently scheduled for January 28, 2026 at 4:00 PM is hereby VACATED and CONTINUED to February 3, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 1/26/2026. (lcrjl1) (Entered: 01/26/2026) |
| 01/26/2026 | 21 | REPLY to opposition to motion re 2 Motion for TRO,, Motion for Preliminary Injunction,, Motion to Stay, *(REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND STAY UNDER 5 U.S.C. § 705)* filed by MARK KELLY. (Fishman, Paul) (Entered: 01/26/2026) |
| 01/27/2026 | 22 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joseph Andrew Boyle, Filing fee $ 100, receipt number ADCDC–12206172. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) |
| 01/27/2026 | 23 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Christine Sun, Filing fee $ 100, receipt number ADCDC–12206193. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) |
| 01/27/2026 | 24 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Maithreyi Ratakonda, Filing fee $ 100, receipt number ADCDC–12206217. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) |
| 01/27/2026 | 25 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Lauren Groth, Filing fee $ 100, receipt number ADCDC–12206314. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) |
| 01/30/2026 | 26 | NOTICE of Appearance by Jeffrey Smith on behalf of MARK KELLY (Smith, Jeffrey) (Entered: 01/30/2026) |
| 01/30/2026 | 27 | NOTICE of Appearance by Bonnie Devany on behalf of MARK KELLY (Devany, Bonnie) (Entered: 01/30/2026) |
| 02/02/2026 | 28 | NOTICE of Appearance by Aaron Sobel on behalf of MARK KELLY (Sobel, Aaron) (Entered: 02/02/2026) |
| 02/02/2026 | | MINUTE ORDER. Upon consideration of the 22 23 24 25 Motions for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motions are GRANTED. It is further ORDERED that Joseph Andrew Boyle, Christine P. Sun, Maithreyi Ratakonda, and Lauren Groth be, and hereby are, admitted pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 2/2/2026. (lcrjl1) (Entered: 02/02/2026) |
| 02/03/2026 | 29 | TRANSCRIPT OF STATUS CONFERENCE before Judge Richard J. Leon held on January 15, 2026; Page Numbers: 1–13. Date of Issuance: February 3, 2026. Court |

| | | |
|---|---|---|
| | | Reporter/Transcriber Lisa Edwards, Telephone number (202) 354–3269, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/24/2026. Redacted Transcript Deadline set for 3/6/2026. Release of Transcript Restriction set for 5/4/2026.(Edwards, Lisa) (Entered: 02/03/2026) |
| 02/03/2026 | | Minute Entry for Motions Hearing held on 2/3/2026 before Judge Richard J. Leon. Oral arguments submitted on Plaintiff's Motion <u>2</u> for Preliminary Injunction and Stay under 5 U.S.C. § 705. Court takes matter under advisement. Forthcoming Order. Court Reporter: Sonja Reeves. (zljn) (Entered: 02/03/2026) |
| 02/04/2026 | <u>30</u> | TRANSCRIPT OF MOTION HEARING before Judge Richard J. Leon held on February 3, 2026; Page Numbers: 1–41. Court Reporter Sonja L. Reeves, RDR, CRR, Telephone number (202) 354–3246, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/25/2026. Redacted Transcript Deadline set for 3/7/2026. Release of Transcript Restriction set for 5/5/2026.(Reeves, Sonja) (Entered: 02/04/2026) |
| 02/04/2026 | <u>31</u> | NOTICE of Appearance by Beau Tremitiere on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Tremitiere, Beau) (Entered: 02/04/2026) |
| 02/04/2026 | <u>32</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Conor Gaffney, Filing fee $ 100, receipt number ADCDC−12224805. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # <u>1</u> Declaration, # <u>2</u> Certificate of Good Standing, # <u>3</u> Text of Proposed |

| | | |
|---|---|---|
| | | Order)(Parker, Kristy) (Entered: 02/04/2026) |
| 02/05/2026 | 33 | NOTICE of Appearance by Joseph Andrew Boyle on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Boyle, Joseph) (Entered: 02/05/2026) |
| 02/05/2026 | 34 | NOTICE of Appearance by Christine Patricia Sun on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Sun, Christine) (Entered: 02/05/2026) |
| 02/05/2026 | 35 | NOTICE of Appearance by Lauren Elizabeth Groth on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Groth, Lauren) (Entered: 02/05/2026) |
| 02/06/2026 | 36 | NOTICE of Appearance by Maithreyi Ratakonda on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Ratakonda, Maithreyi) (Entered: 02/06/2026) |
| 02/09/2026 | | MINUTE ORDER. Upon consideration of the 32 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that Conor Gaffney be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 2/9/2026. (lcrjl1) (Entered: 02/09/2026) |
| 02/12/2026 | 37 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 2/12/2026. (lcrjl1) (Entered: 02/12/2026) |
| 02/12/2026 | 38 | ORDER. Consistent with the attached, plaintiff's 2 Motion for Preliminary Injunction and Stay is GRANTED in part. See Order for details. Signed by Judge Richard J. Leon on 2/12/2026. (lcrjl1) (Entered: 02/12/2026) |
| 02/12/2026 | | Set/Reset Deadlines: Joint Status Report due by 3/14/2026 (zljn) (Entered: 02/12/2026) |
| 02/17/2026 | 39 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: NON–PARTY MOTION to Dismiss. Reason(s): Filer is not a party to the case. (mg) (Entered: 02/19/2026) |
| 02/24/2026 | 40 | NOTICE OF INTERLOCUTORY APPEAL as to 37 Order, Memorandum & Opinion, 38 Order, Preliminary Injunction by PETE HEGSETH, JOHN C. PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY. Fee Status: No Fee Paid. Parties have been notified. (Bailey, John) (Entered: 02/24/2026) |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MARK KELLY,                    ) | |
| ) | |
| Plaintiff,          ) | |
| ) | |
| v.                    ) | Civil Action No. 1:26-CV-00081 |
| ) | |
| PETE HEGSETH, *et al.*,        ) | |
| ) | |
| Defendants.        ) | |
| ) | |

## <u>DEFENDANTS' NOTICE OF APPEAL</u>

PLEASE TAKE NOTICE that all Defendants hereby appeal to the United States

Court of Appeals for the District of Columbia Circuit from this Court's February 12, 2026

Memorandum Opinion and Order.  *See* ECF Nos. 37, 38.

Dated: February 24, 2026                         Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC HAMILTON
Deputy Assistant Attorney General

JEAN LIN
Special Litigation Counsel

JOSEPH E. BORSON
Assistant Branch Director

*/s/ John Bailey*
JOHN BAILEY
Counsel to the Assistant Attorney
General
United States Department of Justice
Civil Division

950 Constitution Ave. NW
Washington, DC 20005
Phone: (202) 514-6993
Email: john.bailey@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK KELLY,<br><br>                    Plaintiff,<br><br>            v.<br><br>PETE HEGSETH, *et al.*,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)  Civil Case No. 26-81 (RJL)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

February **12** 2026 [Dkt. #2]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff Mark Kelly's [Dkt. #2] Motion for Preliminary Injunction

and Stay under 5 U.S.C. § 705 is **GRANTED** in part; and it is further

**ORDERED** that Defendants and their agents are preliminarily **ENJOINED** from

implementing, enforcing, or otherwise giving effect to the Secretarial Letter of Censure

dated January 5, 2026 and addressed to Plaintiff ("the Letter"); and it is further

**ORDERED** that Defendants and their agents are preliminarily **ENJOINED** from

implementing, enforcing, or otherwise giving effect to the Department of Navy's

Notification of Retirement Grade Determination Proceedings dated January 5, 2026 and

addressed to Plaintiff ("the Notification"); and it is further

1

**ORDERED** that Defendants; Defendants' officers, agents, servants, employees, and attorneys; and all other persons in active concert with Defendants are preliminarily **ENJOINED** from:

(1) taking any other action in reliance on the findings, determinations, or threats of additional criminal or administrative action contained in the Letter;

(2) taking any steps to place the Letter in Plaintiff's file;

(3) relying on the Letter, or on the findings or determinations made therein, in any military, agency, or criminal proceeding;

(4) taking any steps to revisit Plaintiff's grade determination; and

(5) adjusting Plaintiff's grade pursuant to the Letter or Notification; and it is further

**ORDERED** that the parties shall file a joint status report within 30 days proposing further proceedings in this case.

**SO ORDERED.**

_____

RICHARD J. LEON
United States District Judge

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK KELLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 26-81 (RJL) |
| v. | ) |
| | ) |
| PETE HEGSETH, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION
February **12**, 2026 [Dkt. #2]

United States Senator Mark Kelly, a *retired* naval officer, has been censured by Secretary of Defense Pete Hegseth for voicing certain opinions on military actions and policy. In addition, he has been subjected to proceedings to possibly reduce his retirement rank and pay and threatened with criminal prosecution if he continues to speak out on these issues. Secretary Hegseth relies on the well-established doctrine that military servicemembers enjoy less vigorous First Amendment protections given the fundamental obligation for obedience and discipline in the armed forces. Unfortunately for Secretary Hegseth, no court has ever extended those principles to *retired* servicemembers, much less a retired servicemember serving in Congress and exercising oversight responsibility over the military. This Court will not be the first to do so!

Worse still, Secretary Hegseth contends that this Court is not yet competent to decide the issues in this case. He and his fellow Defendants argue that military personnel

1

decisions are exempt from judicial review and, in any event, that Senator Kelly should first be required to go through the military appeals process so the *military* can have the first crack at adjudicating his First Amendment rights. I disagree. This Court has all it needs to conclude that Defendants have trampled on Senator Kelly's First Amendment freedoms and threatened the constitutional liberties of millions of military retirees. After all, as Bob Dylan famously said, "You don't need a weatherman to know which way the wind blows."[1] To say the least, our retired veterans deserve more respect from their Government, and our Constitution demands they receive it!

Senator Kelly's First Amendment claim is not only justiciable; he is likely to succeed on the merits. He has also shown irreparable harm, and the balance of the equities fall decidedly in his favor. As such, his motion for a preliminary injunction on his First Amendment claim is hereby **GRANTED**.

<u>**BACKGROUND**</u>

I.    **Factual Background**

Plaintiff Mark Kelly is a retired United States Navy Captain and a sitting United States Senator from Arizona. Compl. [Dkt. #1] ¶ 1. Senator Kelly has a highly decorated record of service to our Nation. He flew 39 combat missions as a naval aviator during the First Gulf War and four space shuttle flights for NASA. *Id.* ¶ 21. In 2011, he retired honorably as a Captain with multiple awards for heroic service and dedication to duty. *Id.* ¶¶ 22–25. As a retired officer, the Senator continues to receive pay and benefits

---

[1] Bob Dylan, *Subterranean Homesick Blues* (Columbia Recs., Mar. 8, 1965).

2

commensurate with his retirement grade. *See* 10 U.S.C. § 8323; Compl. ¶ 8. In 2020, he was elected to the United States Senate as a member of the Democratic Party. Compl. ¶ 25. He serves on the Senate Armed Services Committee, which oversees the Department of Defense. *Id.* ¶¶ 27–29. He also serves on the Senate Select Committee on Intelligence. *Id.* ¶ 27.

The Department of Defense and the Trump Administration more broadly have been involved in two recent controversies relating to military law and policy. In June 2025, President Trump began deploying National Guard troops to American cities including Washington, D.C.; Los Angeles; and Chicago. *Id.* ¶ 32. And in September 2025, the Trump Administration initiated a campaign of lethal strikes against alleged drug smuggling boats in the Pacific Ocean and Caribbean Sea. *Id.* ¶ 39. According to public reporting, one strike on September 2 involved a secondary strike to kill survivors clinging to the wreckage. *Id.* ¶ 41. These actions have generated substantial discussion in the media and within Congress. *Id.* ¶¶ 41–43.

On both topics, Senator Kelly has been openly critical of the Trump Administration. Regarding the deployment of National Guard troops, Senator Kelly, along with the entire Senate Democratic caucus, sent a letter to President Trump in June 2025 urging him to withdraw National Guard troops deployed to Los Angeles. *Id.* ¶ 34. In November and December 2025, Senator Kelly co-sponsored legislation and participated in Armed Services Committee hearings on the same topic. *Id.* ¶¶ 36–38. And regarding the boat strikes, he has demanded an investigation and publicly criticized the Trump Administration. *Id.* ¶¶ 43, 49. In a November 30 interview with CNN, Senator Kelly was

3

asked if he agreed that "if there was a second strike to eliminate any survivors, that that constitutes a war crime?" He responded, "it seems to," and stated that he would have refused to carry out the order if he had received it. *Id.* ¶ 49.

On November 18, 2025, Senator Kelly appeared in a video with five other members of Congress (all members of the Democratic Party and veterans of the armed forces or intelligence services) stating that members of the armed forces "can refuse illegal orders." *Id.* ¶¶ 51–53. In the video, Senator Kelly identified himself as a Navy veteran: "I was a captain in the United States Navy." *Id.* ¶ 53. The group sought to "speak directly to members of the military." *Id.* Acknowledging the "enormous stress and pressure" facing servicemembers, the group argued that the Trump Administration was "pitting our uniformed military . . . [a]gainst American citizens." *Id.* "Right now," the group argued, "the threats to our Constitution aren't just coming from abroad, . . . [b]ut from right here at home." *Id.* Senator Kelly then stated, "Our laws are clear. You can refuse illegal orders." *Id.*

On November 24, the Department of Defense ("DOD") announced a review of "serious allegations of misconduct" against Senator Kelly, noting that the allegations may warrant "recall to active duty for court-martial proceedings or administrative measures." *Id.* ¶ 75. The next day, Secretary of Defense Pete Hegseth posted a memorandum he had sent to Secretary of the Navy John Phelan requesting a review of Senator Kelly's "potentially unlawful comments" by December 10. *Id.* ¶ 78. On December 11, news reports surfaced that Secretary Phelan had delivered his report to Secretary Hegseth. *Id.* ¶ 80. Lawyers for Senator Kelly sought confirmation of the probe and requested that

Secretary Phelan immediately stop any proceeding against Senator Kelly. *Id.* ¶ 81. They received no substantive response.

On January 5, 2026, Secretary Hegseth issued a Secretarial Letter of Censure against Senator Kelly. *See* Compl. Ex. F ("Letter") [Dkt. #1-6]. Secretary Hegseth found that "[b]etween June 2025 and December 2025, [Senator Kelly] engaged in a sustained pattern of public statements that characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse orders related to those operations." *Id.* at 1. Secretary Hegseth concluded that Senator Kelly's statements undermined the chain of command, counseled disobedience to lawful orders, created confusion about duty, and brought discredit upon the Armed Forces. *Id.* at 1–2. Accordingly, the Secretary formally censured the Senator "for conduct prejudicial to good order and discipline in the armed forces and conduct unbecoming an officer." *Id.* at 2. Secretary Hegseth also determined, based on his findings, that "good cause" existed to "reopen the determination of [Senator Kelly's] retired grade," and he directed the Secretary of the Navy to recommend "whether a reduction in grade is appropriate." *Id.* at 3. Secretary Hegseth further warned Senator Kelly that he may "subject [himself] to criminal prosecution or further administrative action" if he continued "to engage in conduct prejudicial to good order and discipline." *Id.* Senator Kelly may submit a "written rebuttal" to the Letter, but he has no "right to appeal." *Id.*

The same day, Senator Kelly received a letter from the Chief of Naval Personnel referring the Senator to retirement grade determination proceedings (hereinafter, "Retirement Grade Proceeding"). *See* Compl. Ex. G ("Notification") [Dkt. #1-7]. The

Notification confirmed that Senator Kelly's "retirement paygrade will be revisited," with the sole "factual basis supporting [the] action" being the "Secretary of War letter of censure." *Id.* at 1. The Notification instructed Senator Kelly to respond "within 10 working days"—*i.e.*, by January 20—and advised that failure to respond would "constitute a waiver of these rights." *Id.*

On January 7, Senator Kelly's lawyers sent a letter to Secretary Hegseth arguing that the Letter and Retirement Grade Proceeding violated the Constitution and DOD's statutory authority. Compl. ¶ 109. The letter requested that the Secretary "halt immediately any further proceedings" pending judicial review. *Id.* ¶ 110. Counsel advised that if no substantive response was received by January 9, the Senator would take appropriate action. *Id.* DOD acknowledged receipt of the letter but, again, provided no substantive response.

## II.    Procedural Background

On January 12, Senator Kelly sued Secretary Hegseth, the DOD, Secretary Phelan, and the Department of the Navy (collectively, "Defendants") in this Court. *See* Compl. In his Complaint, Senator Kelly asserts six claims: (1) violation of the First Amendment; (2) violation of the Speech or Debate Clause; (3) violation of the Separation of Powers; (4) violation of Due Process; (5) violation of 10 U.S.C. § 1370; (6) agency action contrary to law in violation of the Administrative Procedure Act ("APA"); and (7) arbitrary and capricious agency action in violation of the APA. *Id.* ¶¶ 119–93. Alongside his Complaint, Senator Kelly filed an emergency motion for a temporary restraining order, preliminary injunction, and stay under 5 U.S.C. § 705. *See* Mot. [Dkt. #2]. Given the January 20

6

deadline to respond to the Retirement Grade Proceeding, the Senator requested a ruling by January 16.

On January 14, the parties proposed an expedited briefing schedule. *See* Joint Mot. [Dkt. #8]. Senator Kelly agreed to convert his motion for a temporary restraining order to a motion for a preliminary injunction; Defendants in turn agreed to (a) delay Senator Kelly's deadline to respond to the Letter and Retirement Grade Proceeding to February 4 and (b) "refrain from relying in any way on the determinations in the Letter" until the Court resolves Senator Kelly's request for a preliminary injunction. *Id*. at 2. I held a status conference on January 15 where Defendants agreed to defer Senator Kelly's deadline to respond until February 16. *See* Joint Mot. [Dkt. #11]. I then converted Senator Kelly's motion for a temporary restraining order to a motion for preliminary injunction and ordered briefing deadlines. *See* Minute Order (Jan. 16, 2026).

Senator Kelly's motion has now been fully briefed. *See* Pl.'s Mem. in Supp. of Prelim. Inj. ("Kelly Br.") [Dkt. #2-1]; Defs.' Mem. in Opp'n to Pl.'s Mot. ("Defs.' Opp'n") [Dkt. #20]; Reply in Supp. of Pl.'s Mot. ("Kelly Reply") [Dkt. #21]. I held a hearing on Senator Kelly's motion on February 3, 2026. The motion is now ripe for review.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, Senator Kelly must show (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor";

7

and (4) "an injunction is in the public interest." *Id.* at 20. "The balance-of-equities and public-interest factors merge if the government is the opposing party." *Glob. Health Council v. Trump*, 153 F.4th 1, 12 (D.C. Cir. 2025).

**ANALYSIS**

### I.    Likelihood of Success on the Merits

Although Senator Kelly brings seven claims, he "need only show a likelihood of success on one to obtain preliminary relief, provided the other preliminary-injunction factors are satisfied." *Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 242 (D.D.C. 2025). The "merits" on which Senator Kelly must show a likelihood of success "encompass not only substantive theories" but also "that the action is justiciable." *Gomez v. Trump*, 485 F. Supp. 3d 145, 169 (D.D.C. 2020) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). For the following reasons, I find that Senator Kelly has made the requisite showing both as to justiciability and as to the merits of his First Amendment claim. I therefore reserve judgment on Senator Kelly's other claims.

### A.    *Justiciability*

Defendants, not surprisingly, raise multiple justiciability issues that they argue bar judicial review of Senator Kelly's claims, including (i) that the challenged actions against Senator Kelly are nonjusticiable military personnel decisions; (ii) that Senator Kelly must first exhaust the internal administrative remedies available for military servicemembers before seeking judicial review; and (iii) that Senator Kelly's challenge to the Retirement Grade Proceeding is not yet ripe. Unfortunately for Defendants, none of these arguments

8

pose any impediment to reaching the merits of Senator Kelly's First Amendment claim. How so?

###### i. **Availability of Judicial Review**

"The justiciability of a claim is not a question of subject matter jurisdiction, but rather of the court's competence to address a particular claim." *Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125, 139 (D.D.C. 2014). Justiciability turns on the propriety "of the subject matter for judicial consideration," including "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)).

Speaking broadly, federal courts grant substantial deference to the military when it acts within its sphere of authority. *See Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring). Courts are rightly wary of second-guessing "professional military judgments" as to "the composition, training, equipping, and control of a military force." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). These kinds of discretionary personnel decisions regarding "who should be allowed to serve on active duty, and in what capacity" are typically nonjusticiable. *Fisher v. United States*, 402 F.3d 1167, 1180–81 (Fed. Cir. 2005) (en banc); *see also Caez v. United States*, 815 F. Supp. 2d 184, 188 n.4 (D.D.C. 2011); *Reilly*, 12 F. Supp. 3d at 138–40. After all, "judges are not given the task of running the military." *Piersall v. Winter*, 435 F.3d 319, 322 (D.C. Cir. 2006) (cleaned up).

Military personnel decisions, however, are not *entirely* exempt from judicial review. For instance, courts generally hear constitutional claims arising from military personnel

9

matters. *See Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) ("[C]ourts have shown no hesitation to review [military] cases in which a violation of the Constitution, statutes, or regulations is alleged."); *Brown v. Glines*, 444 U.S. 348, 349–53 (1980) (reviewing reserve officer's First Amendment challenge to Air Force regulation regarding circulation of petitions); *Emory v. Sec'y of Navy*, 819 F.2d 291, 334 (D.C. Cir. 1987) ("The military has not been exempted from constitutional provisions that protect the rights of individuals."). Likewise, while the underlying *merits* of military personnel decisions are typically left to the discretion of military leadership, *see Wilson v. James*, 139 F. Supp. 3d 410, 431 (D.D.C. 2015), courts may review challenges to "the *procedure* that the military employed in its decision making process," *Daniels v. United States*, 947 F. Supp. 2d 11, 21 (D.D.C. 2013) (emphasis added). In such cases, judicial review is limited to "whether the 'Secretary's decision making process was deficient, not whether his decision was correct.'" *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989)).

In short, "when a case presents an issue that is amenable to judicial resolution," as opposed to "controversies arising from the use of discretionary powers" or the exercise of professional military judgment, courts will not withhold jurisdiction. *Dilley*, 603 F.2d at 920. After all, "[i]t is the duty of the federal courts to inquire whether an action of a military agency conforms to the law." *Id.*[2]

---

[2] My colleagues and I have taken a similar approach in other cases stemming from discretionary Executive Branch decision-making. While courts generally may not review the underlying merits of a decision to grant or revoke a security clearance, we have held that "courts may hear 'constitutional claims arising from the clearance revocation process.'" *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 100

10

Here, Senator Kelly's First Amendment claim presents a justiciable controversy! While the Senator disagrees with Secretary Hegseth on whether his speech *in fact* disrupted the chain of command, eroded confidence in leadership, or constituted conduct unbecoming an officer, Senator Kelly's legal arguments do not, at their core, challenge those underlying discretionary judgments. Rather, Senator Kelly contends that Defendants' choice to censure him because of his speech violates the First Amendment *regardless* of Secretary Hegseth's ultimate judgment as to the effect of that speech. In other words, Senator Kelly's claims do not require this Court to adjudicate the merits of discretionary military decisions but only to ask whether Defendants' action "conforms to the law." *Dilley*, 603 F.2d at 920. And in our constitutional republic, "it is emphatically the province and duty of the judicial department to say what the law is," not the military. *Marbury v. Madison*, 1 Cranch 137, 177 (1803). Accordingly, Senator Kelly's claims are "amenable to judicial resolution." *Dilley*, 603 F.2d at 920.

### ii. **Exhaustion**

As a rule of thumb, courts "should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures." *Bois v. Marsh*, 801 F.2d 462, 478 (D.C. Cir. 1986) (internal quotation marks omitted); *see also Church v. Biden*, 573 F. Supp. 3d 118, 137 (D.D.C. 2021) ("[A]n aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court." (quoting

---

(D.D.C. 2025) (internal quotation marks omitted); *see also Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 141–45 (D.D.C. 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 147–50 (D.D.C. 2025); *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 37–38 (D.D.C. 2025).

*Bois*, 801 F.2d at 468)). This requirement follows from the prudential rule that parties should "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992).

However, the exhaustion doctrine is "subject to exceptions," even in the military context. *Bois*, 801 F.2d at 468. Courts first consider whether there is an express statutory exhaustion requirement. *McCarthy*, 503 U.S. at 144. If not, courts then assess whether to require exhaustion as a prudential matter. "In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146. Accordingly, courts will *not* require exhaustion where (1) requiring exhaustion "may occasion undue prejudice" or cause "irreparable harm"; (2) the administrative remedy may not provide "effective relief" because, for example, the agency "lacks institutional competence to resolve the particular type of issue presented"; or (3) exhaustion would likely be "futile" because "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146–48 (internal quotation marks omitted); *see also Bois*, 801 F.2d at 468.

As an initial matter, Congress has not "specifically mandate[d]" exhaustion here. *McCarthy*, 503 U.S. at 144. Defendants contend that 10 U.S.C. § 1552(a)(1), which provides for correction of "any military record" where "necessary to correct an error or remove an injustice," does so. However, while this statute allows Senator Kelly to petition for review of the Letter by the Board for Correction of Naval Records ("the Board"), it does *not* "specifically mandate[]" that Senator Kelly do so prior to seeking federal court

12

review. *McCarthy*, 503 U.S. at 144. Indeed, our Circuit, in an unpublished opinion, agrees that this provision includes no *express* exhaustion requirement. *Ostrow v. Sec'y of Air Force*, 48 F.3d 562, at *2 (D.C. Cir. 1995) (per curiam). Moreover, Defendants have identified no statutory requirement that Senator Kelly complete the Retirement Grade Proceeding prior to seeking relief in federal court.

With Defendants unable to identify any *express* statutory exhaustion requirement, I turn to prudential exhaustion. And the exceptions here swallow the rule.

*First*, Senator Kelly would suffer "irreparable harm" if he were "unable to secure immediate judicial consideration of his claim." *McCarthy*, 503 U.S. at 147; *see also Bois*, 801 F.2d at 468. As explained further below, *see infra* Section II, the Senator faces retaliation for exercising his First Amendment liberties, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (cleaned up). Indeed, *Bois* specifically recognized—and in the military context no less—that "exhaustion might not be required if [plaintiff] were challenging her incarceration by the military *or the ongoing deprivation of some other liberty interest*." 801 F.2d at 468 (emphasis added). Here, Senator Kelly is alleging unconstitutional action by Defendants that directly threatens his First Amendment liberties. Accordingly, he is justified in seeking federal court review *before* exhausting his administrative remedies within the military. The irreparable harm done is reason enough to allow immediate judicial review.

*Second*, exhaustion is not required because the Board has no particular "institutional competence to resolve" the weighty constitutional issues presented in this case. *McCarthy*,

13

503 U.S. at 147–48. While military boards may hear constitutional claims, *see Bois*, 801 F.2d at 467, they are ill-equipped to remedy ongoing First Amendment violations of the kind alleged by Senator Kelly, *cf. Schlesinger v. Councilman*, 420 U.S. 738, 759 (1975); *see also Comm. for GI Rts. v. Callaway*, 518 F.2d 466, 474 (D.C. Cir. 1975) ("[M]ilitary tribunals are not designed to handle actions . . . seeking declaratory and injunctive relief."). Moreover, "agency adjudications are generally ill suited" to address "standard questions of administrative and constitutional law, detached from considerations of agency policy." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 194–95 (2023) (internal quotation marks omitted). To say the least, those issues are in the wheelhouse of Article III courts, not military officials!

*Third*, the outcome of the administrative process would, in all likelihood, be a *fait accompli*! Secretary Hegseth issued the Letter censuring Senator Kelly. The Letter cannot be appealed, and it serves as the sole factual basis for the Retirement Grade Proceeding. If Senator Kelly chooses to petition the Board to "correct" his military record, the ultimate decision would still lie with the Secretary of the Navy and—according to Defendants— with Secretary Hegseth himself, regardless of the Board's input. *See* 10 U.S.C. § 1552(a)(1) (providing that "[t]he Secretary . . . may correct any military record"); Defs.' Opp'n at 36–37. The record thus suggests that any exhaustion would be "unnecessary." *See Comm. for GI Rts.*, 518 F.2d at 474 n.20. The same goes for the Retirement Grade Proceeding, where Secretary Hegseth again retains ultimate authority. *See* 10 U.S.C. § 1370; Defs.' Opp'n at 33. Therefore, exhaustion of military remedies offers no "real

14

possibility of adequate relief" and would "in all likelihood be futile." *Bois*, 801 F.2d at 468 (internal quotation marks omitted).

Any one of these circumstances alone would relieve Senator Kelly of the need to exhaust administrative remedies before seeking judicial review. But all three together constitute a very strong showing that he may seek judicial review *now*.

### iii. Ripeness

The ripeness doctrine speaks to "when a federal court can or should decide a case." *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). Ripeness is partially "subsumed into the Article III requirement of standing," which requires a plaintiff to allege an injury-in-fact that is "imminent" or "certainly impending." *Id.* (internal quotation marks omitted). But even if a case is "constitutionally ripe," there may be "prudential reasons for refusing to exercise jurisdiction" when the "administrative process" has not yet "run its course." *Id.* (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). For instance, declining jurisdiction may allow "the challenging party to 'convince the agency to alter a tentative position,'" "provide[] the agency 'an opportunity to correct its own mistakes and to apply its expertise,'" and "solidify or simplify the factual context and narrow the legal issues at play." *Id.* (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 740 F.2d 21, 30–31 (D.C. Cir. 1984)).

In assessing ripeness, the Court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *In re Al-Nashiri*, 47 F.4th 820, 826 (D.C. Cir. 2022) (quoting *Cobell v. Jewell*, 802 F.3d 12, 21 (D.C. Cir. 2015)). Both factors cut in Senator Kelly's favor here.

15

*First*, the issues presented are fit for immediate judicial review. The "fitness" prong asks "whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Cobell*, 802 F.3d at 21 (quoting *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 463–64 (D.C. Cir. 2006)). That test is satisfied. The issues presented—the extent of the First Amendment's application to retired servicemembers, and whether the Retirement Grade Proceeding constitutes First Amendment retaliation—are "purely legal." *Id.* And for purposes of deciding these constitutional questions, Defendants' actions are "sufficiently final." *Id.* After all, the Letter of Censure and Retirement Grade Proceeding rest entirely and exclusively on Senator Kelly's "public statements," which have been detailed at length in the Complaint. *See* Letter at 2; Notification at 1 ("The factual basis supporting this action is a Secretary of War letter of censure . . . ."). No "more concrete setting" is needed to adjudicate the fundamental First Amendment issues presented. *Cobell*, 802 F.3d at 21.

Still, Defendants argue that the case would benefit from a more developed factual record. How so? They do not say. For instance, Defendants do not point to any additional factual context needed to decide whether Senator Kelly's public statements are protected by the First Amendment. Instead, at the hearing, counsel for Defendants suggested that *Senator Kelly* may be permitted to submit his own evidence and argument to the Board. *See* Hr'g Tr. [Dkt. #30] at 17:12–17. But it remains a mystery how that would assist the Court in its consideration of the First Amendment issues at play here. Those issues have

16

already "crystallized into a concrete legal dispute," *Al-Nashiri*, 47 F.4th at 826, and no further factual development is needed.

*Second*, "the hardship to the parties of withholding court consideration" is severe! *Id.* (quoting *Cobell*, 802 F.3d at 21). Senator Kelly faces punishment for speaking on public issues, including a proceeding that jeopardizes his retirement grade and pay. Where "First Amendment rights are implicated and arguably chilled by a 'credible threat of prosecution,'" courts are especially "reluctan[t] to require parties to subject themselves to enforcement proceedings" before seeking judicial review. *Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010) (quoting *Chamber of Com. of U.S. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995)); *cf. Axon*, 598 U.S. at 903 ("[B]eing subjected to unconstitutional agency authority . . . is a here-and-now injury." (internal quotation marks omitted)). Indeed, "denying prompt judicial review would impose a substantial hardship" on the Senator, forcing him to choose between "refraining from core political speech on the one hand" or risking a retirement grade reduction and even "criminal prosecution on the other." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014). Accordingly, given the "purely legal" constitutional problems raised by Defendants' actions and the attendant harm to Senator Kelly's First Amendment interests, the prudential ripeness factors are "easily satisfied here." *Id.* at 167.[3]

---

[3] Defendants also argue that the Letter of Censure and the Retirement Grade Proceeding are not final agency action subject to the APA. Because I conclude that Senator Kelly's First Amendment claim is justiciable, I need not also decide whether his APA claim is viable at this stage. *See Am. Bar Ass'n*, 783 F. Supp. 3d at 242.

**B.    *First Amendment Retaliation***

Being safely assured that Senator Kelly raises a "strong likelihood" that his claims are justiciable, I now move to the merits. Senator Kelly advances two frameworks for First Amendment review: viewpoint discrimination and retaliation. Here, the retaliation framework fits like a glove.

The "First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. Riviera Beach*, 585 U.S. 87, 90 (2018). To demonstrate First Amendment retaliation, Senator Kelly must show (1) he "engaged in conduct protected under the First Amendment"; (2) Defendants "took some retaliatory action sufficient to deter a person of ordinary firmness in [his] position from speaking again"; and (3) there is "a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (internal quotation marks omitted).

### i.  Protected Speech

This case largely hinges on the first prong: whether Senator Kelly engaged in protected speech. Defendants boldly argue that Senator Kelly's speech was *unprotected*, citing to a line of precedent establishing that First Amendment protections are more limited in the military context. *See, e.g.*, *Parker v. Levy*, 417 U.S. 733, 758 (1974). Senator Kelly understandably disagrees, arguing that Defendants cite to *no* authority extending *Parker* and its progeny to retired servicemembers as opposed to active-duty servicemembers. Based on a careful review of the law, I agree with Senator Kelly. How so?

18

Well, let's start with the basics. Under ordinary First Amendment principles, the speech at issue here is unquestionably protected speech. Speech "on matters of public concern" lies at the core of First Amendment protection. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985)). This broad category includes speech on "any matter of political, social, or other concern to the community" or any "subject of general interest and of value and concern to the public." *Id.* at 453 (internal quotation marks omitted). It includes "opposition to national foreign policy," *Bond v. Floyd*, 385 U.S. 116, 132 (1966), and even "vehement, caustic, and . . . unpleasantly sharp attacks on government and public officials," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Here, the Letter of Censure identifies a "sustained pattern of public statements" including, primarily, the November 18 video in which Senator Kelly stated that members of the armed forces "can refuse illegal orders." Letter at 1. It also identifies the Senator's statements characterizing certain military orders as "unlawful" and criticizing military leadership. *Id.* Under any reading of the law, Senator Kelly's statements constitute "speech on matters of public concern" and are therefore "entitled to special protection." *Snyder*, 562 U.S. at 451–52.

Defendants rest their entire First Amendment defense on the argument that the more limited First Amendment protection for *active-duty* members of the military extends to a *retired* naval captain. To be sure, while soldiers "are not excluded from" the First Amendment's coverage, "the different character of the military community and of the military mission requires a different application of those protections." *Parker*, 417 U.S. at 758. From *Parker* onward, the Supreme Court has recognized that "[t]he fundamental

19

necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." *Id.*; *see also Brown v. Glines*, 444 U.S. 348, 357 (1980); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Therefore, given the countervailing interests at stake in the line of duty, "speech by a member of the military that undermines the chain of command, and the obedience, order, and discipline it is designed to ensure, does not receive First Amendment protection." *Wilson v. James*, 139 F. Supp. 3d 410, 426 (D.D.C. 2015); *see also Millican v. United States*, 744 F. Supp. 2d 296, 307–08 (D.D.C. 2010); *United States v. Wilcox*, 66 M.J. 442, 446–47 (C.A.A.F. 2008) (noting that the First Amendment protects speech in the military unless the speech "interferes with or prevents the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale of the troops").

However, the cases in this area uniformly involve *active-duty* servicemembers or speech on military bases. *See Parker*, 417 U.S. at 761 (upholding court-martial of active-duty captain who encouraged soldiers at his base to refuse to fight in the Vietnam War); *Brown*, 444 U.S. at 357–58 (upholding regulations on circulating petitions criticizing military policy); *Goldman*, 475 U.S. at 509–10 (rejecting First Amendment challenge to Air Force dress code by active-duty officer); *Wilson*, 139 F. Supp. 3d at 426 (upholding censure of enlisted National Guard member for emails regarding same-sex marriage); *Millican*, 744 F. Supp. 3d at 307–08 (upholding discipline of reserve active-status officer for urging squadron members to disregard orders). While *retired* servicemembers have an "ongoing duty to obey military orders" and may be recalled to active duty, *see Wilson v.*

20

*Curtis*, 150 F.4th 1359, 1365 (10th Cir. 2025), Defendants have not identified a single case

extending *Parker*'s reasoning outside the context of active-duty soldiers.[4]

This makes sense. Active-duty soldiers operate in "a specialized society separate

from civilian society," where the "law is that of obedience," lest the military's critical

mission of maximum effectiveness and lethality be undermined. *Parker*, 417 U.S. at 743–

44 (internal quotation marks omitted). As such, active-duty soldiers urging others to

"disregard orders" or "calling into question a commander's credibility" may directly

"undermine the effectiveness of response to command." *Millican*, 744 F. Supp. 2d at 307

(quoting *Parker*, 417 U.S. at 759). The military therefore has a "legitimate interest in

prohibiting [such] conduct to promote discipline and uphold order among its members."

*Id.*

The same rationale does not hold true for retired servicemembers—and certainly

not those in Senator Kelly's position. While still members of the military community,

retired servicemembers are also part of the "civilian community" and are not fully

immersed in the "specialized society" of the active armed forces. *Parker*, 417 U.S. at 743.

Speech from retired servicemembers—even speech opining on the lawfulness of military

operations—does *not* threaten "obedience, unity, commitment, and esprit de corps" in the

---

[4] Defendants uncovered *one* case involving punishment against a military retiree for speech: *Closson v. U.S. ex rel. Armes*, 7 App. D.C. 460 (D.C. Cir. 1896). *Closson* involved a habeas petition from a retired U.S. Army captain who was arrested and subjected to court-martial after sending a "letter of an offensive character" to a high-ranking general. *Id.* at 461. However, the petition challenged only the manner of the retiree's arrest and conditions of confinement. *Id.* at 472–77. The retiree did not assert, and our Circuit did not analyze, any violation of the First Amendment. Indeed, the content of the letter is barely discussed. *Id.* at 477. Given the lack of First Amendment analysis—not to mention the case's vintage, predating most applicable First Amendment precedent on protected speech—I find *Closson* unpersuasive and inapplicable.

same way as speech from active-duty soldiers. *Goldman*, 475 U.S. at 507. Nor can speech from retired servicemembers "undermine the effectiveness of response to command" as directly as speech from active-duty soldiers. *Parker*, 417 U.S. at 759 (quoting *United States v. Priest*, 45 C.M.R. 338, 344 (1972)). As such, the military cannot claim the same "legitimate interest in prohibiting" speech by retired veterans. *Millican*, 744 F. Supp. 2d at 308.

As applied to a sitting Member of Congress, the *Parker* rule has even less force! Our system of "representative government *requires* that legislators be given the widest latitude to express their views on issues of policy." *Bond*, 385 U.S. at 135–36 (emphasis added). Legislators like Senator Kelly carry "an obligation to take positions on controversial political questions" both so their constituents may be "fully informed" as to the legislator's views and so constituents "may be represented in governmental debates by the person they have elected to represent them." *Id.* at 136–37; *cf. Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring) ("public discussion is a political duty"). Indeed, if legislators do *not* feel free to express their views and the views of their constituents without fear of reprisal by the Executive, our representative system of Government cannot function! Between the lack of precedent extending *Parker* outside the context of active-duty military and the heightened free speech protection for legislators, Senator Kelly's speech *must* receive full First Amendment protection.

Defendants respond that Senator Kelly is seeking to exempt himself from the rules of military justice that "Congress has expressly made applicable to retired servicemembers." Defs.' Opp'n at 1. Horsefeathers! While Congress has chosen to apply

22

the Uniform Code of Military Justice to military retirees as well as active-duty servicemembers, *see* 10 U.S.C. § 802(a)(4), that choice has little bearing on the scope of First Amendment protections for retirees. The First Amendment "is a limitation on the power of Congress," *NLRB v. Cath. Bishop of Chicago*, 440 U.S. 490, 499 (1979), not the other way around!

Without the benefit of *Parker*, Defendants have no other arguments for how Senator Kelly's speech is unprotected under the First Amendment.[5] As such, Senator Kelly has shown that he "engaged in conduct protected under the First Amendment," *Aref*, 833 F.3d at 258, thus satisfying the first prong of the retaliation framework.

### ii. Retaliatory Action

The next factor of the retaliation test is whether Defendants took retaliatory action against Senator Kelly sufficient to deter "a person of ordinary firmness." *Aref*, 833 F.3d at 258. The "bar is not a high one," *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 95 n.7 (D.D.C. 2025), and Defendants' actions here clearly pass the bar. The Letter of Censure, which is placed in Senator Kelly's military personnel file and may be used in future administrative actions, formally censures Senator Kelly for his speech and reopens the determination of his retired grade. Letter at 2–3; Kelly Br. at 17 (citing *Manual of the Judge Advocate General*, JAGINST 5800.7G CH-2, § 0114A(b) (Dec. 1, 2023)). Further, the Letter threatens "criminal prosecution or further administrative action" should Senator

---

[5] Senator Kelly points out that the social media video does not fit into any other recognized category of unprotected speech, like incitement. *See* Kelly Br. at 14 (citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969)). Defendants do not press an incitement argument here—and for good reason. The video was not, in any meaningful sense, likely to produce "*imminent* lawless action." *Brandenburg*, 395 U.S. at 447 (emphasis added).

Kelly "continue to engage in conduct prejudicial to good order and discipline"—that is, should Senator Kelly continue to engage in protected speech. Letter at 3. And the Retirement Grade Proceeding requires Senator Kelly to participate in an administrative process and threatens to dock Senator Kelly's rank and pay grade—concrete, tangible, and undoubtedly punitive measures. Notification at 1. Secretary Hegseth himself described the Retirement Grade Proceeding as a "serious administrative action that sends real signals that we take these things incredibly seriously." Compl. ¶ 114.

There is no question that such actions would deter "a person of ordinary firmness in plaintiff's position." *Aref*, 833 F.3d at 258. Indeed, they already have. Per an amicus brief submitted by forty-one retired officers, many veterans are today "declining" to "participate in public debate on important and contested issues" out of fear of "official reprisal." *See* Brief of *Amici Curiae* Former Service Secretaries, Retired Senior Military Officers, and Vet Voice Foundation ("Amicus Brief") [Dkt. #13-1] at 4. That is a troubling development in a free country! And whether Senator Kelly himself has *actually* been deterred is largely beside the point. *See Pinson v. U.S. Dep't of Just.*, 246 F. Supp. 3d 211, 224 (D.D.C. 2017) (noting that plaintiff's "actual response to a defendant's conduct is not dispositive" (internal quotation marks omitted)). That Senator Kelly may be an "unusually staunch individual" does not minimize his entitlement to be free from reprisal for exercising his First Amendment rights. *Id.*

24

### iii. __Causal Link__

The final factor of the retaliation test is whether there is "a causal link" between the protected First Amendment activity and "the adverse action taken." *Aref*, 833 F.3d at 258. This factor cannot be disputed here. The Letter of Censure could hardly be clearer: it is censuring him for "engag[ing] in a sustained pattern of public statements" that criticized military operations as illegal and counseled military servicemembers to refuse illegal orders. Letter at 1. Thus, Senator Kelly was reprimanded for exercising his First Amendment right to speak on matters of public concern.

Because Senator Kelly has demonstrated a strong likelihood of success on his retaliation claim, I need not also decide whether Defendants' actions constitute viewpoint discrimination. But the analysis under this alternative theory would be just as straightforward.[6] Any way you slice it, Defendants' actions violate the First Amendment. Senator Kelly has thus demonstrated a strong likelihood of success on the merits warranting preliminary injunctive relief.

---

[6] Even under a viewpoint discrimination analysis, Defendants' actions would violate the First Amendment. Government regulation of speech based on the "opinion or perspective of the speaker" is presumptively unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Such restrictions are justified only if they are "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). For the reasons described above, Senator Kelly's speech is fully protected under the First Amendment. *See supra* at Section II.B.i. And Defendants all but admit that Senator Kelly is being censured because of the "particular views taken" in his public comments. *Rosenberger*, 515 U.S. at 829. Indeed, the Letter states directly that Senator Kelly is being punished because he "characterized military operations as illegal," "counseled members of the Armed Forces to refuse orders related to those operations," "criticized military leadership," and "accuse[d] . . . senior military officers of war crimes." Letter at 1. That is viewpoint discrimination, plain and simple. And nowhere do Defendants begin to explain how the actions taken against Senator Kelly are "narrowly tailored" to achieve their intended purpose, *Reed*, 576 U.S. at 163, or "why counterspeech would not suffice" to achieve the same purpose, *United States v. Alvarez*, 567 U.S. 709, 726 (2012).

## II.    Irreparable Harm

Senator Kelly is suffering, and will suffer, immediate irreparable harm in the absence of injunctive relief.  Our Circuit has explained that "a prospective violation of a constitutional right constitutes irreparable injury for purposes of seeking equitable relief." *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) (cleaned up).  And the Supreme Court recently confirmed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (cleaned up); *see also Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) (retaliation in response to the exercise of First Amendment rights is "irreparable injury").  These First Amendment harms are irreparable because they "cannot be fully compensated by later damages." *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 56 (D.D.C. 2025) (internal quotation marks omitted).

By establishing a likelihood of success on his First Amendment retaliation claim, Senator Kelly has established that he "will suffer irreparable harm in the absence of preliminary relief." *Am. Bar Ass'n*, 783 F. Supp. 3d at 247.  Indeed, Senator Kelly has shown, through the Letter of Censure and the Retirement Grade Proceeding, that Defendants' actions "have already violated and continue to violate [his] First Amendment rights." *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 385 (D.D.C. 2020). "These current and anticipated harms are sufficient to demonstrate irreparable harm." *Id.*

Defendants' response is unavailing.  Defendants first cite to a handful of cases in our Circuit stating that courts should not "axiomatically" find irreparable harm when a plaintiff alleges a violation of constitutional rights.  *See* Defs.' Opp'n at 38 (quoting *Hanson*

26

*v. Dist. of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024)); *see also id.* at 38–39 (citing *Ayele v. Dist. of Columbia*, 704 F. Supp. 3d 231, 239 (D.D.C. 2023); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). But none of those cases involved alleged abridgment of an individual's freedom of speech, much less First Amendment retaliation. *See Hanson*, 120 F.4th at 244 (Second Amendment); *Ayele*, 704 F. Supp. 3d at 240 (due process and equal protection); *Chaplaincy*, 454 F.3d at 302 (Establishment Clause).

Defendants also argue that Senator Kelly has pled himself out of irreparable injury by asserting that he "intends to continue to speak on matters of public concern" and "will not be silenced." Compl. ¶¶ 116, 118. Please! That is not the law. As Senator Kelly persuasively responds, Defendants' rule "would preclude intrepid speakers from ever showing irreparable First Amendment harm." Kelly Reply at 24. It is the *fact* of "[o]fficial reprisal for protected speech" that inflicts injury, *Hartman v. Moore*, 547 U.S. 250, 256 (2006), not whether that reprisal has its intended *effect* of silencing opposing views. Accordingly, this factor clearly favors injunctive relief.

## III.    Balance of Equities and the Public Interest

Finally, the balance of the equities and the public interest cut in Senator Kelly's favor. Where the Government is opposing injunctive relief, these factors "merge" and the court "weigh[s] the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined." *Doe v. Mattis*, 928 F.3d 1, 23 (D.C. Cir. 2019).

27

Having demonstrated a strong likelihood of First Amendment retaliation, Senator Kelly has both the equities and the public interest on his side. Protecting the exercise of First Amendment freedoms is "always" in the public interest. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). Indeed, "[t]he Constitution is the ultimate expression of the public interest," and therefore, "government actions in contravention of the Constitution are 'always contrary to the public interest.'" *Turner*, 502 F. Supp. 3d at 386 (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)). This is especially so where government actions threaten to chill core political speech, which is entitled to the highest First Amendment protection. *See Media Matters for Am.*, 138 F.4th at 585. Ultimately, "[r]etaliation against [Senator Kelly] . . . threatens retaliation against all." *Jenner & Block*, 784 F. Supp. 3d at 115.

More specifically, it is a particularly valuable asset for our country to have retired veterans contributing to public discussion on military matters and policy. Given their "distinct perspective and specialized expertise," it is essential for retired veterans to contribute to our "public discourse" on issues of military policy. Amicus Br. at 5. Allowing Defendants' actions against Senator Kelly to stand would further chill the speech of these retired servicemembers and thereby "impoverish public debate on critical issues relating to our military and its role in domestic and foreign affairs." *Id.*

Put simply, Defendants' response is anemic! They argue that injunctive relief would "interfere with the military's ability to maintain good order and discipline" and subject "routine mechanisms of military accountability" to "judicial veto." Defs.' Opp'n at 40. However, Defendants' argument runs up against our Nation's long tradition of retired

28

service members, including those holding elected office, routinely contributing to the public discourse in ways critical of current military policy. *See* Kelly Reply at 5 (citing examples such as Alexander Hamilton denouncing President Adams's fitness to command during the Quasi-War and retired service members in Congress criticizing President Biden's withdrawal from Afghanistan). And to be sure, there is nothing "routine" about Defendants' actions here: punishing a sitting U.S. Senator for his views on military policy. Accordingly, Senator Kelly easily has the balance of the equities and the public interest on his side.

#### CONCLUSION

Rather than trying to shrink the First Amendment liberties of retired servicemembers, Secretary Hegseth and his fellow Defendants might reflect and be grateful for the wisdom and expertise that retired servicemembers have brought to public discussions and debate on military matters in our Nation over the past 250 years. If so, they will more fully appreciate why the Founding Fathers made free speech the *first* Amendment in the Bill of Rights! Hopefully this injunction will in some small way help bring about a course correction in the Defense Department's approach to these issues.

For the foregoing reasons, Senator Kelly's motion for a preliminary injunction on his First Amendment claim is **GRANTED**.

RICHARD J. LEON
United States District Judge

29